## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| Stratford Insurance Company, ) | |
| Plaintiff, ) | |
| vs. ) | |
| Shorewood Forest Utilities, Inc., Greg ) Schafer, Carlotta Holmes, Individually ) and on Behalf of All Others Similarly ) Situated, ) | Case No.: 20-cv- |
| Defendants. ) | |

## STRATFORD INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT AGAINST SHOREWOOD FOREST UTILITIES, INC.

Plaintiff, Stratford Insurance Company ("Stratford"), brings this Complaint for Declaratory Judgment against Defendants, Shorewood Forest Utilities, Inc. ("Shorewood"), Greg Schafer, Carlotta Holmes, Individually and on Behalf of All Other Similarly Situated, and alleges upon information and belief, as follows:

## NATURE OF ACTION

1.    Stratford seeks a declaration that it has no obligation to Greg Schafer and Carlotta Holmes, Individually and on Behalf of All Other Similarly Situated, as the purported assignee of certain claims and/or rights of Shorewood, under the Stratford Policy, as defined below, with respect to a consent judgment entered into by Schafer, Holmes and Shorewood in connection with a lawsuit entitled *Greg Schafer and Carlotta Holmes, Individually and on Behalf of All Others Similarly*

1

*Situated, v. Shorewood Forest Utilities, Inc., Greg Colton, Dan Clark, Ken Buczek, and Terry Atherton,* in the Porter Superior Court, Valparaiso, Indiana, Case No. 64D02-1705-CT-4698 (the "Schafer Class Action"). Specifically, the consent judgment does not trigger Stratford's Insuring Agreement as Shorewood has no legal obligation to pay the consent judgement as per its terms; Shorewood breached several conditions in the Stratford Policy that prohibit the Insured from voluntarily making any payment or assuming any obligation without Stratford's consent; the consent judgment does not involve covered "loss"; and is excluded by the Policy's contractual liability exclusion.

2.      Stratford seeks a declaration that the consent judgement was procured by fraud, bad faith and/or collusion; does not represent a reasonable resolution for the Schafer Class Action; and violates public policy.

3.      Stratford seeks a declaration that it has no duty to defend and/or coverage obligations under the Policy for the Schafer Class Action based on: the Policy's contractual liability, fraud and/or insured v. insured exclusions, the "loss" definition and any covered "loss".

4.      Stratford also seeks a declaration that it has no duty to defend and/or coverage obligations for the action entitled *Rex Properties, LLC. v. Shorewood Forest Utilities, Inc,* based upon the contractual liability exclusion and "loss" definition.

2

5.      Declaration that the Policy's allocation provision applies with regard to any uncovered loss.

## PARTIES, JURISDICTION, AND VENUE

6.      Stratford is an insurance company incorporated in the State of New Hampshire with its principle place of business in New Jersey, which does business in the State of Indiana.

7.      Upon information and belief, Shorewood is a non-profit corporation that operates a sewage treatment plant in the Shorewood Forest subdivision located in Porter County, Indiana.

8.      Upon information and belief, Greg Schafer ("Schafer") is a citizen of the State of Indiana, residing in Porter County, Indiana, and is a member of the Shorewood Forest Utility and former president of Shorewood's board of directors. Schafer is a class representative in the Schafer Class Action and a purported assignee of Shorewood's rights under the Stratford Policy.

9.      Upon information and belief, Carlotta Holmes ("Holmes") is a citizen of the State of Indiana, residing in Porter County, Indiana, and is a member of the Shorewood Forest Utility and current director of Shorewood's board of directors. Holmes is a class representative in the Schafer Class Action and a purported assignee of Shorewood's rights under the Stratford Policy.

10.     This Court has jurisdiction over this case based upon complete diversity of the parties, and because the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

11.     This Court has ancillary jurisdiction over Stratford's state law based claims pursuant to 28 U.S.C. § 1367.

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§2201 and 2202 insofar Stratford seeks a declaration of its rights and duties under the insurance policy at issue.

13.     Stratford, Shorewood, Greg Schafer and Carlotta Holmes have sufficient minimum contacts with this judicial district to confer personal jurisdiction over them in this Court.

14.     Venue is proper in this District under 28 U.S.C. § 1391 because jurisdiction is based upon diversity of citizenship and the events giving rise to this claim occurred in this District.

## THE INSURANCE POLICY

15.     Stratford issued to Shorewood a Directors, Officers, Insured Entity and Employment Practices Insurance Policy BRL0013560, effective February 17, 2017 to February 2, 2018, with a per claim and aggregate limit of $1,000,000 ("Policy"). Attached hereto as Exhibit "A."

## THE PENDING UNDERLYING ACTIONS

16.     *Greg Schafer, and Carlotta Holmes, Individually and on Behalf of All Others Similarly Situated, v. Shorewood Forest Utilities, Inc., Greg Colton, Dan Clark, Ken Buczek and Terry Atherton* is an amended class action that was filed in the Porter County Superior Court, Valparaiso, Indiana, Cause No. 64D02-1705-CT-4698. Attached hereto as Exhibit "B."

17.     *Rex Properties, LLC. v. Shorewood Forest Utilities, Inc.*, a counterclaim filed in a civil action filed in the Porter County Superior Court, Valparaiso, Indiana, Cause No. 64D02-1810-PL-10200) ("Rex Claim").  Attached hereto as Exhibit "C."

**<u>Schafer Class Action</u>**

18.     The Schafer Class Action involves an action by Greg Schafer, Carlotta Holmes and a class of Shorewood utility holders against the former board of directors and Shorewood regarding the potential expansion of the Insured's sewerage system for an outside developer, Rex Properties, LLC ("Rex Properties") and the Arbor Lakes South development, pursuant to a contract entered into between Shorewood and Rex Properties ("Sewer Agreement").

19.     Upon information and belief, Schafer is a member of the utility and former president of the board of directors of Shorewood.

20.     Upon information and belief, Holmes is a member of the utility and current member of Shorewood's board of directors.

21.    Upon information and belief, Defendants Greg Colton, Dan Clark, Ken Buczek and Terry Atherton were formerly on the board of directors of Shorewood (collectively referred to as the "Former Board").

22.    Upon information and belief, Shorewood is a non-profit corporation that operates as a sewage disposal service for the development known as Shorewood wood Forest.

23.    The Class alleges there are two classes of members, Class A and B. Class A members live in Shorewood Forest and Class B members are in the service area but do not live in the Shorewood Forest development.  Class A members have one vote for each lot and Class B members have a ½ vote for each lot.

24.    The Class alleges under Shorewood's by-laws, certain actions require approval vote by the membership, including issues related to the authority of the board of directors to expand the territorial authority of the Utility service area and finance utility capital improvements through the issuance of bonds.  Under the by-laws, the board of directors can be granted authority through a majority vote of a quorum of Shorewood members.

25.    The Class alleges that when the original developer turned the Utility over to the Shorewood Forest homeowners it was advised that the Utility was not intended to, or designed to be, a regional treatment facility due to limitations with the size of the plant and the amount of land where the utility is located as well as the

close proximity of the utility to the surrounding homes in the Shorewood Forest subdivision.

26.    The Class alleges that Shorewood services approximately 1064 customers in the development and an additional 190 lots had been previously approved to be tied into the sewage treatment system. Also, that Shorewood has had three, or less, aeration tanks at various times that are functional or partially functional.

27.    The Class alleges that Indiana Department of Environmental Management ("IDEM") mandates that a sewage utility treatment plant has sufficient capacity and redundancy to properly treat all incoming sewage waste (even during times of maintenance).  It is also alleged that the defendants are aware that the Utility does not have adequate capacity or redundancy to add more lots.  Also, that on December 16, 2016, the Former Board presented false and inaccurate information from an engineer regarding the plant's treatment capacity.

28.    The Class alleges that Shorewood's Former Board owed fiduciary duties to the members, including to accurately keep track and maintain accurate records of the plant's actual treatment, hydraulic and redundancy capacity and accurately report any changes.

29.    The Class alleges that on November 17, 2016, a meeting was held by the Former Board and a preliminary resolution was approved to expand the Utility's

Certificate of Authority ("CTA") in order to provide additional utility sewage service to a proposed subdivision called Arbor Lakes South.

30.     The Class further alleges that, on December 16, 2016, Shorewood held a special meeting with the Former Board and Shorewood Forest members to hear input from the membership regarding the preliminary resolution to expand the CTA. It is alleged that during this meeting information was presented by the Former Board and an outside developer named Donald Blum ("Blum"), and it was proposed by the Former Board that the Utility's CTA be expanded by as many as 379 additional lots.

31.     The Class alleges the Former Board represented that there was no downside to the expansion despite knowing the Utility did not have adequate actual treatment, hydraulic and redundancy capacity for these 379 additional lots.

32.     The Class alleges the Former Board had adopted "Rules and Regulations for Sewage Disposal Service" in February of 2010 ("SFU Regulations"). It is alleged that the Former Board violated the SFU Regulations by falsely representing that the Utility had the present capacity to treat new waste from the proposed 379 additional homes (from other subdivisions).

33.     The Class further claims it has a "huge financial damage claim" as a result of the defendants' attempt to wrongfully expand the Utility's CTA and that substantial financial exposure and shortfalls will be incurred by reason of the defendant's wrongful actions of entering into the Sewer Agreement with Blum and

Rex Properties to expand the CTA (for the additional 379 lots).

34.    The Class alleges that the defendants engaged in fraud against the membership by presenting the membership with false and misleading information. Specifically, it was stated the proposed expansion of the CTA would be at no cost to the members, but in reality, the Utility had insufficient funds to pay for all the necessary repairs, deferred maintenance, replacement of antiquated lift stations and failing sewage lines.  In addition, there were insufficient capital reserves for the costs of constructing another new aeration station and related equipment to provide adequate actual, hydraulic and redundancy capacity for the CTA expansion.

35.    The Class alleges that the Former Board set up a referendum vote for April 20, 2017 (for the members to vote on the proposed CTA expansion) and that numerous improprieties occurred with how this vote was structured.

36.    The Class alleges the Former Board changed the course of dealing related to the process of setting up the vote as it issued unmarked ballots in unmarked envelopes to the members (by using unmarked ballots there was no way to know how many times a member voted); some members did not receive a ballot; and inaccurate / false information was provided on a separate piece of paper with the ballots to Shorewood Forest members that declared that an expansion of the CTA would be at no cost to the existing members.

37.    The Class further alleges that it was negligent for the defendants to use

the McMahon Engineering Report in the April 2017 meeting, that the defendants had failed to update this report and that new homes had been tied into the septic system since it had been done.

38.     The Class alleges that the aforementioned improprieties were disclosed to the Former Board, a day prior to when the referendum vote was to be formally counted.

39.     The Class alleges that the Former Board in response agreed to stay the counting of the referendum vote for thirty-days, the Former Board reneged on this agreement and, in collusion with developer Blum, counted the referendum votes.

40. The Class alleges the class members have been damaged because Shorewood is required to follow through with the proposed CTA expansion and Sewer Agreement.

41.     The Class also asserts that that the Sewer Agreement was one-sided as it only required Rex Properties to pay nominal sums for attorneys' fees, engineering fees and administrative fees related to the work performed for the required extension of the Utility service.

42.     The Class alleges that the Sewer Agreement obligated Shorewood to spend as much as $2,000,000 to develop and expand the sewage plant to create adequate capacity for the additional properties to be added; the Sewer Agreement provided that Rex Properties could cancel the contract at any time without any

further financial responsibility; and the defendants allowed the Sewer Agreement to be negotiated and drafted without counsel representing SFU's interests.

43.    The Class claims that the Sewer Agreement gave to Rex Properties more than 30% of the membership ownership rights in Shorewood for no consideration.

44.    The Class alleges that on January 19, 2017, the Former Board held a meeting to address CTA expansion issue and the Former Board acknowledged the concern that expansion would risk losing control over the sewage treatment facilities by the Shorewood Forest development.

45.    The Class claims the defendants also disclosed during this meeting that it would cost up to $1.6 million to design and construct a new concrete aeration tank with clarifier to provide back up for the existing tank and that Shorewood is only expected to receive $600,000 from homeowners as  part of the CTA expansion.

46.    The Class alleges that defendants intentionally ordered and expended unnecessary monies on a duplicative engineering report at the cost of $135,000 and that this report duplicated engineering plans of which the Former Board had knowledge.

47.    The Class alleges defendants never commissioned or received an up-to-date study to determine the environmental effect and impact of processing the additional sewage from the proposed CTA expansion to identify whether the influx

11

would adversely impact homeowners in the Shorewood Forest Development.

48.   The Class alleges that on July 20, 2017, the defendants held a special board meeting, without advance notice to the Shorewood membership, and approved the Sewer Agreement (obligating Shorewood to file a petition with the IURC to expand the utility sewerage service).  The Class asserts that the defendants did not have authority to enter the contract because the majority of the SFU Utility members had never knowingly voted for expansion of the SFU Utility sewage treatment service area with the appropriate knowledge and that three of the four defendants had already been voted out of office at the time of the July 20th meeting and vote of the SFU membership.

49.   The Class alleges that Rex Properties refused a request by the New Board to cancel and rescind the Sewer Agreement.

50.   The Class claims that Shorewood faces a $14M damages claim from Rex Properties as a result of the contractual obligations of the Sewer Agreement. Stratford has provided a defense for Shorewood for the Schafer Class Action subject to a reservation of rights.

**Rex Claim**

51.   In a separate proceeding, Rex Properties filed an Answer and Counter-Claim against Shorewood for breach of contract of the Sewer Agreement.

52.   Rex Properties alleges that on July 20, 2017, Rex Properties and

Shorewood entered into the Sewer Agreement executed by Greg Colton as president of Shorewood and that the Sewer Agreement required Shorewood to file a petition with the IURC to expand Shorewood's CTA.

53.     Rex Properties further alleges that several Shorewood Board members were replaced through an election and that the newly elected board members (which included Greg Schafer) voted to repudiate the Sewer Agreement.

54.     Rex Properties alleges that Shorewood has not filed a petition with IURC for expansion of Shorewood's CTA as required in the Sewer Agreement.

55.     Rex Properties alleges that it has complied with all of its obligations under the Sewer Agreement, and Shorewood, through the newly elected board members and Greg Schafer, repudiated the Sewer Agreement and failed to file a petition with the IURC and that these actions were material breaches of the Sewer Agreement.

56.     Rex Properties asserts, in its pending summary judgment motion in the Rex Claim, that the newly elected board members directed Shorewood to refuse to carry out Shorewood's obligations under the Sewer Agreement.

57.     Rex Properties asserts, in its pending summary judgment motion in the Rex Claim, that by letter dated July 24, 2017, Greg Schafer returned Rex Properties' $1,000.00 down payment made by Rex Properties made pursuant to the Sewer Agreement.

58.     Stratford has provided a defense to Shorewood for the Rex Claim subject to a reservation of rights.

### Consent Judgment

59.     On August 10, 2020, Greg Schafer and Carlotta Holmes, filed a motion for entry of consent judgment and for setting of scheduling conference for the Schafer Class Action.   Attached to this motion is the Stipulation for Entry of Judgment by Consent Against Defendant, and the Assignment and Covenant not to Execute. Attached heretofore as Exhibit "D."

60.     The consent judgment order provides that Greg Schafer, individually and on behalf of all others similarly situated, and defendant Shorewood agreed to enter into a consent judgment in the amount of $5,000,000.00. Attached heretofore as Exhibit "E." (Exhibits "D" and "E" are collectively referred to as the Consent Judgment).

61.     The Stipulation for Entry of Judgment by Consent Against Defendant provides that Greg Schafer, individually and on behalf of all others similarly situated, and defendant Shorewood agreed to enter into a Consent Judgment in the amount of $5,000,000.00 and requests the Court enter judgment against defendant Shorewood (only) by consent.

62.     The Assignment and Covenant not to Execute was signed by Schafer, and Margie Stiles ("Stiles"), President of Shorewood; Anthony Cimino ("Cimino"),

Vice-President of Shorewood; and Robin Carlascio ("Carlascio"), Secretary of Shorewood.

63.     The Assignment and Covenant not to Execute provides that the Schafer Class Action arises out of the negligent and wrongful acts of the Former Board during and prior to the calendar year of 2017.

64.     The Assignment and Covenant not to Execute provides that Shorewood and the Former Board are Insureds under the Policy, which provides a maximum combined limit of $1,000,000.00.

65.     The Assignment and Covenant not to Execute provides that plaintiffs demanded $9,616,978.86 on June 11, 2018, and have incurred additional attorney fees, damages and costs since that demand.

66.     The Assignment and Covenant not to Execute provides that Stratford rejected plaintiffs' settlement demand and refused to pay the $1,000,000.00 limit.

67.     The Assignment and Covenant not to Execute provides that Stratford's refusal to pay its limit was breach of the Policy and duty to deal in good faith.

68.     The Assignment and Covenant not to Execute provides that defendant Shorewood shall allow a consent judgment in the amount of $5,000,000.00, which is less than the settlement demand previously made by plaintiffs.

69.     The Assignment and Covenant not to Execute provides that defendant Shorewood assigns to plaintiffs all of the rights and claims against Stratford,

including by reason of the Policy; negligence and/or bad faith for failing to settle within policy limit; denial of coverage; placing its interests ahead of its insureds; failing to agree to indemnify its insureds for any judgment in excess of policy limit; and breach of its duty to deal in good faith with its insureds and filing an unauthorized and improper Declaratory Judgment action further creating and exposing its insureds to additional damages.

70.     The Assignment and Covenant not to Execute provides that plaintiffs agree they will not levy any execution or seek to collect or enforce the judgment against Shorewood or impair any of its corporate or business income or assets. Plaintiffs warrant that they will attempt to exclusively recover the amount of the judgment in an action against Stratford based upon the Policy and Assignment.

71.     The Assignment and Covenant not to Execute provides that plaintiffs have not relied upon any statements or representations made by Shorewood as to the legal validity or viability of the claims of Shorewood against Stratford.

72.     The Assignment and Covenant not to Execute provides that once Schafer's claim against Stratford has been finally determined and adjudicated, whether by settlement, judgment or appeal, he will cause a satisfaction of judgment to be entered, satisfying and releasing the consent judgment, irrespective of whether plaintiffs have succeeded in collecting the full amount of the judgment against Stratford and will dismiss the lawsuit against all parties in its entirety. Also, the

agreement is a covenant not to execute from plaintiffs and Schafer to Shorewood and is not contingent upon whether plaintiffs and Schafer are successful in their claims against Stratford.

73.     The Assignment and Covenant not to Execute provides that it is understood, however, if it is determined that the consent judgment is invalid, the agreement shall be null, and void and the parties returned to status quo as if the agreement was never entered into by the parties.

74.     The Assignment and Covenant not to Execute provides that Assignment shall not impair or be a set off or credit against damages that are being sought, or any judgment obtained against the remaining defendants in the Schafer Class Action or any other litigation.

75.     On August 18, 2020, the Court for the Schafer Class Action issued and entered the order granting Greg Schafer's motion for the Consent and Stipulation of Judgment against Shorewood in the amount of $5,000.000.00.

76.     On September 14, 2020, counsel for Greg Schafer, filed with the Court for the Schafer Class Action a Motion for Supplemental Proceedings. Attached heretofore as Exhibit "F."

77.     On September 18, 2020, counsel for Schafer, filed with the Court for the Schafer Class Action an Amended Motion for Supplemental Proceedings. Attached heretofore as Exhibit "G."

78.     Schafer and/or Shorewood assert that Stratford has an obligation under its Policy to make payment to Schafer, Individually and on Behalf of All Others Similarly Situated, for the Consent Judgment.

79.     Schafer, a former president of the board of directors of Shorewood and current member of the utility, is a named plaintiff in the Schafer Class Action.

80.     Co-counsel for the Class, and for Schafer, is Schafer's brother, Timothy S. Schafer.

81.     Shorewood is represented by Paul Poracky in the Schafer Class Action and the Rex Claim.

82.     Paul Poracky was retained by Shorewood with Stratford's consent.

83.     Upon information and belief, Paul Poracky reported to Schafer when he was the president of Shorewood's board of directors and continues to report to the newly elected board members, who are also part of the Class.

84.     Rex Properties claims that Sewer Agreement was breached when the newly elected board, which included Schafer, repudiated it immediately following their election, and by Schafer's July 24, 2017 letter returning Rex Properties' $1,000.00 earnest money deposit for the Sewer Agreement.  The newly elected board also returned a $43,000.00 escrow deposit to Rex Properties and advised Rex that Shorewood would not move forward with presenting the Sewer Agreement to the IURC for purposes of seeking a CTA expansion.

85.    Counsel for Shorewood, in separate court filings in the Rex Claim, acknowledges that Rex Properties' claim is that newly elected board members wrongfully rescinded the Sewer Agreement.

86.    Shorewood, Schafer and/or Holmes claim that Shorewood faces a $14M damages claim from the Rex Claim.

87.    With the Class and Shorewood entering into the Consent Judgment, the Class, as utility holders and owners of Shorewood, have essentially entered into an agreement with themselves.

88.    The Assignment and Covenant not to Execute was executed by Schafer, Cimino and Stiles in bad faith and for their own self-interest and in an effort to pass the alleged liability for the newly elected board's repudiation of the Sewer Agreement, through Shorewood, to Stratford in the Schafer Class Action.

89.    Shorewood and/or its counsel did not advise Stratford that Shorewood had entered, or intended to enter, into the Consent Judgement.

90.    The amount of the Consent Judgment is not reasonable based upon the defenses available to Schafer Class Action and Rex Claim.

91.    Counsel for Shorewood has advised Stratford that substantial defenses exist to Rex Properties' contractual claim and that Shorewood should be able to defeat Rex Properties' motion for summary judgment and claims against Shorewood. These defenses include, but are not limited to, Rex Properties not having

adequate project funding and/or incurring any costs or undertaking any action to move forward with the process to construct and sell the homes to be built on at Arbor Lakes South and that Rex Properties failed to mitigate its damages (as the homes could still be built with individual septic systems).

92.   Counsel for Shorewood, in separate court filings in the Rex Claim concerning a discovery dispute, has argued that the Sewer Agreement is not valid because Rex Properties failed to attach the required documentation showing ownership of all of the land for the Arbor Lakes South development.  Also, the option for approximately half of the land, that the homes for Arbor Lakes South were to be built on, was voluntarily given up by Rex Properties and that Rex Properties advised the sellers that the Sewer Agreement was no longer a viable contract and that Rex Properties had its $10,000.00 earnest money deposit for the land returned by the seller (making performance of the Sewer Agreement objectively impossible).

93.   Counsel for Shorewood, in separate court filings in the Rex Claim concerning a discovery dispute, has argued that Rex Properties has failed to fully develop the nearby, smaller Arbor Lakes Estates subdivision in over 13 years and Blum's damage estimate of $14,000,000 has no support or foundation.

94.   Defense counsel for Shorewood, however, has sought six separate extensions (over the course of seven months) to respond to the pending summary judgment motion filed by Rex Properties causing a delay in advancing the available

defenses and assist in Shorewood's efforts to recover from Stratford contractual damages that Rex Properties will not be entitled under the Sewer Agreement and/or that are not covered under the Policy.

95.     Upon information and belief, Shorewood and/or its agents and/or assigns did not engage in any serious settlement negotiations with the Class Plaintiffs and have entered into the Consent Judgment as part of an effort to recover amounts from Stratford for its own benefit and while keeping the issues in the Rex Claim open to provide Schafer time to execute the unsupported Consent Judgment against Stratford in the Schafer Class Action.

96.     The claims made against the defendants in the Schafer Class Action have been denied by the Former Board defendants and the Former Board did not enter into a separate consent judgment offered by Greg Schafer and his counsel, Timothy S. Schafer.

**COUNT I: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO SATISFY THE CONSENT JUDGMENT UNDER THE TERMS OF THE POLICY BECAUSE THE INSURED BREACHED THE POLICY CONDITION PROHIBITING THE ADMISSION OF LIABILITY, SETTLEMENT OF A CLAIM AND THE VOLUNTARY ASSUMPTION OF AN OBLIGATION**

97.     Stratford repeats and incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

98.     Stratford has no obligation for the Consent Judgment under the Policy based upon Section VI., Conditions, A.1.c., of the Policy.

99.   Section VI. Conditions, A.1.c., provides that: "[A]s a condition precedent to the right of coverage provided by this Coverage Part, the insured must do the following: … c. Not admit liability, settle any claims, or assume any obligations without our prior written consent."

100.   Stratford never provided consent to Shorewood to enter into the Consent Judgement, admit liability or settle the Schafer Class Action.

101.   As a result of such breach of this condition precedent of the Policy, coverage is not available for the Consent Judgment.

## COUNT II: FOR A DECLARATION THAT THE CONSENT JUDGMENT IS INVALID AND UNENFORCEABLE BECAUSE THE AMOUNT OF THE CONSENT JUDGMENT IS NOT REASONABLE

102.   Stratford repeats and incorporates by reference paragraphs 1 through 101 as if fully set forth herein.

103.   The amount of the $5,000,000 Consent Judgment is not consistent or supported by the facts or legal theories regarding Shorewood's liability.

104.   Stratford was advised that Shorewood has strong defenses to Rex Properties' contractual claim and should be able to defeat Rex Properties' motion for summary judgment as well as Rex Properties' claims against Shorewood.

105.   Stratford has never been provided with any reports or assessments from Shorewood or its counsel supporting a judgment for $5,000,000.00, or the Policy limit.

106.    Upon information and belief, Shorewood and/or its counsel did not engage in any serious settlement negotiations with the Class Plaintiffs.

107.    Based upon the aforementioned, the $5,000,000 Consent Judgment is an unreasonable amount for Shorewood to resolve the Class' claims against it and should be found to be void and unenforceable.

## COUNT III: FOR A DECLARATION THAT THE CONSENT JUDGMENT IS INVALID AND UNENFORCEABLE AS IT WAS PROCURED THROUGH FRAUD, BAD FAITH AND/OR COLLUSION

108.    Stratford repeats and incorporates by reference paragraphs 1 through 107 as if fully set forth herein.

109.    Stratford has no obligation under the Policy for the Consent Judgment as it was procured by fraud on the part of Shorewood, Greg Schafer, Carlotta Holmes and/or their agents and/or assigns is therefore void and unenforceable under Indiana law.

110.    Stratford has no obligation under the Policy for the Consent Judgment as it was procured by bad faith on the part of Shorewood, Greg Schafer, Carlotta Holmes and/or their agents and/or assigns and is therefore void and unenforceable under Indiana law.

111.    Stratford has no obligation under the Policy for the Consent Judgment as it was procured by collusion on the part of Shorewood, Greg Schafer, Carlotta

Holmes and/or their agents and/or assigns and is therefore void and unenforceable under Indiana law.

112.   As a result of the aforementioned, the Consent Judgment should be stricken as a product of collusion and being entered into by Shorewood in bad faith and with the intention of committing a fraud against Stratford.

## COUNT IV: FOR A DECLARATION THAT THE CONSENT JUDGMENT IS INVALID AND UNENFORCEABLE BECAUSE IT IS AGAINST PUBLIC POLICY

113.   Stratford repeats and incorporates by reference paragraphs 1 through 112 as if fully set forth herein.

114.   The Assignment and Covenant not to Execute entered into between Greg Schafer and Shorewood contains the following paragraph: "Whereas, the claims brought by plaintiffs arise out of the negligent and wrongful act of the Board of Directors of Shorewood Forest Utilities, Inc., and in particular, Greg Colton, Dan Clark, Ken Buczek and Terry Atherton during and prior to the calendar year of 2017…"

115.   The individual defendants in the Schafer Class Action (i.e., the Former Board) have declined to accept the Consent Judgment and deny any liability faced in the Schafer Class Action.

116.   The $5,000,000 Consent Judgement would be a windfall to the Class Action plaintiffs, and in turn Shorewood, as it has never been shown that the Former Board and/or Shorewood is liable to the Class for any damages.

117.   Enforcing the Consent Judgment would violate public policy because it would reward parties for their negligent and wrongful acts.

## COUNT V: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO SATISFY THE CONSENT JUDGMENT UNDER THE TERMS OF POLICY BECAUSE SHOREWOOD IS NOT "LEGALLY OBLIGATED" TO PAY THE CONSENT JUDGMENT

118.   Stratford repeats and incorporates by reference paragraphs 1 through 117 as if fully set forth herein.

119.   Stratford has no obligation for the Consent Judgment based upon the Policy's Insuring Clause.

120.   Insuring Agreement A., Directors and Officers Liability, of the Policy, provides:

We will pay on behalf of the insured all "loss" that the insured becomes legally obligated to pay because of a "claim" first made against the insured during the policy period for "wrongful acts":

a.  Arising solely out of the "individual insureds" performance of his or her duties on behalf of the "organization"; or

b.  Attributed to the "organization".

121.   The Policy's Insuring Clause requires Stratford to pay on behalf all

"loss" the Insured is legally obligated to pay because of a "claim" for "wrongful acts" attributed to Shorewood.

122.   In addition, "loss" is defined to not include: "a. Any amount for which the insured is not financially liable or legally obligated to pay."

123.   The Consent Judgement does not require any payment from Shorewood.

124.   The Consent Judgment also provides that "[I]t is understood, however, if it is determined that the consent judgment is invalid, this agreement shall be null and void and the parties shall be returned to status quo as if this agreement was never entered into by the parties."

125.   Given the Consent Judgment contains a covenant not to execute against Shorewood and does not impose any obligation on Shorewood to pay any amount of it, it does not make Shorewood "financially liable" or place it under any "legal obligation" to pay the Consent Judgment.

126.   As result, the Consent Judgment does not represent a financial or legal obligation of Shorewood and no coverage is available for it under the Policy.

**COUNT VI: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO SATISFY THE CONSENT JUDGMENT UNDER THE TERMS OF THE POLICY BECAUSE IT DOES NOT CONSTITUTE "LOSS"**

127.   Stratford repeats and incorporates by reference paragraphs 1 through 121 as if fully set forth herein.

128.    Stratford has no obligation for the Consent Judgment based upon the Policy's Insuring Clause and "loss" definition.

129.    Insuring Agreement A., Directors and Officers Liability, of the Policy, provides:

> We will pay on behalf of the insured all "loss" that the insured becomes legally obligated to pay because of a "claim" first made against the insured during the policy period for "wrongful acts":
>
> c. Arising solely out of the "individual insureds" performance of his or her duties on behalf of the "organization"; or
>
> d. Attributed to the "organization".

130.    The Policy's Insuring Clause requires Stratford to pay on behalf all "loss" the Insured is legally obligated to pay because of a "claim" for "wrongful acts" attributed to Shorewood.

131.    The Policy's definition of "loss" provides that "loss" does not include "c. Damages owed based on an express obligation by written or oral agreement or amounts owed under any contract or agreement."

132.    Shorewood relies on the Rex Properties' alleged and untested potential damages from contractual obligations related to Sewer Agreement as the basis for the $5,000,000 Consent Judgment, as these damages arising from this contractual

liability are not "loss" under the Policy.

133.   As result, the Consent Judgment does not involve covered "loss" and

no coverage is available for it under the Policy.

## COUNT VII: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO SATISFY THE CONSENT JUDGMENT UNDER THE TERMS OF POLICY BECAUSE EXCLUSION 3., APPLIES TO EXCLUDE COVERAGE FOR THE CONSENT JUDGMENT

134.   Stratford repeats and incorporates by reference paragraphs 1 through

133 as if fully set forth herein.

135.   Stratford has no obligation for the Consent Judgment under the Policy

based upon Section III., Exclusion, 3., of the Policy.

136.   Exclusion 3., provides "This insurance does not apply to any 'loss' or

'defense costs' in connection with any 'claim' made against an insured, arising out

of, directly or indirectly resulting from, or in consequence of, or in any way

involving: … 3. Liability under any contract or agreement except liability that would

exist even in the absence of the contract or agreement. However, we will indemnify

the insured for 'defense costs' but only with respect to a 'claim' that alleges a breach

of an express or implied employment contract."

137.   The Consent Judgment imposes liability based upon a contractual

agreement between Shorewood and Greg Schafer, Individually and on Behalf of All

Others Similarly Situated.

138.   As a result of this exclusion, coverage is not available for the Consent

Judgment.

## COUNT VIII: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO DEFEND OR INDEMNIFY SHOREWOOD IN CONNECTION WITH THE SCHAFER CLASS ACTION BECAUSE EXCLUSION III.3., BARS COVERAGE

139.   Stratford repeats and incorporates by reference paragraphs 1 through 138 as if fully set forth herein.

140.   Stratford previously reserved its rights to deny coverage for the Schafer Class Action pursuant to Exclusion III.3., of the Policy.

141.   Shorewood, Greg Schafer and/or Carlotta Holmes claim that Shorewood faces a $14M damage claim from Rex Properties as a result of the Sewer Agreement.

142.   In accordance with Exclusion III.3., previously set forth above, the Schafer Class Action is based upon, arises from, is in consequence or involves the Sewer Agreement.

143.   Stratford is entitled to a declaratory judgment in its favor, declaring that Stratford has no duty to defend the Schafer Class Action and coverage for all "loss" is excluded pursuant to Exclusion III.3., of the Policy.

## COUNT IX: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO DEFEND OR INDEMNIFY SHOREWOOD IN CONNECTION WITH THE SCHAFER CLASS ACTION BECAUSE EXCLUSION III.15., BARS COVERAGE

144.   Stratford repeats and incorporates by reference paragraphs 1 through

143 as if fully set forth herein.

145.    Stratford previously reserved its rights to deny coverage for the Schafer Class Action to Exclusion III.15., of the Policy.

146.    Exclusion 15., provides "This insurance does not apply to any 'loss' or 'defense costs' in connection with any 'claim' made against an insured, arising out of, directly or indirectly resulting from, or in consequence of, or in any way involving: … 15. Any 'claim' by, at the behest of, or on behalf of the 'organization' or any 'individual insured' …"

147. The Schafer Class Action is a "claim" brought by Greg Schafer against Shorewood and the Former Board.

148.    Greg Schafer is the former president of the Shorewood board of directors and qualifies as an "individual insured" under the Policy.

149.    In accordance with Exclusion III.15., the Schafer Class Action, arises out of, directly or indirectly results from, is in consequence of, or involve "claim" by Greg Schafer.

150.    Stratford is entitled to a declaratory judgment in its favor, declaring that the Stratford has no duty to defend the Schafer Class Action and coverage for all "loss" is excluded pursuant to Exclusion III.15., of the Policy.

**COUNT X: FOR A DECLARATION STRATFORD HAS NO DUTY TO INDEMNIFY SHOREWOOD IN CONNECTION WITH THE SCHAFER CLASS ACTION BECAUSE IT SEEKS UNCOVERED "LOSS" UNDER THE POLICY**

151.   Stratford repeats and incorporates by reference paragraphs 1 through 150 as if fully set forth herein.

152.   Insuring Agreement A., Directors and Officers Liability, of the Policy, provides:

> We will pay on behalf of the insured all "loss" that the insured becomes legally obligated to pay because of a "claim" first made against the insured during the policy period for "wrongful acts":
>
> a.   Arising solely out of the "individual insureds" performance of his or her duties on behalf of the "organization"; or
>
> b. Attributed to the "organization".

153.   The Policy's Insuring Clause requires Stratford to pay on behalf all "loss" the Insured is legally obligated to pay because of a "claim" for "wrongful acts" attributed to Shorewood.

154.   "Loss" does not include: "c. Damages owed based on an express obligation by written or oral agreement or amounts owed under any contract or agreement."

155.   The Schafer Class Action seeks damages that are allegedly owed as a result of liability arising from the Sewer Agreement.

156.    Stratford is entitled to a declaratory judgment in its favor, declaring that the Shorewood is not entitled to coverage for the Schafer Class Action as any and all damages owed for the Sewer Agreement are not "loss" under the Policy.

## COUNT XI:  FOR DECLARATION THAT STRATFORD HAS NO DUTY TO INDEMNIFY SHOREWOOD IN CONNECTION WITH THE SCHAFER CLASS ACTION BECAUSE EXCLUSION III.8., BARS COVERAGE

157.    Stratford repeats and incorporates by reference paragraphs 1 through 156 as if fully set forth herein.

158.    Stratford previously reserved its rights to deny coverage for the Schafer Class Action to Exclusion III.8., of the Policy.

159.    Exclusion III.8., provides "This insurance does not apply to any 'loss' or 'defense costs' in connection with any 'claim' made against an insured, arising out of, directly or indirectly resulting from, or in consequence of, or in any way involving: … 8. Any fraudulent, dishonest, or criminal act. However, this exclusion does not apply to 'defense costs' or 'loss' incurred until such conduct is established in a final and non-appealable judgment or adjudication in the underlying action to be fraudulent, dishonest or criminal.  The 'wrongful act' of any 'individual insured' will not be imputed to any other 'individual insured'."

160.    In the Schafer Class Action, it is alleged the defendants committed acts of fraud and malfeasance.

161.    As a result, pursuant to Exclusion III.8., Stratford has no obligation to

pay any amounts awarded for any fraudulent or criminal acts of the Insured in connection with the Schafer Class Action.

## COUNT XII: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO DEFEND OR INDEMNIFY SHOREWOOD IN CONNECTION WITH THE REX CLAIM BECAUSE EXCLUSION III.3., BARS COVERAGE

162.   Stratford repeats and incorporates by reference paragraphs 1 through 161 as if fully set forth herein.

163.   Stratford previously reserved its rights to deny coverage for the Schafer Class Action pursuant to Exclusion III.3., of the Policy.

164.   Shorewood, Greg Schafer and/or Carlotta Holmes claim that Shorewood faces a $14M damage claim from Rex Properties as a result of the Sewer Agreement.

165.   In accordance with Exclusion III.3., previously set forth above, the Schafer Class Action and Rex Claim are based upon, arise from, are in consequence or involve the Sewer Agreement.

166.   Stratford is entitled to a declaratory judgment in its favor, declaring that the Stratford has no duty to defend the Rex Claim and coverage for all "loss" is excluded pursuant to Exclusion III.3., of the Policy.

## COUNT XIII: FOR A DECLARATION STRATFORD HAS NO DUTY TO INDEMNIFY SHOREWOOD IN CONNECTION WITH THE SCHAFER CLASS ACTION BECAUSE IT SEEKS UNCOVERED "LOSS" UNDER THE POLICY

167.   Stratford repeats and incorporates by reference paragraphs 1 through 166 as if fully set forth herein.

168.   Insuring Agreement A., Directors and Officers Liability, of the Policy, provides:

> We will pay on behalf of the insured all "loss" that the insured becomes legally obligated to pay because of a "claim" first made against the insured during the policy period for "wrongful acts":
>
> a.   Arising solely out of the "individual insureds" performance of his or her duties on behalf of the "organization"; or
>
> b.   Attributed to the "organization".

169.   The Policy's Insuring Clause requires Stratford to pay on behalf all "loss" the Insured is legally obligated to pay because of a "claim" for "wrongful acts" attributed to Shorewood.

170.    "Loss" does not include "c. Damages owed based on an express obligation by written or oral agreement or amounts owed under any contract or agreement."

171.   The Rex Claim seeks damages that are allegedly owed as a result of liability arising from the Sewer Agreement.

172.    Stratford is entitled to a declaratory judgment in its favor, declaring that the Shorewood is not entitled to coverage for the Rex Claim as any and all damages owed for the Sewer Agreement are not "loss" under the Policy.

## COUNT XIV: DECLARATION THAT STRATFORD IS ENTITLED TO AN ALLOCATION OF THE COVERED AND UNCOVERED AMOUNTS OF THE SCHAFER CLASS ACTION AND REX CLAIM

173.    Stratford repeats and incorporates by reference paragraphs 1 through 172 as if fully set forth herein.

174.    Section I.5., Allocation, of the provides "Subject to this section, if any 'claim' the insureds incur 'loss' covered by this policy and 'loss' not covered by this policy either because the 'claim' against the 'insureds' includes both covered and uncovered matters or because the 'claim' is made against both insureds who are afforded coverage for such 'claim' and others, including insureds, who are not afforded coverage for such 'claims', both the insureds and we agree to use our best efforts to allocate such amount between covered 'loss' and uncovered 'loss' based upon the relative legal and financial exposure of the parties to covered and uncovered matters; provided however that 100% of any 'defense costs' incurred by insureds in such 'claim' will be allocated to 'loss'.  In any arbitration, suit and or other proceeding among us, no presumption shall exist concerning what is a fair and proper allocation between covered 'loss' and uncovered 'loss'".

175.    If any coverage is available under the Policy for the Schafer Class

Action or the Rex Claim, Stratford is entitled to declaratory relief and/or judgment allocating amounts incurred in the Stratford Class Action and the Rex Claim between covered and non-covered matters, pursuant to Section I.5., Allocation, of the Policy.

### PRAYER FOR RELIEF

**WHEREFORE**, Stratford seeks judgment in their favor as follows:

a.   Declaration that the Consent Judgment is invalid and unenforceable as it was procured through fraud, bad faith and/or collusion;

b.   Declaration that the Consent Judgment is invalid and unenforceable because the amount of the Consent Judgment is not reasonable;

c.   Declaration that the Consent Judgment is invalid and unenforceable because it is against public policy;

d.   Declaration that Stratford has no duty to satisfy the Consent Judgment under the terms of policy because Shorewood is not "legally obligated" to pay the Consent Judgment;

e.   Declaration that Stratford has no duty to satisfy the Consent Judgment under the terms of the Policy because it does not constitute "loss";

f.   Declaration that Stratford has no duty to satisfy the Consent Judgment under the terms of Policy because Exclusion III. 3., applies to exclude coverage for the Consent Judgment;

g.   Declaration that Stratford has no duty to satisfy the Consent Judgment

under the terms of the Policy because the insured breached the Policy

condition prohibiting the admission of liability, settlement of a claim

and the voluntary assumption of an obligation;

h.    Declaration that Stratford has no duty to defend or indemnify Shorewood in connection with the Schafer Class Action because Exclusion III.3., bars coverage;

i.    Declaration that Stratford has no duty to defend or indemnify Shorewood in connection with the Schafer Class Action because Exclusion III.15., bars coverage;

j.    Declaration Stratford has no duty to indemnify Shorewood in connection with the Schafer Class Action because it seeks uncovered "loss" under the policy;

k.    Declaration that Stratford has no duty to indemnify Shorewood in connection with the Schafer Class Action because Exclusion III.8., bars coverage;

l.    Declaration that Stratford has no duty to defend or indemnify Shorewood in connection with the Rex Claim because Exclusion III.3, bars coverage;

m.   Declaration Stratford has no duty to indemnify Shorewood in connection with the Rex Claim because it seeks uncovered "loss" under the Policy:

n.   Declaration that, in the event Shorewood is entitled to any coverage under the Policy, Stratford is entitled to allocation of the covered and uncovered amounts incurred in the Schafer Class Action and the Rex Claim; and

o.   Award Stratford reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## JURY DEMAND

The Plaintiff, by counsel, now demands trial by jury.

Respectfully Submitted,

KOPKA PINKUS DOLIN PC


By:   */s/ Sheri Bradtke McNeil*
        Sheri Bradtke McNeil (#19280-45)
        Attorney for Stratford Insurance Company

KOPKA PINKUS DOLIN PC
9801 Connecticut Drive
Crown Point, IN  46307
Tel: (219) 794-1888
Fax: (219) 794-1892
Email: SBMcNeil@kopkalaw.com