UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| STRATFORD INSURANCE COMPANY,             )<br>                                                                  )<br>               Plaintiff,                                       )<br>                                                                  )<br>      vs.                                                         )     CAUSE NO. 2:20-CV-372-PPS-JEM<br>                                                                  )<br>SHOREWOOD FOREST UTILITIES INC.,     )<br>GREG SCHAFER, CARLOTTA HOLMES,    )<br>individually and on behalf of all others         )<br>similarly situated,                                       )<br>                                                                  )<br>               Defendants.                                 ) | |

# OPINION AND ORDER

This case is related to a whole panoply of other cases, involving protracted and complicated litigation all stemming from a proposed expansion of a sanitary sewer system in the Shorewood Forest Subdivision. Stratford Insurance Company seeks 3 declarations related to its insurance coverage obligations. Stratford asks me to find that it has no obligation with regard to: (1) a class action lawsuit filed in state court by Greg Schafer (a Shorewood Forest Utility ("SFU") member who later became the President of SFU's board of directors) and Carlotta Holmes (an SFU member and class representative who became the current director of SFU's board of directors) on behalf of SFU against certain former members of the SFU board of directors for their authorizing SFU to enter into a sanitary sewer agreement ("SSA") to expand SFU's sewer system through a contract with Rex Properties; (2) a settlement and consent judgment entered into between the class and defendant SFU in the underlying class action lawsuit; and (3)

Rex Properties' counterclaim which was filed in yet another state case involving the SSA.

There are presently five motions before me: (1) Defendants SFU, Schafer, and Holmes' Motion to Dismiss the Complaint [DE 19]; (2) Plaintiff's Motion to Strike Statements in Defendants' Motion to Dismiss [DE 22]; (3) Plaintiff's Motion to Dismiss Defendants' Counterclaim [DE 30]; (4) Plaintiff's Request for Judicial Notice in Support of Stratford's Motion to Dismiss Counterclaim [DE 37]; and (5) Motion to Strike Stratford's Request for Judicial Notice in Support of Stratford's Motion to Dismiss Counterclaim [DE 38]. Because I find the complaint for declaratory judgment is proper, Defendants' motion to dismiss will be denied. The first two counts of the counterclaim will be dismissed, but otherwise, the motion to dismiss the counterclaim will also be denied.

**Background**

The procedural background of this case is extremely convoluted because it is related to several other pending cases in state court (as well as a few in federal court). I have reviewed the dockets of the underlying state cases as well as listened to oral argument presented by the parties in this case on September 23, 2021. Because it is important to the posture of this case to consider the other surrounding lawsuits, I'll do my best to boil everything down and summarize only what is necessary to decide the present motions before me.

Back in 2017, Stratford Insurance issued to SFU a "Directors, Officers, Insured

Entity and Employment Practices Insurance Policy," BRL 0013560, which was effective February 17, 2017, to February 2, 2018. [Compl., DE 1, at 4; Ex. A.] The insurance policy contained a per claim and aggregate limit of $1,000,000. *Id.*

This controversy started when SFU, at the insistence of several board members, entertained the idea of expanding its subdivision by as many as 379 new homes to be developed by an entity known as Rex Properties. [DE 1 at 8.] But an initial stumbling block arose, which was whether the existing sanitary sewer system had the capacity to take on these potential new homes. So SFU hired several different entities to perform engineering studies to answer that basic question.

Before the SSA was actually entered into, the underlying state class action lawsuit was filed. On May 12, 2017, Schafer and Holmes, on behalf of a class of SFU's utility holder members, sued the then existing board of directors and SFU attempting to halt the proposed expansion. [DE 1 at 5.] *See Schafer v. SFU, Colton, et al.*, Porter County Case No. 64D02-1705-CT-04698 (filed May 12, 2017). The lawsuit originally sought only equitable relief to preserve the status quo and prevent the execution of the SSA with Rex Properties. Schafer and Holmes alleged in the class action that SFU's board of directors improperly approved of a plan to expand SFU's sewage treatment plant beyond its capacity, and violated its fiduciary duties to SFU's utility members by not being up front about the costs and by ignoring open meetings requirements. [*Id.* at 7-9; *see also* complaint, filed on May 12, 2017, in Porter County Case No. 64D-02-1705-CT-04698.]

3

The month after the class action lawsuit was filed, the SSA between SFU and Rex was "executed" on July 20, 2017. (To be sure, there appear to be questions regarding the propriety of the execution of the agreement.) But in any event, shortly thereafter, there was an election, and 3 out of the 4 SFU board members were replaced. Greg Schafer, the named plaintiff in the class action, was elected as the new president of the SFU board (and he opposed the SSA). On the night of that election, the new board immediately voted to rescind the SSA. The class plaintiffs then filed a first amended complaint (no longer requesting equitable relief given the change in leadership and the SFU board's decision to rescind the SSA), but still seeking damages due to the former board allegedly presenting inaccurate information from an engineer regarding the plant's treatment capacity, holding a special meeting, and presenting the membership with false and misleading information like the expansion would be at no cost, and setting up an improper referendum. [*Id.* at 7-9; Ex. B.] In this class action, Stratford has provided a defense to both SFU and the former board members subject to a reservation of rights letter in the class action. [*Id.* at 12.]

Following protracted litigation in the class action including motions to dismiss, a motion for summary judgment, motion to decertify the class, and motion for leave to file an interlocutory appeal (which were all denied), on August 10, 2020, the class action plaintiffs filed a motion for entry of consent judgment in the class action. *Id.* The consent judgment provides that plaintiff Schafer (who remember, by this time, is on the board of SFU), individually and on behalf of all others similarly situated, and defendant

4

SFU (and only defendant SFU, not the other former board members that were also defendants named in the class action) agreed to enter into a consent judgment against only SFU in the amount of $5,000,000. [*Id.*; DE 1 Exs. D and E.]

Stratford claims it never agreed to this consent judgment. Additionally, the class action plaintiffs Schafer and Holmes also entered into an Assignment and Covenant not to Execute with SFU, in which the parties agreed that all of SFU's rights under the Policy would be assigned to the class action plaintiffs (including the right to pursue Stratford for alleged breach of its duty of good faith and fair dealing by refusing to pay its policy limits in the class action), and the class action plaintiffs would only seek to enforce the consent judgment against Stratford. [*Id.* at 15-16.] Stratford claims the consent judgment is a collusive agreement, entered into in bad faith and intended to require Stratford to pay Schafer and Holmes (who are really on both sides of the fence, so this payment is indirectly going to SFU) an unreasonable amount and/or does not reflect the potential exposure alleged against the former board of directors and/or is not covered under the policy. [*Id.* at 19-21.]

After the consent judgment was entered, the class action plaintiffs moved for proceedings supplemental in the state case because the consent judgment was not satisfied. Although it is difficult to discern exactly what is left of this class action, it seems that the claims in the amended complaint are still pending against former board members (Colton, Clark, Buczek, and Atherton) for their alleged breach of fiduciary duties and malfeasance regarding the potential expansion of the sewer system and for

5

their allegedly phony communications with the rest of the homeowner members. A jury trial is set before the Porter County Superior Court on October 11, 2021 in the case against the former board members.

In addition to the class action, another lawsuit was filed in state court. The former board members (who were upstaged in the election and are no longer SFU board members) filed a declaratory judgment complaint, trying to get a ruling that the SSA was enforceable against SFU and binding on SFU and the new board of directors. *SFU, Colton, et al. v. Schafer et al.*, Porter County Case No. 64D02-1810-PL-10020 (filed October 15, 2018). [DE 20 at 3-4.] This is a curious case. Why do the *former* board members care about this that much? In any event, the declaratory judgment action prompted Rex Properties to file a counterclaim against SFU for its breach of the SSA. The former board members later voluntarily dismissed their declaratory action, but the counterclaim remains. [DE 20 at 9.] SFU claims that it now faces $14 million in damages from this Rex counterclaim. [DE 1 at 19.][1] Stratford has also provided a defense to SFU for the counterclaim, labeled the "Rex Claim" by the parties, subject to a reservation of rights. [*Id.* at 14.] A dispositive motion hearing is set in this state case for September 30, 2021.

This Rex counterclaim is integral because it is largely at the root of Defendants' counterclaim in this case. The counterclaim alleges that non-parties David Jensen,

---

[1] The complaint alleges that the Rex counterclaim is for $14 million, but sometimes the briefs refer to a $16 million claim. [DE 20 at 4, 9.] Regardless of the exact amount, the counterclaim seeks an extremely large amount of money.

6

Robert Feldt, Eichhorn & Eichhorn, Kevin Rasp, and O'Hagan Meyer (the "Insurance Lawyers"), filed the complaint for declaratory relief as "supposed" attorneys for SFU and purportedly on behalf of SFU as the named Plaintiff. [DE 15 at 2-4.] However, SFU claims it did not authorize or approve of the filing of the declaratory action (indeed, by this point, the new board was against the expansion), and alleges the insurance lawyers' effort to represent the former board members at the same time they represented the SFU board members, was a conflict of interest. [*Id.* at 3.] In other words, the counterclaim alleges the unauthorized filing of the declaratory judgment action, which was supposedly orchestrated by Stratford, who hired attorneys to file the declaratory judgment action in the name of SFU, led to huge potential exposure to SFU because this is what prompted the Rex counterclaim which remains pending.

One might think that's enough litigation. But alas, there's more! Schafer and Holmes filed a supplemental proceeding in Indiana state court seeking a garnishment order against Stratford. Stratford removed the supplemental proceeding to this court, and it is currently pending before me. *Schafer, et al. v. SFU, et al. and Stratford Insurance Company (Garnishee-Defendant)*, No. 2:20-cv-368 (N.D. Ind., notice of removal filed Oct. 13, 2020). Defendants did not seek to remand this case back to state court. On October 30, 2020, I stayed this action.

Also before me is yet another case that was filed in state court and later removed, in which SFU sued the engineers who furnished engineering and consultation services regarding replacing the aeration tanks in the waste water treatment plant. That case is

7

*SFU v. McMahon Associates, Inc., et. al.*, No. 2:19-cv-241 (N.D. Ind., notice of removal filed July 3, 2019).

Stratford's complaint in this case alleges 14 counts. I won't rehash each of those counts in this opinion. Generally, it is enough to say that Stratford claims there is no coverage in the underlying state case for a host reasons including that the insured entered into the consent judgment without Stratford's permission, engaged in fraud and collusive behavior and otherwise breached their obligations under the policy. Additionally, Stratford claims there are a number of policy exclusions that apply here and thus preclude coverage. Defendants have moved to dismiss the entire complaint under Rule 12(b)(6). They argue that this action should be dismissed because the interests of federal and state court comity weigh in favor of this court using its discretion to decline jurisdiction.

Defendants SFU, Schafer and Holmes, filed a counterclaim. The counterclaim also asks for a declaratory judgment, as well as states claims for negligent failure to settle, bad faith failure to settle, breach of contract/breach of the implied duty of good faith, abuse of process, wrongful filing, and common law bad faith. [DE 15.] Stratford has moved to dismiss the counterclaim in its entirety, arguing the counterclaim for declaratory judgment is redundant and the other claims fail as a matter of law.

In addition to the motions to dismiss the complaint and counterclaim in this case, there are three other pending motions. First, Plaintiff Stratford has moved to strike certain statements in Defendants' motion to dismiss, asking to strike an attachment to

8

Defendants' motion containing filings by Schafer, Holmes, and SFU regarding a case before the Indiana Court of Appeals (Case No. 20A-CT-01646), as well as statements regarding materials outside the complaint and exhibits including mediation efforts, correspondence between Stratford and its legal counsel, settlement demands by SFU, Stratford's alleged refusal to honor SFU's demands, and discovery conducted in the state class action. [DE 22.]

Next, Stratford asks that the court take judicial notice of a deposition taken in the underlying class action. [DE 37.] In response, Schafer and Holmes filed a motion to strike the request for judicial notice, claiming Stratford is incorrectly using its request for judicial notice to attempt to insert evidence into the record in support of an argument in its motion to dismiss. [DE 38.]

## Discussion

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. Stratford must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Making the plausibility determination is

"a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Finally, "[a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) 'tests the sufficiency of the complaint, not the merits of the case.'" *Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL 5064732, at *2 (N.D. Ill. Oct. 9, 2019) (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012)).

I.   **Defendants' Motion to Dismiss Stratford's Declaratory Judgment Action**

Under the Declaratory Judgment Act, 21 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "Since its inception, the Act 'has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *R.R. Street & Co., Inc. v. Vulcan Materials Co.*, 569 F.3d 711, 714 (7th Cir. 2009) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). "[D]istrict courts possess considerable leeway in deciding whether to entertain declaratory judgment actions even though subject matter is established." *Id.*

Defendants SFU, Schafer and Holmes move to dismiss Stratford's complaint in its entirety pursuant to Rule 12(b)(6). They contend, without any real support, that comity principles require that "[h]ere, where state law predominates and a parallel state court action exists, this Court should decline to exercise such jurisdiction and dismiss Stratford's action." [DE 20 at 5.] To which I ask, which "parallel" state court action and

10

why is it parallel? In its reply, the Defendants hint (without ever directly stating which of the many lawsuits in this case they believe is the "parallel" action) that they are talking about the class action complaint in state court. But this isn't even close to being enough to dismiss this straightforward declaratory action where an insurer has provided a defense in the underlying case, and now seeks a ruling about the duty to continue to defend, indemnify, and provide coverage (or whether the policy applies). This scenario happens *all the time* in federal court, and it seems entirely appropriate in this case. *See, e.g., McGrath v. Godshalk*, No. 2:07 CV 34, 2007 WL 2746865, at *4 (N.D. Ind. Sept. 18, 2007) ("provided a sufficient probability of injury, in the context of insurance policies, courts have found jurisdiction over declaratory judgments regarding the validity of a policy, and the coverage of a liability policy.").

It is true that "[w]hen one action is filed in federal court and another in state court, concerns of comity and federalism are necessarily implicated." *Ford v. Psychopathic Records, Inc.*, No. 12-cv-0603-MJR-DGW, 2013 WL 3353923, at *2 (S.D. Ill. Jul. 3, 2013) (citing *Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 748-49 (7th Cir. 1987)). But to dismiss under this basis would require an unnecessary and inappropriate interference with a parallel state court action - and one which would resolve the entire controversy. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1329, 1332 (11th Cir. 2005); *Adkins v. VIM Recylcing, Inc.*, 644 F.3d 483, 498-99 (7th Cir. 2011). Here, Defendants have provided no reasoning or argument whatsoever about how whatever is left of the underlying state class action would somehow resolve the

11

insurance coverage issues in this case. Quite simply, they would not.

Defendants cite, without truly analyzing, a case outside of this district, *Endurance Assurance Corp. v. Zoghbi*, 403 F.Supp.3d 1301 (S.D. Fla. 2019), which interpreted the abstention doctrine. But that case has a different procedural posture, and I don't see how it is applicable to the issue at hand.

In turning to the rest of Defendants' motion to dismiss, I note that it is peppered with inappropriate references to things that have allegedly come out in discovery and settlement discussions. [DE 20 at 8-12.] There are no citations at all, much less citations to anything in this record to support these assertions. Generally, a motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see* Fed. R. Civ. P. 12(d).

Stratford has filed a motion to strike many of these statements regarding extraneous materials outside of the complaint and exhibits, including mediation efforts, correspondence between Stratford and its legal counsel, settlement demands, and discovery conducted in the state class action. [DE 22 at 1.] Motions to strike are heavily disfavored, and usually only granted in circumstances where the contested evidence causes prejudice to the moving party. *Kuntzman v. Wal-Mart*, 673 F.Supp.2d 690, 695 (N.D. Ind. 2009); *Gaskin v. Sharp Elec. Corp.*, No. 2:05-CV-303, 2007 WL 2228594, at *1 (N.D. Ind. July 30, 2007). Furthermore, it is the function of this Court, with or without a

12

motion to strike, to carefully review the evidence and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement. *See, e.g., Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, No. 04 C 5167, 05 C 2253, 2006 WL 980740, at *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, No. 03 C 2249, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F.Supp.2d 917, 920 n.1 (N.D. Ind. 2004). In this case, I have sifted through the evidence and considered it under the applicable federal rules, giving each piece the credit to which it is due. Accordingly, I will deny the motion to strike statements in Defendants' motion to dismiss [DE 22].

Because Defendants have not identified a parallel proceeding that this case interferes with, or provided appropriate support for any argument that any counts of this complaint for declaratory judgment should be dismissed, their motion to dismiss is denied.

**II.     Stratford's Motion to Dismiss Defendants' Counterclaim**

Defendants' counterclaim contains numerous counts. The first is for a declaratory judgment asking me to find that Stratford owes the Defendants the entirety of the $5,000,000 consent judgment. [DE 15 at 21-22.] This is really just the flip-side of the request in the complaint, in which Stratford asks for declaratory relief itself; specifically, a finding it is not responsible for paying the consent judgment. Rule 12(f) provides that the court may strike "from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter . . . (1) on its own; or (2) on motion made by a party."

*See also Lincoln Nat'l Corp. v. Steadfast Ins. Co.*, No. 1:06-CV-58, 2006 WL 1660591, at *2 (N.D. Ind. June 9, 2006) ("[R]epetitious and unnecessary pleadings, such as a counterclaim that merely restates an affirmative defense, or which seeks the opposite effect of the complaint, should be stricken regardless of whether prejudice has been shown."). In this case, it is proper to dismiss Count I of the counterclaim as redundant. *See Cincinnati Specialty, Underwriters Ins. Co. v. DMH Holdings, LLC*, No. 3:11-cv-357, 2013 WL 683493, at *4 (N.D. Ind. Feb. 22, 2013) (noting that a counterclaim for declaratory judgment may be stricken as redundant when the counterclaim restates the issues already before the court by virtue of the complaint).

Count II of the counterclaim alleges Stratford negligently failed to settle the state class action. The main issue surrounding this count is whether an insurer can be found liable for breaching the duty of good faith and fair dealing if it only acted negligently (and not in bad faith). Stratford cites *Travelers Indem. Co. v. Johnson*, 440 F.Supp.3d 980 (N.D. Ind. 2020), for the proposition that a cause of action does not exist for mere negligence in failing to settle a claim. [DE 31 at 13.] That case, which undertook a lengthy look at Indiana law in this field, finds that "under Indiana law, an insurance provider does not breach the obligation of good faith and fair dealing that it owes its insured when it merely acts negligently" and in Indiana, "there is no cause of action in tort for negligently failing to settle a claim within the policy limits of an insurance contract." *Id.* at 983, 987 (citing, among other cases, *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 517 (Ind. 1993)). In response, Defendants argue that even though they

14

titled Count II "negligent failure to settle," the counterclaim contains a number of paragraphs describing *intentional* insurer wrongdoing. [DE 15, ¶¶ 8-10, 13-30, 32, 34, 36-38, 42, 46, 48, 49, 51-55, 59-70.] Defendants also cite to the allegations in paragraph 85 in the counterclaim (which clearly alleges willful and wanton conduct), but this falls under the third cause of action, which is specifically titled "bad faith failure to settle." [DE 15 at 23-24.] Because negligent failure to settle is not a cause of action recognized in Indiana, and a separate count of the counterclaim alleges intentional and bad faith failure to settle, Count II will also be dismissed.

With regard to Count III, for bad faith failure to settle, Stratford argues this should be dismissed because Defendants make only conclusory allegations. To prove bad faith, a plaintiff must establish, by clear and convincing evidence, that the insurer had knowledge at the time of its determination that there was no legitimate basis for the position it was taking. *Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 26 (Ind. Ct. App. 2002). The counterclaim is 38 pages in length, and taken together, has alleged that Stratford unfoundedly refused to pay any policy proceeds in the class action, as well as orchestrated the filing of the declaratory judgment complaint in the Rex Action on behalf of SFU without consulting the current board (and even though it was still defending former SFU board members in the class action suit), and colluded with SFU's adversary, Rex Properties, in an effort to still enforce the rescinded SSA. [DE 15, ¶¶ 8-10, 15-16, 57-58.] This is sufficient to state a claim for bad faith failure to settle at this stage in the proceedings.

Count IV in the counterclaim pleads breach of contract. Although Stratford claims this count fails as well because it is based on a negligent failure to settle a claim, I don't think this is a fair characterization. To prevail on a claim for breach of contract under Indiana law, the Defendants "must prove the existence of the contract, the defendant's breach of that contract, and damages resulting from the breach." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). All parties seem to concede it is generally proper for Defendants to sue under both tort and contract theories. And this counterclaim alleges more than just Stratford breached the insurance agreement by not pitching in to settle the class action - it also alleges that Stratford breached its contract with SFU by instigating and having the declaratory action filed, which then opened up SFU to the $14 million Rex counterclaim, which constitutes much more liability than just the $1 million insurance policy limit. This claim comports with Indiana law which provides there is an implied duty in all insurance contracts that an insurer will act in good faith with its insured. *Hickman*, 622 N.E.2d at 518. And there is a cause of action for the tortious breach of that duty. *Id.* at 519. Although "the measure of damages in a contract action is limited to those actually suffered as a result of the breach which are reasonably assumed to have been within the contemplation of the parties at the time the contract was formed," there is no reason at this stage of the proceedings that Defendants can't plead the counterclaim in both contract and tort. *Id.* Damages, of course, would be a bridge to cross after any liability is established.

Count V, for abuse of process, also survives. Under Indiana law, abuse of

16

process requires proof of "an ulterior purpose," and "a willful act in the use of process not proper in the regular conduct of the proceeding." *Reichhart v. City of New Haven*, 674 N.E.2d 27, 30 (Ind. Ct. App. 1996). Defendants have alleged that Stratford was not authorized when it approved, and instigated, the filing of the declaratory judgment which resulted in the reaction of Rex filing its million dollar counterclaim. Whether Stratford actually employed an improper process by allegedly orchestrating this lawsuit is best left for either summary judgment or for the fact finder to determine.[2]

Finally, the last two causes of action, breached duties due to a wrongful filing and common law bad faith, also survive. While counsel admitted during oral argument that these two counts of the counterclaim may be somewhat duplicative, Stratford's main qualm with the counterclaim for breached duties due to a wrongful filing is its assertion that there are no damages. [DE 31 at 21-22.] However, as set forth before, the counterclaim alleges that by its wrongful actions, Stratford made Defendants susceptible to the liability set forth in the Rex counterclaim. As such, damages have been alleged.

Regarding the last claim for common law bad faith, Indiana has stated that an insurer's duty of good faith and fair dealing includes "the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay

---

[2] Stratford's request for judicial notice in support of its motion to dismiss counterclaim [DE 37] attempts to interject deposition testimony given in an underlying proceeding into the present motion to dismiss, arguing the deposition testimony contradicts the factual allegations in the counterclaim. This is simply improper for me to consider in a motion to dismiss and the request for judicial notice is denied.

in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Hickman*, 622 N.E.2d at 519. The counterclaim alleges sufficient wrongful conduct by Stratford (refusing to pay the policy proceeds, deceiving the insured, and creating a multi million dollar exposure to Defendants by improperly filing the declaratory judgment action). This is sufficient at this stage of the proceedings.

## Conclusion

For the aforementioned reasons: Defendants' Motion to Dismiss [DE 19] is DENIED; Stratford's motion to strike [DE 22] is DENIED; Stratford's Motion to Dismiss Defendant's Counterclaim [DE 30] is DENIED IN PART AND GRANTED IN PART - it is GRANTED with respect to Counts I and II in the counterclaim which are DISMISSED WITH PREJUDICE and it is DENIED with respect to Counts III-VII, which remain pending; Stratford's Motion for Judicial Notice [DE 37] is DENIED; and Defendants' Motion to Strike the Request for Judicial Notice [DE 38] is DENIED AS MOOT.
SO ORDERED.

ENTERED: September 27, 2021.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT