UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| STRATFORD INSURANCE CO., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| SHOREWOOD FOREST UTILITIES, INC., | ) | |
| GREG SCHAFER and CARLOTTA HOLMES, | ) | |
| | ) | |
| | ) | **2:20CV372-PPS/JEM** |
| Defendants | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| GREG SCHAFER and CARLOTTA HOLMES, | ) |
| Personally and as Agents and Assignees of, | ) |
| SHOREWOOD FOREST UTILITIES, INC., | ) |
| | ) |
| Counterclaim-Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| STRATFORD INSURANCE CO., | ) |
| Counterclaim Defendant. | ) |

## PLAINTIFF/COUNTERCLAIM-DEFENDANT
## STRATFORD INSURANCE COMPANY'S ANSWER TO
## DEFENDANT/COUNTERCLAIM-PLAINTIFFS' COUNTERCLAIM

Plaintiff/Counterclaim-Defendant Stratford Insurance Company ("Stratford") hereby

answers the Counterclaim of Defendants/Counterclaim-Plaintiffs, Shorewood Forest Utilities, Inc.

("SFU"), Greg Schafer, and Carlotta Holmes, personally and as agents and assignees of SFU.

Pursuant to Local Rule 10-1, the specific allegations of the Counterclaim are repeated

verbatim, with Stratford's answers following:

7654635

PARTIES AND NON-PARTIES

1. Shorewood Forest Utilities, Inc. ("SFU") is a non-for-profit [sic] corporation that operates a sewage treatment plant in the Shorewood Forest subdivision located in Porter County, Indiana.

**ANSWER: Upon information and belief, admit.**

2. Stratford is an insurance company that has done business for years in Porter County, Indiana, and had specifically provided certain insurance coverage to SFU during certain periods of time relevant to this action

**ANSWER: Stratford admits that it is an insurance company that issued an insurance policy to SFU, the content of which speaks for itself, which upon information and belief, is located in Porter County, Indiana.**

3. Non-parties Terry Atherton, Ken Buczek, Dan Clark and Greg Colton (the "Old Board" or "Old SFU Board") were Directors of SFU at times relevant to the causes of action set forth in this Complaint. By reason of their roles and capacities as former SFU Directors, the Old Board had special duties and fiduciary responsibilities as to SFU and its Utility Members who own SFU and its facilities, and SFU and all of its Utility Members in each and every matter relied upon the Old Board to represent the best interests of SFU.

**ANSWER: Upon information and belief, Stratford admits that the "Old Board" members were Directors of SFU. The remaining allegations constitute conclusions of law to which no response is required. To the extent a response is required, Stratford denies such allegations.**

JURISDICTION AND VENUE

4. This Court has jurisdiction of this case as to venue because Stratford has been doing business in Porter County, Indiana and diversity of jurisdiction.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent a response is required, Stratford admits that venue is proper, and that diversity of jurisdiction exists.**

5. Venue is proper in this Court because Stratford has actively provided insurance services for SFU, which operates in a planned unit development known as Shorewood Forest, located in Porter County, Indiana.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent a response is required, Stratford admits that it issued an insurance policy to SFU, the content of which speaks for itself, that upon information and belief, SFU is located in Porter County, Indiana, and admits that venue is proper.**

## BACKGROUND FACTS COMMON TO ALL COUNTS

6. This Counterclaim is being brought by reason of damage claims suffered by Counterclaim Plaintiffs, Personally and as Agents and Assignees of Shorewood Forest Utilities, Inc., that have accrued as of the filing date of this case.

**ANSWER: Stratford denies that Counterclaim Plaintiffs have suffered any damages that have accrued as of the filing date of this case.**

7. At all relevant times from July 20, 2017, Greg Schafer was the SFU President from July 21, 2017 to July, 2019, and Carlotta Holmes was further appointed as an SFU Director subsequent to July, 2017, and such Persons have further been member-owners of the SFU utility at all times relevant hereto, and have knowledge and information that Stratford's intentional actions, and its omissions, have damaged Plaintiffs and SFU.

**ANSWER: Stratford lacks sufficient information to either admit or deny the stated dates for Greg Schafer and Carlotta Holmes in their status as SFU President, Director, or member-**

7654635

owners. **Stratford denies that any intentional actions or omissions by Stratford damaged Plaintiffs [sic] and/or SFU.**

8. Certain non-parties, David C. Jensen, Robert Feldt, Eichhorn & Eichhorn, Kevin Rasp and O'Hagan Meyer ("Insurance Lawyers"), on October 15, 2018, filed a Complaint for Declaratory Relief in the Porter Superior Court, under Cause Number 64D02-1810-PL-10020 ("DEC Action"), as supposed attorneys for Shorewood Forest Utilities, Inc.

**ANSWER: Upon information and belief, Stratford admits that the referenced Insurance Lawyers filed the referenced Complaint for Declaratory Relief, the content of which speaks for itself. Stratford denies that the Insurance Lawyers were "supposed attorneys" for SFU.**

9. At no time from July 21, 2017, have the SFU Directors or SFU Officers elected from such date ever authorized or approved of the filing of such DEC Action on behalf of SFU, and the Insurance Lawyers were never engaged as attorneys by any SFU Board on or after July 21, 2017, to provide legal advice to SFU and its Board Members for any purpose, including any engagement for the filing of such DEC Action.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent a response is required, Stratford lacks sufficient information and is therefore unable to either admit or deny such allegations. All other allegations are denied.**

10. Stratford, through its insureds, knew that in the early-morning hours of July 21, 2017, the newly-elected SFU Board had *voted to cancel and rescind the purported Sewer Agreement* with Rex Properties, LLC ("Rex Properties"), and thus the Insurance Lawyers, as agents for Stratford, violated Rule 1.2 of the Rules of Professional Conduct regarding the scope of representation, by failing to abide by the client's (SFU's) decisions concerning the objectives of representation, by wrongfully filing a lawsuit attempting to enforce on behalf of SFU the sewer agreement.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent a response is required, Stratford denies that the Insurance Lawyers were acting as agents for Stratford, and otherwise lacks sufficient information and is therefore unable to either admit or deny such allegations. All other allegations are denied.**

11. The Insurance Lawyers, as attorneys working for or with Stratford Insurance, never entered in to a signed fee agreement or other contract signed with SFU, and never established with SFU the scope of representation and rate of their fees and expenses, and therefore the Insurance Lawyers violated Rule 1.5(b) of the Rules of Professional Conduct.

**ANSWER: The allegations constitute conclusions of law regarding the alleged conduct of third parties, and as such, no response is required. To the extent any response is required, Stratford denies all such allegations.**

12. Such Insurance Lawyers' effort to represent the former SFU Board Members, at the same time that they claimed to represent SFU, created a concurrent and irreconcilable conflict of interest, and the Insurance Lawyers violated Rule 1.7 of the Rules of Professional Conduct by representing the interests of SFU Former Board Members as clients, whose interest were and are directly adverse to the interest of SFU, and the Insurance Lawyers took actions on behalf of the Old Board that were contrary to the best interests of SFU, and the Insurance Lawyers, in concert with Stratford, further knew that there was a significant risk that the representation of one or more former SFU Board Members would, and did, materially limit such lawyers' responsibilities to their other purported client, SFU, which wrongful conduct caused damages to Plaintiff SFU.

**ANSWER: The allegations constitute conclusions of law regarding the alleged conduct of third parties, and as such, no response is required. To the extent any response is required, Stratford denies all such allegations.**

7654635

13. Further, Stratford never had any communication with the majority of active SFU Officers or SFU Directors at any time after July 20, 2017, and failed to directly communicate with its Insured, SFU, through the duly elected SFU corporate Officers or Directors, as to the scope of representation to be undertaken in the declaratory judgment action, which DEC Action was being funded by Stratford, to assist the Old Board, and to damage the interests and rights of Plaintiffs and SFU.

**ANSWER: Deny.**

14. On information and belief, Stratford gained confidential information about SFU that Stratford and the Insurance Lawyers used against SFU during the course of legal proceedings, and thus the Insurance Lawyers violated Rule 1.6 of the Rules of Professional Conduct regarding the confidentiality of client information, and neither Stratford nor the Insurance Lawyers ever obtained informed consent from SFU to disclose such confidential information.

**ANSWER: Stratford denies that it gained, used, or did not obtain consent to use confidential information. The remaining allegations constitute conclusions of law or pertain to the alleged conduct of third parties, and as such, no response is required. To the extent any response is required, Stratford denies all such allegations.**

15. On October 15, 2018, the DEC Action Complaint for Declaratory Judgment was actually filed by the Insurance Lawyers, purportedly on behalf of SFU as a named Plaintiff, with the advance knowledge and approval of Stratford, and Stratford further made the decision to fund the costs and the Insurance Lawyer's attorney's fees of such DEC Action.

**ANSWER: Stratford admits that the Insurance Lawyers filed the Declaratory Relief Action, the content of which speaks for itself. Subject to, and without waiving any right of privilege or confidentiality, Stratford admits that prior to their doing so it knew that the Insurance**

**Lawyers intended to file such Action to which Stratford consented and agreed with the understanding that fees and costs incurred by the Insurance Lawyers with respect thereto would be treated as defense costs under the Policy. All other allegations are denied.**

16. The filing of the Complaint for Declaratory Judgment on October 15, 2018, constituted the filing of an unauthorized, frivolous and groundless pleading because the filing was never authorized by SFU, there were never any ownership documents or documents of control attached to the sewer agreement, showing that Rex Properties, LLC owned the subject property where the request for a tie-in to the SFU was made, and the Sanitary Sewer Agreement was fatally defective for other reasons set out herein, including but not limited to the fact that Stratford and its agents, the Insurance Lawyers, knew that the newly-elected SFU Board of Directors had previously voted to cancel and rescind the sewer agreement with Rex Properties at an SFU Board meeting on July 21, 2017.

**ANSWER: This allegation makes reference to the Declaratory Relief Action, the Sanitary Sewer Agreement, as well as other "ownership documents" or "documents of control attached to the sewer agreement," the contents of all of which speak for themselves. The remaining allegations constitute conclusions of law regarding the alleged conduct of third parties, and as such, no response is required. To the extent any response is required, Stratford denies all such allegations.**

17. Under Indiana law, a duty is imposed upon insurance companies to deal in good faith with their insureds. *See* Economy Fire & Cas. Co. v. Collins, 643 N.E.2d 382, 386 (Ind. Ct. App. 1995). In addition, the judgment rule in Indiana furthers such duty of good faith by forcing an insurer to act in the insured's best interests regardless of its financial status. *Id.*

**ANSWER: The allegations constitute conclusions of law to which no response is required.**

18. Stratford is an insurer in the practice of underwriting and providing insurance, and knew that SFU, and the Utility Members, would rely upon such insurer to properly render insurance services including appropriate defenses, which insurance services Stratford failed to provide or perform on behalf of SFU, and Stratford failed in its duties to SFU.

**ANSWER: Stratford admits that it is an insurer engaged in underwriting and issuing policies of insurance in certain circumstances, and denies all other allegations.**

19. Since the Stratford [sic], through its agents, had comprehensive knowledge of, and actual or constructive possession and control of, thousands of pages of SFU corporate records, SFU By-laws, IDEM correspondence and internal SFU emails related to SFU, and they had comprehensive knowledge of the fact that by October, 2009, IDEM had determined that two of the four SFU aeration tanks were inoperable, and IDEM further determined that SFU had diminished capacity to treat sewage influent under the permit that was issued to SFU and that was effective on and after October, 2009, yet the Defendants intentionally ignored such determination from IDEM and Stratford orchestrated the filing of pleadings and engaged in acts and omissions that were not consistent with the known limitations on SFU treatment capacity determined by IDEM on and after October, 2009.

**ANSWER: This allegation makes reference to "SFU corporate records, SFU By-laws, IDEM correspondence and internal SFU emails related to SFU," the contents of all of which speak for themselves. The remaining allegations constitute conclusions of law regarding the alleged conduct of third parties, and as such, no response is required. To the extent any response is required, Stratford denies all such allegations.**

20. Further, Stratford knew, or in the exercise of minimal due diligence should have known, that the old SFU Board elected prior to July 20, 2017, was using and publishing to the SFU

Member/owners certain outdated and therefore false and inaccurate information to create the false impression that SFU had substantial <u>excess capacity</u> to treat additional sewage influent, when in reality the SFU plant had substantially <u>reduced capacity</u> as of the July 20, 2017 date that the Sewer Agreement was allegedly approved by the Old SFU Board Members, rendering the Sewer Agreement impossible to perform. This information was known to Stratford by the first week of June, 2017, since Stratford received a copy of a Class Action Complaint that included detailed information about such issue, and Stratford's other insureds, the Old Board Members, had possession of SFU records that established such false and inaccurate information.

**ANSWER: This allegation makes reference to various documents, the contents of all of which speak for themselves. The remaining allegations constitute conclusions of law regarding the alleged conduct of third parties, and as such, no response is required. To the extent any response is required, Stratford denies all such allegations.**

21. In addition, Stratford knew, or in the exercise of minimal due diligence should have known, that the Old SFU Board elected prior to July 20, 2017, was using and publishing to the SFU Member/owners inaccurate information about the hydraulic capacity of the SFU plant, to create the false impression that SFU had substantial excess capacity to treat additional sewage effluent, when in reality SFU had substantially reduced capacity as of the July 20, 2017 date that the Sewer Agreement was allegedly approved by the old SFU Board Members, and the Old Board further published false information that any expansion of the Utility would be at "no cost." This information was known to Stratford by the first week of June, 2017, since Stratford received a copy of a Class Action Complaint, filed under Cause No. 64D02-1705-CT-4698 that was filed against SFU's Old Board and that included detailed information about such issues.

7654635

**ANSWER: This allegation makes reference to various documents, the contents of all of which speak for themselves. The remaining allegations constitute conclusions of law regarding the alleged conduct of third parties, and as such, no response is required. To the extent any response is required, Stratford denies all such allegations.**

22. Various allegations and statements in such DEC Action complaint for declaratory relief were false, and also contained statements and legal positions that conflicted with the best corporate interests of SFU, and such conflict was actually created and orchestrated by Stratford with its attorney-agents, the Insurance Lawyers, and such insurer intentionally and recklessly ignored the corporate interests and corporate intent of SFU, as expressed by actions of the newly-elected SFU Board on and after July 21, 2017.

**ANSWER: This allegation makes reference to the Declaratory Relief Action, the content of which speaks for itself. The remaining allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations.**

23. Stratford owed the duty of good faith to their insured, SFU, and also to the SFU Board Members, and further to the extent they obtained confidential information about the operation of the SFU plant, as the insurer for SFU, and on information and belief Stratford owed such duties to their insured, SFU, at the time that Stratford orchestrated the DEC Action to be filed in the name of SFU, without the knowledge or consent of SFU.

**ANSWER: The allegations constitute conclusions of law to which no response is required. All other allegations are denied.**

24. One of the duties owed by Stratford was to provide advance notice of the Insurer's intentions to name SFU in a DEC Action, and advance notice as to the legal consequences of filing the subject

7654635

suit for declaratory judgment, which advance notice Stratford failed and refused to provide, and instead Stratford aligned itself with the conflicted interests of Rex Properties, LLC, ultimately cause damages to Plaintiffs, as Assignees of SFU.

**ANSWER: The allegations constitute conclusions of law to which no response is required. All other allegations are denied.**

25. Stratford also owed a duty to SFU Members to take actions in support of SFU, and not to undercut the value of SFU, since the undercutting or diminution of value of SFU would directly and adversely impact SFU and its Members, who were owners of all SFU assets under the terms of SFU articles and by-laws.

**ANSWER: The allegations constitute conclusions of law to which no response is required. All other allegations are denied.**

26. Further, Stratford knew or should have known that they had a duty to fully disclose such legal consequences to the SFU Board regarding the filing of the DEC Action complaint for declaratory judgment, but Stratford failed and refused to disclose any legal consequences of their actions to any SFU Board Member or SFU Director at any time after July 20, 2017.

**ANSWER: The allegations constitute conclusions of law to which no response is required. All other allegations are denied.**

27. At no time did Rex Properties, the purported owner of certain land under the Sewer Agreement with SFU, consummate a formal closing on a purported 78.62 acre tract that was to be part of the Sewer Agreement, and in fact, on February 28, 2018, Rex Properties sent a certified letter to the owners of the subject property, Mr. and Mrs. Scannell ("Scannells"), withdrawing the Offer to Purchase and requesting a return of its $10,000.00 earnest money payment. Rex Properties and

Blum concluded their letter to the Scannells by stating that "from this date forward neither party shall have any further rights or liabilities under Contract dated 12/15/2016."

**ANSWER: This allegation makes reference to various documents, the contents of all of which speak for themselves. The remaining allegations constitute conclusions of law regarding the alleged conduct of third parties, and as such, no response is required. To the extent any response is required, Stratford lacks sufficient knowledge or information to enable it to admit or deny such allegations and therefore denies them.**

28. Stratford breached duties by orchestrating the filing such [sic] unauthorized complaint in the Dec Action that contained false statements, and used such complaint with associated legal process to file a lawsuit against newly-elected SFU Board Members, and further breached duties by failing and refusing to communicate with such SFU Board Members about the legal reasoning and legal strategy for filing a lawsuit against such SFU Board Members.

**ANSWER: The allegations constitute conclusions of law to which no response is required. All other allegations are denied.**

29. Further, on information and belief, Stratford breached duties owed to SFU by authorizing one of the Insurance Lawyers affiliated with or paid by Stratford to conspire with third parties and SFU adversaries including a lawyer representative of Rex Properties, to orchestrate the timing, filing and litigation of the declaratory judgment action, while at the same time they kept the then-current SFU Board Members totally in the dark about their actions and intentions, and Stratford further knew that Rex Properties had no contractual interest in certain real estate described in the Sewer Agreement, at the time Stratford orchestrated the filing of the DEC Action Complaint for Declaratory Judgment under Porter Superior Court Cause Number 64D02-1810-PL-10020.

**ANSWER: This allegation makes reference to various documents, including the Declaratory Relief Action and the Sanitary Sewer Agreement, the contents of all of which speak for themselves. The remaining allegations constitute conclusions of law regarding the alleged conduct of third parties, and as such, no response is required. Stratford lacks sufficient information to either admit or deny the remaining allegations, and as such, they are denied.**

30. Stratford has solely been interested in protecting its own financial interests and unknown interests of former SFU Board Members Greg Colton, Terry Atherton, Ken Buczek and Dan Clark, and has ignored the corporate interests of SFU, in the way the DEC Action complaint had been structured and worded, in the way Stratford, with the assistance of the Insurance Lawyers, orchestrated and coordinated and conspired with others related to the filing of the DEC Action, with a lawyer for Rex Properties (without ever disclosing such conduct to SFU), and in the way Stratford authorized the Insurance Lawyers to publish judicial admissions against the interest of SFU, which has caused the Plaintiffs and SFU to be damaged.

**ANSWER: Deny.**

31. Under the Dec Action, the Complaint alleged matters related to the Sanitary Sewer Agreement with Rex Properties, but such Agreement included specific terms that the deeds and/or documents of control and possession of Rex Properties were attached, but such declaration was false, because Rex Properties did not actually own certain real property that was going to be developed into Arbor Lakes South as of the date the Sanitary Sewer Agreement was purportedly signed, and thus there were no documents of control associated with the SSA, so the SSA was fatally incomplete.

**ANSWER: Stratford lacks sufficient knowledge or information to enable it to admit or deny such allegations. Stratford also refers to the Complaint for Declaratory Relief and the**

Sanitary Sewer Agreement, the contents of which speak for themselves. All other allegations are denied.

32. The SFU Officers and Directors newly-elected on July 20, 2017, were never provided with advance notice of the unilateral decision by Stratford and the Insurance Lawyers, as attorney-agents of Stratford, to file such new DEC action purportedly on behalf of SFU, and such wrongful conduct violated the standard of care that an insurer owes to its insured.

**ANSWER: Stratford lacks sufficient knowledge or information to enable it to admit or deny such allegations. Stratford also refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves. All other allegations are denied.**

33. The Insurance Lawyers that filed such DEC Action, allegedly for SFU, naming the newly-elected SFU Board Members as Defendants, acted on behalf of Stratford, and filed the frivolous and groundless complaint purportedly naming SFU as Plaintiff, without any permission or authority.

**ANSWER: Stratford lacks sufficient knowledge or information to enable it to admit or deny the allegations. The allegations constitute conclusions of law to which no response is required. All other allegations are denied.**

34. Stratford had specific knowledge of the Insurance Lawyers' intentions and actions to file such DEC Action, allegedly for SFU, and naming the newly-elected SFU Board Members as Defendants, and Stratford also acted on its own, and authorized and funded the filing of the unauthorized, frivolous and groundless DEC Action complaint purportedly on behalf of SFU, without any permission or authority, and is liable for attorneys fees for instituting and funding such frivolous litigation against its insured and the Counterclaim Plaintiffs.

**ANSWER: Stratford admits that the Insurance Lawyers filed the Declaratory Relief Action, the content of which speaks for itself. Subject to, and without waiving any right of privilege or confidentiality, Stratford admits that it knew that the Insurance Lawyers intended to file such Action to which Stratford consented and agreed with the understanding that fees and costs incurred by the Insurance Lawyers with respect thereto would be treated as defense costs under the Policy. All other allegations are denied.**

35. It is a fundamental principal of law that the "client" has the ultimate right to make decisions about any legal services to be performed on behalf of such client. SFU, as the "client", was never afforded the opportunity to make a corporate decision related to the filing of such declaratory judgment lawsuit, and was never provided in advance with information as to Stratford's strategy undertaken regarding such DEC Action.

**ANSWER: The allegations constitute conclusions of law or pertain to the alleged conduct of third parties, and as such, no response is required. Stratford lacks sufficient information to either admit or deny the remaining allegations, and as such, all other allegations are denied.**

36. Insurers like Stratford, that intentionally take actions that are in conflict with the interests of their corporate insured, and who take legal actions without the knowledge or consent of their insured, engage in a breach of the duty of good faith and fair dealing and breach fiduciary duties to such insured. *See generally*, Schmidt v. Allstate Property and Casualty Insurance Company, 141 N.E.3d 1251, 1256-58 (Ind. Ct. App. 2020).

**ANSWER: The allegations constitute conclusions of law to which no response is required. All other allegations are denied.**

37. The Insurance Lawyers, in colluding with and on behalf of Stratford, and as agents for Stratford who were assisting Stratford in litigating the new DEC Action, have known all along based upon

SFU's corporate discovery records that have been in their possession and control, that there is and was an impossibility for SFU to perform under the subject Sewer Agreement by reason of the fact that SFU does not have present adequate sewage treatment capacity, and adequate reserve capacity, including but not limited to capacity measured by Biological Oxygen Demand (BOD) loadings as considered by the IURC, to process existing SFU sewage inflows and also process sewage influent from the proposed homes to be built by Rex Properties, that were anticipated to be tapped in to the SFU sewage treatment plant under such Sewer Agreement attached to the DEC Action complaint for declaratory relief.

**ANSWER: The allegations constitute conclusions of law or pertain to the alleged conduct of third parties, and as such, no response is required. The allegations also refer to the Complaint for Declaratory Relief, the Sanitary Sewer Agreement, and "corporate discovery records," the contents of which speak for themselves. Stratford lacks sufficient information to either admit or deny the remaining allegations, and as such, all other allegations are denied.**

38. Stratford has further known, or in the exercise of minimal due diligence should have known, that SFU did not have the required financial resources to provide funding for then-current sewage treatment plant repairs and sewage main line repairs and maintenance expenses, and further SFU did not have sufficient funds to pay for the total cost of building up SFU plant capacity and to further undertake the costs of increasing force main capacity related to existing force main lines outside the SFU plant, to handle the anticipated sewage influent from the proposed homes to be built by Rex Properties, that were anticipated to be tapped in to the SFU sewage treatment plant under such Sewer Agreement attached to the DEC Action complaint for declaratory relief.

**ANSWER: The allegations constitute conclusions of law or pertain to the alleged conduct of third parties, and as such, no response is required. The allegations also refer to the Complaint for Declaratory Relief, the Sanitary Sewer Agreement, and "corporate discovery records," the contents of which speak for themselves. Stratford lacks sufficient information to either admit or deny the remaining allegations, and as such, all other allegations are denied.**

39. SFU, through a communication of its then-current Board of Directors, sent a written demand that the Insurance Lawyers that filed the original Complaint in the DEC Action withdraw as counsel for SFU, by reason of their total failure to properly represent and protect the corporate interests of SFU, but such Insurance Lawyers refused to withdraw for a period of time, with the knowledge and consent of Stratford.

**ANSWER: The allegations constitute conclusions of law or pertain to the alleged conduct of third parties, and as such, no response is required. Stratford lacks sufficient information to either admit or deny the remaining allegations, and as such, all other allegations are denied.**

40. On October 30, 2018, Rex Properties filed its Answer to the Complaint for Declaratory Judgment in this action, and filed a Counterclaim, which pleading simply mimicked the allegations that Stratford had approved to be drafted in to the original DEC Action Complaint for Declaratory Judgment.

**ANSWER: Upon information and belief, Rex Properties filed an Answer and Counterclaim, the contents of which speak for themselves. Stratford lacks sufficient information to either admit or deny the remaining allegations, and as such, all other allegations are denied.**

41. The Counterclaim filed by Rex Properties was filed at a time when Rex Properties had no ownership interest in certain real estate which was to be developed into Arbor Lakes South, thus

the Sanitary Sewer Agreement ("SSA") was not capable of being substantially performed even if it were found to be a valid contract, which it is not, and Stratford knew of such information but failed to raise any proper defenses on behalf of SFU to establish that the Sanitary Sewer Agreement was not capable of being performed.

**ANSWER: Stratford lacks sufficient knowledge or information to enable it to admit or deny such allegations and therefore denies them. Stratford also denies that it had any obligation to raise defenses on behalf of SFU.**

42. Further, the Dec Action Counterclaim to enforce the SSA was filed by Rex Properties despite the fact that Rex Properties had previously demanded the return of its earnest money from the Scannells and after declaring in the rescission letter "that from this date forward neither party shall have any further rights or liabilities under the Contract dated 12/15/2016," and Stratford knew of this information because one of Stratford's lawyers, Mr. Pretti, as the attorney/agent of Stratford, admitted in writing that it was "impossible for the [SFU Sewer] contract to be performed" once Rex Properties' option on land was cancelled, but even with this knowledge Stratford acted in bad faith and failed and refused through its Insurance Lawyers to raise any proper defenses on behalf of SFU to establish that the SSA was *not* capable of being fully performed by Rex Properties, which conduct has damaged Counterclaim Plaintiffs, as assignees of SFU.

**ANSWER: Stratford lacks sufficient knowledge or information to enable it to admit or deny such allegations and therefore denies them. Stratford admits that Mr. Pretti sent written communications regarding the SFU Sewer contract, the contents of which speaks for themselves. All other allegations are denied.**

43. The Complaint for Declaratory Judgment included an attachment of a SSA purportedly between SFU and Rex Properties, which SSA was strictly a contract purportedly executed by two

organizations, SFU and Rex Properties, LLC, and which purported SSA stated that the "documents of control" in possession of Rex Properties, LLC, were attached, but such declaration was not true, and the contract was and always has been fatally incomplete because no such "documents of control" were ever attached related to real estate that was going to be developed into Arbor Lakes South. Such SSA is attached as Exhibit "1".

**ANSWER: Stratford lacks sufficient knowledge or information to enable it to admit or deny such allegations. Stratford also refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves. All other allegations are denied.**

44. The other named Plaintiffs in the DEC Action, Greg Colton, Dan Clark, Ken Buczek and Terry Atherton, had not signed the subject SSA in their individual capacities, were not named as individual parties to the SSA, did not meet the requirements for filing such declaratory judgment action under I.C. 34-14-1-2, and did not have standing to pursue remedies or claims under the terms of such SSA, and such other named Plaintiffs were not the real party in interest under the SSA, all of which information was known by Stratford prior to the unauthorized filing of the DEC Action complaint for declaratory relief.

**ANSWER: The allegations constitute conclusions of law or pertain to the alleged conduct of third parties, and as such, no response is required. Stratford also refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves. Stratford lacks sufficient information to either admit or deny the remaining allegations, and as such, all such allegations are denied.**

45. The current SFU Officers and Directors elected or appointed on or after July 21, 2017, never provided any authorization or consent to Stratford, or to Greg Colton, Dan Clark, Ken Buczek

and/or Terry Atherton, or their attorneys in such case, to file such DEC Action complaint for declaratory judgment regarding the subject SSA.

**ANSWER: The allegations constitute conclusions of law for which no response is required, or pertain to the alleged conduct of third parties, for which Stratford lacks information upon which to provide any response. Stratford lacks sufficient information to either admit or deny the remaining allegations, and as such, Stratford denies all such allegations.**

46. The actions of Stratford, in the way it authorized it's attorney/agents to fashion and draft the complaint for declaratory relief, and the actions and omissions of Stratford in authorizing, approving and funding of the filing of such DEC Action, were and are aligned with the interests of SFU's corporate adversary, Rex Properties, and were never aligned with the distinct corporate interests of Stratford's insured, SFU, and Stratford acted in bad faith, causing damage to Plaintiffs, as assignees of SFU.

**ANSWER: Deny.**

47. That on information and belief, *prior to the filing of the DEC Action*, one or more of the Insurance Lawyers, as paid agents for Stratford, secretly colluded with and conspired with an attorney representative of Rex Properties to initiate, file and promote the DEC Action, by communicating and coordinating with Rex Properties' lawyer before and after the filing of such DEC Action, in an unauthorized attempt to obtain a court order to enforce the subject Sewer Agreement, even though the enforcement of such SSA is and was not in SFU's best corporate interests, since the SSA had been previously cancelled and rescinded by SFU.

**ANSWER: Deny.**

48. That by reason of their wrongful intentional actions described herein, Stratford caused an irreconcilable conflict of interest with respect to SFU, and further caused SFU to incur damages,

and by reason of such conflict and the wrongful actions undertaken by Stratford, such Insurer refused to provide proper representation for SFU, to protect SFU in such DEC Action, and instead promoted the interests of SFU's adversary, Rex Properties.

**ANSWER: Deny.**

49. Stratford caused the Plaintiffs and SFU to suffer damages by failing to acknowledge in pleadings filed in the Dec Action of the fact there was a tainted SFU vote on sewage service area expansion whereby all existing SFU Members were not provided with ballots, and all SFU Members were not provided with a truthful explanation of the true risks and all costs associated with the proposed expansion of the Utility's plant and facilities, to accommodate such expansion, and without acknowledging there was not a fair referendum election process undertaken by the Old SFU Board, and there was a failure of the Old SFU Board to utilize marked and verifiable referendum ballots.

**ANSWER: Deny.**

50. Under the terms of SFU's by-laws and the purported Sewer Agreement, Plaintiffs, as SFU Members, were ultimately responsible for paying for a pro rata share of SFU's costs of operation and were ultimately liable for providing funding for adequate sewer service, and to pay for the pro rata costs of extending an adequately-sized force main sewer line to the proposed 208 homes of Arbor Lakes South identified under the terms of the Sewer Agreement with Rex Properties that was negotiated by the Old SFU Board.

**ANSWER: Stratford lacks sufficient knowledge or information to enable it to admit or deny such allegations and therefore denies them. Stratford also refers to the SFU by-laws and the Sanitary Sewer Agreement, the contents of which speak for themselves. All other allegations are denied.**

51. Stratford knowingly participated in a scheme with their Insurance Lawyers and with Rex Properties to "squeeze out" the interests of the SFU member-owners, in filing the DEC Action Complaint for Declaratory Relief to attempt to enforce the Sanitary Sewer Agreement, and by its wrongful actions, Stratford sought to deliver substantial ownership interest in SFU to outsiders for no consideration, or for inadequate consideration, wrongfully diluting the SFU Class Members' ownership interest in SFU, damaging Counterclaim Plaintiffs.

**ANSWER: Deny.**

52. Further, Stratford, during the time that it claimed to be an Insurer of SFU, knowingly and wrongfully provided substantial assistance to Rex Properties, LLC, and to others, in breach of their duties owed to SFU.

**ANSWER: Deny.**

53. In addition, Stratford, during the time that it was funding the Insurance Lawyers who were allegedly representing SFU, it knowingly and wrongfully provided substantial assistance to Rex Properties, and to others, in breach of its duties owed to its insured, SFU, and as a breach of Stratford's duties of good faith and fair dealing, which assistance included but was not limited to Stratford's actions in authorizing and funding the costs of the Dec Action filed by the Insurance Lawyers.

**ANSWER: Deny.**

54. Stratford further wrongfully placed its own self-interest above the separate interests and rights of defense of its Insured, SFU, causing damages to Counterclaim Plaintiffs and SFU.

**ANSWER: Deny.**

55. Stratford owed SFU a duty of care which required it to act in good faith and to use the same degree of care, skill and diligence that a reasonably prudent person or entity would exercise in

similar matters on its behalf. In addition, Stratford owed SFU a duty of loyalty so as not to create a conflict of interest where the rights of the Old SFU Board Members were placed ahead of the corporate rights of SFU.

**ANSWER: The allegations constitute conclusions of law to which no response is required.**

56. Upon the filing of the Class Action lawsuit against the Old Board, Stratford took exclusive possession and control of the defense of SFU of the Class Action and all settlement negotiations, and exclusively controlled the mediation process, purportedly on behalf of Stratford's insured, SFU.

**ANSWER: Deny.**

57. Throughout the Class Action litigation, Counterclaim Plaintiffs repeatedly demanded that Stratford pay their $1,000,000.00 policy limits.

**ANSWER: Deny.**

58. In every instance, Stratford rejected Counterclaim Plaintiffs' demand, exposing their insured, SFU, to an excess judgment.

**ANSWER: Deny.**

59. Counterclaim Plaintiffs made a written demand that was sent to SFU on September 11, 2019. (Exhibit 2.). In such demand, Counterclaim Plaintiffs clearly explained their position that SFU had failed to comply with Indiana law, and had created a liability to Counterclaim Plaintiffs and to the Class Members, resulting in a liability in excess of the $1,000,000.00 policy limits. Counterclaim Plaintiffs made it perfectly clear that at trial Counterclaim Plaintiffs would request damages of $4,405.734.71. In such demand Counterclaim Plaintiffs stated that pursuant to Indiana case law, if Stratford failed to tender the policy limits, it would be required to pay the full amount of the excess verdict based on their negligent failure to settle within policy limits and breach of contract, citing

Anderson v. St. Paul Mercury Indem. Co., 340 F.2d 406 (7th Cir. 1965); *see also*, Economy Fire & Cas. Co. v. Collins, 643 N.E.2d (Ind. Ct. App. 1994). Stratford rejected such demand.

**ANSWER: Stratford admits that it received a written settlement demand from Defendants/Counterclaim-Plaintiffs in the SFU Class Action lawsuit dated September 11, 2019, the content of which speaks for itself, that Stratford did not accept. The remaining allegations are denied, or constitute conclusions of law to which no response is required. By interposing this response, Stratford does not waive any legal rights to the confidentiality of settlement negotiations as applicable under state or federal law.**

60. Counterclaim Plaintiffs next sent a demand letter to Stratford's counsel on September 24, 2019, (Exhibit 3). In such demand, Counterclaim Plaintiffs clearly explained their position that SFU had created a liability to Counterclaim Plaintiffs and to the Class Members, resulting in a liability substantially in excess of the $1,000,000.00 policy limits, and had demanded such policy limits. Stratford rejected such demand.

**ANSWER: Stratford admits that it received a written settlement demand from Defendants/Counterclaim-Plaintiffs in the SFU Class Action lawsuit dated September 24, 2019, the content of which speaks for itself, that Stratford did not accept. The remaining allegations are denied, or constitute conclusions of law to which no response is required. By interposing this response, Stratford does not waive any legal rights to the confidentiality of settlement negotiations as applicable under state or federal law.**

61. Counterclaim Plaintiffs' next demand was delivered to Stratford during mediation with Mediator Gerry Bishop on September 26, 2019. In such demand, Counterclaim Plaintiffs clearly explained their position that SFU had failed to comply with Indiana law, and had created a liability to Counterclaim Plaintiffs and to the Class Members, resulting in a liability substantially in excess

7654635

of the $1,000,000.00 policy limits. In such demand Counterclaim Plaintiffs stated that pursuant to
Indiana case law, if Stratford failed to tender the policy limits, it would be required to pay the full
amount of the excess verdict based on their negligent failure to settle within their policy limits and
breach of contract. Stratford rejected such demand.

**ANSWER: Stratford admits that it received a written settlement demand from
Defendants/Counterclaim-Plaintiffs in the SFU Class Action lawsuit dated September 24,
2019, the content of which speaks for itself, that Stratford did not accept. The remaining
allegations are denied, or constitute conclusions of law to which no response is required. By
interposing this response, Stratford does not waive any legal rights to the confidentiality of
settlement negotiations as applicable under state or federal law.**

62. Plaintiffs' next demand was sent on March 31, 2020. (Exhibit 4.). In such demand, Plaintiffs
clearly explained their position that SFU had breached fiduciary duties and engaged in wrongful
conduct, and had a liability to Plaintiffs and to the Class Members, resulting in a liability in excess
of the $1,000,000.00 policy limits. In such demand Plaintiffs stated that pursuant to Indiana case
law, if Stratford failed to tender the policy limits, it would be required to pay the full amount of
the excess verdict based on their negligent failure to settle within their policy limits and breach of
contract, citing Anderson v. St. Paul Mercury Indem. Co., 340 F.2d 406 (7th Cir. 1965). Stratford
rejected Plaintiffs' repeated demand for the policy limits.

**ANSWER: Stratford admits that it received a written settlement demand from
Defendants/Counterclaim-Plaintiffs in the SFU Class Action lawsuit dated March 31, 2020,
the content of which speaks for itself, that Stratford did not accept. The remaining
allegations are denied, or constitute conclusions of law to which no response is required. By**

interposing this response, Stratford does not waive any legal rights to the confidentiality of settlement negotiations as applicable under state or federal law.

63. Counterclaim Plaintiffs' next demand was sent by email on May 28, 2020. (Exhibit 5.). In such demand, Counterclaim Plaintiffs clearly explained their position that the insurance company had acted in bad faith, and had created a liability to Counterclaim Plaintiffs and to the Class Members, and had failed to tender the $1,000,000.00 policy limits. Counterclaim Plaintiffs made it perfectly clear that at trial Counterclaim Plaintiffs would request damages in excess of the policy limits. In such demand Counterclaim Plaintiffs stated that they would agree to enter in to a Consent Judgment with all of the Class Action Defendants for $5,000,000.00 in return for an assignment against the insurance company for any and all damages arising from its failure to tender the policy limits. Stratford rejected such demand.

**ANSWER: Stratford admits that it received a written settlement demand from Defendants/Counterclaim-Plaintiffs in the SFU Class Action lawsuit dated May 28, 2020, the content of which speaks for itself, that Stratford did not accept. The remaining allegations are denied, or constitute conclusions of law to which no response is required. By interposing this response, Stratford does not waive any legal rights to the confidentiality of settlement negotiations as applicable under state or federal law.**

64. Counterclaim Plaintiffs' next demand was delivered to Stratford during mediation with Mediator Gerry Bishop on June 15, 2020. In such demand, Counterclaim Plaintiffs clearly explained their position that SFU had failed to comply with Indiana law, and had created a liability to Counterclaim Plaintiffs and to the Class Members, resulting in a liability substantially in excess of the $1,000,000.00 policy limits. In such demand Counterclaim Plaintiffs stated that pursuant to Indiana case law, if Stratford failed to tender the policy limits, it would be required to pay the full

amount of the excess verdict based on their negligent failure to settle within their policy limits and breach of contract. Stratford rejected such demand.

**ANSWER: Stratford admits that it received a written settlement demand from Defendants/Counterclaim-Plaintiffs in the SFU Class Action lawsuit dated June 15, 2020, the content of which speaks for itself, that Stratford did not accept. The remaining allegations are denied, or constitute conclusions of law to which no response is required. By interposing this response, Stratford does not waive any legal rights to the confidentiality of settlement negotiations as applicable under state or federal law.**

65. Despite being fully aware of the law regarding exposing their insured, SFU, to an excess verdict for damages substantially in excess of $1,000,000.00, based upon the substantial damages and liabilities that the Old Board exposed SFU to, as set out in the Class Action pleadings, Stratford chose repeatedly to reject the Counterclaim Plaintiffs' policy limits demands, exposing SFU to an excess judgment.

**ANSWER: Deny.**

66. Due to Stratford's failure to settle within policy limits, the Class Action case proceeded to the point in time when SFU entered in to a Consent Judgment and an Assignment in the amount of $5,000,000.00 in favor of Class Action Plaintiffs and against SFU, and such Consent Judgment was assigned by SFU to the Plaintiffs in the Class Action. See Consent Judgment and Assignment, Exhibits 6 and 7, respectively, which are incorporated by reference herein.

**ANSWER: Deny.**

67. As of the point in time when SFU agreed to the $5,000,000.00 Consent Judgment and Assignment with Class Action Plaintiffs, Rex Properties had a pending motion for summary judgment in litigation that Rex had filed for breach of contract against SFU, related to the Old

Board's wrongful attempt to expand the Certificate of Territorial Authority ("CTA") of SFU, and the subsequent Old Board's efforts to enter in to a Sanitary Sewer Agreement ("SSA") with Rex, which SSA was based upon the wrongful attempt by the Old Board to expand SFU's CTA. In such summary judgment filings by Rex Properties there was an Affidavit filed by Rex Properties' manager, who articulated a damage claim against SFU in a sum in excess of $14,970,000.00. (See Rex Summary Judgment Affidavit, Exhibit 8, which is incorporated by reference herein.)

**ANSWER: Upon information and belief, Rex Properties filed a Motion for Summary Judgment as to its Counterclaim against SFU, the content of which speaks for itself. All other allegations are denied.**

68. Since SFU has never had $14,790,000.00 of net assets, SFU did not and does not have the financial ability to fund or pay a full settlement with Rex Properties in the sum of $14,790,000.00, or any sum close to that damage claim articulated with evidence by Rex Properties in its litigation over the SSA.

**ANSWER: Stratford lacks sufficient knowledge or information to enable it to admit or deny the allegations of Paragraph 68 and therefore denies them.**

69. In an effort to shelter some of its potential liability to the SFU Class Members, SFU entered in to a Consent Judgment with the Class Action Plaintiffs, as Class Representatives, and assigned all of SFU's claims against Stratford, to the Class Action Plaintiffs.

**ANSWER: Stratford admits that SFU entered into a Consent Judgment with the Class Action Plaintiffs, as Class Representatives, and assigned all of SFU's claims against Stratford, to the Class Action Plaintiffs. Stratford denies the stated basis for SFU having done so and denies all other allegations.**

70. Stratford, who controlled the means, manner and method of the defense of the case, has repeatedly chosen not to pay their policy limits, resulting in an exposure to their insured, SFU, in a sum substantially in excess of the $5,000,000.00 sum that is the amount of the Consent Judgment.

**ANSWER: Deny.**

71. Stratford attempted to settle the Class Action by demanding as a condition of any settlement, an assignment of liability for litigation expenses and defense costs to the Class Action Plaintiffs and the Class Members, of liabilities, expenses and costs of defense of the Old SFU Board Members, which assigned liabilities and expenses were in excess of any sums "offered" by Stratford for settlement, and there never was an offer from Stratford to settle for the policy limits at any point in time. In other words, the liabilities that Stratford demanded that the Class Action Plaintiffs take on as part of any Class Action settlement substantially exceeded any sums that Stratford offered in mediation, which sums were never equal to the $1,000,000.00 policy limits. In effect, Stratford acted in bad faith and/or was negligent, and never offered Class Action Plaintiffs any net sums at all during mediation, or at any other time up to the filing of this Counterclaim.

**ANSWER: Stratford admits that it participated in settlement negotiations with the Class Action Plaintiffs and that it placed certain conditions upon any settlement agreement. All other allegations are denied. By interposing this response, Stratford does not waive any legal rights to the confidentiality of settlement negotiations as applicable under state or federal law.**

72. In light of the significant exposure to financial damages that SFU faces, based upon Rex's summary judgment pleadings and affidavit establishing admissible evidence of a damage claim against SFU of a sum in excess of $14,970,000.00, plus the exposure for punitive damages in the

Class Action, it was clear that SFU was facing a damage claim substantially in excess of the policy limits, which exposed SFU to a verdict and judgment substantially in excess of the policy limits.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations.**

73. As noted, on July 22, 2020, SFU assigned its rights to sue its insurer, Stratford, to the Class Action Plaintiffs. The assignment specifically reserves the Class Action Plaintiffs' rights to proceed against SFU should this instant action fail.

**ANSWER: Stratford admits that SFU assigned its rights against Stratford to the Class Action Plaintiffs. Stratford refers to the Assignment documents, the contents of which speak for themselves, and denies all other allegations.**

74. Counterclaim Plaintiffs, Personally and as Agents and Assignees of SFU, and SFU, have performed all conditions precedent and have not excused the non-performance by Stratford.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations.**

**I.    DECLARATORY JUDGMENT**

By order of the Court, Count I for Declaratory Judgment has been dismissed. Accordingly, no response is required to ¶¶ 75-79. To the extent any response is required, all such allegations are denied.

**II.    NEGLIGENT FAILURE TO SETTLE**

By order of the Court, Count II for Negligent Failure to Settle has been dismissed. Accordingly, no response is required to ¶¶ 80-83. To the extent any response is required, all such allegations are denied.

**III.    BAD FAITH FAILURE TO SETTLE**

84. Counterclaim Plaintiffs incorporate by reference herein the allegations contained in rhetorical paragraphs 1 through 81 above, as if more fully set forth herein.

**ANSWER: Stratford repeats and incorporates by reference its answers to paragraphs 1 through 81 as if fully stated herein.**

85. Based upon the foregoing, Stratford was guilty of one or more of the following acts of bad faith:

> a. Carelessly, negligently, willfully, wantonly, and recklessly put its own financial interest ahead of its insured, SFU.

> b. Carelessly, negligently, willfully, wantonly, and recklessly considered only its own monetary interest in deciding not to settle and ignored the risk of an excess judgment against its insured.

> c. Carelessly, negligently, willfully, wantonly, and recklessly failed to adequately investigate and/or evaluate the underlying claim(s) against SFU.

> d. Carelessly, negligently, willfully, wantonly, and recklessly was unreasonably optimistic about its liability arguments when its insured had violated the law and had engaged in actions that established a substantial damage claim against SFU.

> e. Carelessly, negligently, willfully, wantonly, and recklessly engaged in unfair settlement practices in bad faith.

> f. Carelessly, negligently, willfully, wantonly, and recklessly exposed its insured, SFU, to an excess judgment.

> g. Carelessly, negligently, willfully, wantonly, and recklessly provided counsel to SFU that had a conflict of interest.

h. Carelessly, negligently, willfully, wantonly, and recklessly failed to advise its insured, SFU, to retain separate counsel due to the excess policy limits exposure.

**ANSWER: Deny.**

86. That as a direct and proximate result of Stratford's negligent failure to settle within the policy limits, a Consent Judgment was entered against SFU in the sum of $5,000,000.00, which Consent Judgment was agreed to by SFU in an effort to limit its exposure to the Class Action Plaintiffs and to the Class Members, for damages, including those associated with the Rex Properties damage claims.

**ANSWER: Deny.**

87. Based upon the wrongful and egregious and intentional wrongful and bad faith conduct of Stratford, Counterclaim Plaintiffs seek punitive damages.

**ANSWER: Deny.**

## IV.    BREACH OF CONTRACT

88. Counterclaim Plaintiffs incorporates by reference herein the allegations contained in rhetorical paragraphs 1 through 85 above, as if more fully set forth herein.

**ANSWER: Stratford repeats and incorporates by reference its answers to paragraphs 1 through 85 as if fully stated herein.**

89. "Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured." Erie Ins. Co. v. Hickman by Smith, 622 N.E.2d 515, 518 (Ind. 1993). An insurance contract existed between SFU and Stratford at all times relevant to the claims described herein. (See Exhibit 9.)

7654635

**ANSWER: Stratford admits that it issued a policy of insurance to SFU, the content of which speaks for itself. The remaining allegations constitute conclusions of law to which no response is required.**

90. Stratford breached its contract with SFU and further breached its implied duty of good faith and fair dealing in the following ways:

> a. Put its own financial interest ahead of its insured, SFU.

> b. Considered only its own monetary interest in deciding not to settle and ignored the risk of an excess judgment against its insured.

> c. Failed to adequately investigate and/or evaluate the underlying claim(s) against SFU.

> d. Was unreasonably optimistic about its liability arguments when its insured had violated the law and had engaged in actions that established a substantial damage claim against SFU.

> e. Engaged in unfair settlement practices in bad faith.

> f. Knowingly exposed its insured, SFU, to an excess judgment.

> g. Knowingly provided counsel to SFU that had a conflict of interest.

**ANSWER: Deny.**

91. That as a direct and proximate result of Stratford's negligent failure to settle within the policy limits, a Consent Judgment was entered against SFU in the sum of $5,000,000.00, which Consent Judgment was agreed to by SFU in an effort to limit its exposure to the Class Action Plaintiffs and to the Class Members, for damages, including those associated with the Rex damage claims, plus the punitive damage exposure, and Counterclaim Plaintiffs, as assignees of SFU, have incurred damages proximately caused by Stratford's acts, omissions and breach of contract.

**ANSWER: Deny.**

92. Based upon the egregious and intentional wrongful conduct of Stratford, Counterclaim Plaintiffs seek compensatory damages.

**ANSWER: Deny.**

**V. STRATFORD ENGAGED IN ABUSE OF PROCESS BY ORCHESTRATING AND FUNDING THE FILING A LAWSUIT IN THE NAME OF THE SFU CORPORATION, SINCE THE INSURED, SFU, NEVER PROVIDED ANY AUTHORIZATION TO STRATFORD OR ITS AGENTS TO FILE THE COMPLAINT FOR DECLARATORY JUDGMENT OR TO ISSUE PROCESS**

93. Counterclaim Plaintiffs incorporate by reference herein the allegations contained in rhetorical paragraphs 1 through 90 above, as if more fully set forth herein.

**ANSWER: Stratford repeats and incorporates by reference its answers to paragraphs 1 through 90 as if fully stated herein.**

94. Stratford had an ulterior motive or purpose for orchestrating and funding the filing of the complaint for declaratory judgment in the DEC Action, and an ulterior motive for the wrongful issuance of process including summons with such unauthorized complaint, which ulterior motive substantially conflicted with the corporate interest of SFU.

**ANSWER: Deny.**

95. Stratford engaged in a willful act in orchestrating and authorizing the use of process not proper in the regular conduct of a proceeding, by funding and approving the issuance or causing the issuance of the unauthorized DEC Action Complaint and unauthorized summons to the named defendants in the DEC Action. The DEC Action filings were not the proper use of process in the regular conduct of a proceeding because such DEC Action was never authorized by SFU in the

first place, and SFU never agreed to be a named plaintiff litigating a DEC Action to enforce the cancelled SSA.

**ANSWER: Deny.**

96. That the willful and intentional actions of Stratford, as described herein, were not the result of mere human failing, but were the result of bad faith and also involve intentional, willful and malicious actions that have harmed and damaged the Counterclaim Plaintiffs, and therefore Counterclaim Plaintiffs seek the recovery of punitive damages from Stratford.

**ANSWER: Deny.**

97. The intentional, wrongful and malicious actions of Stratford and its breach of duties have caused Counterclaim Plaintiffs to suffer damages, and Counterclaim Plaintiffs are also entitled to the recovery of damages plus attorneys fees by reason of such intentional filing and maintenance of frivolous and groundless pleadings and wrongful conduct under I.C. 34-52-1-1.

**ANSWER: Deny.**

**VI.    THE WRONGFUL FILING OF THE COMPLAINT FOR DECLARATORY JUDGMENT ORCHESTRATED BY STRATFORD, IN THE NAME OF THE SFU CORPORATION, BREACHED DUTIES AND WRONGFULLY ESTABLISHED ADMISSIONS AGAINST THE CORPORATE INTEREST OF SFU, CAUSING DAMAGES**

98. Counterclaim Plaintiffs incorporate by reference herein the allegations contained in rhetorical paragraphs 1 through 90 above, as if more fully set forth herein.

**ANSWER: Stratford repeats and incorporates by reference its answers to paragraphs 1 through 97 as if fully stated herein.**

99. Stratford owed SFU common law duties of good faith, which it breached in the ways described in this Counterclaim.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations.**

100. That Stratford, with the assistance of its attorney-agents, the Insurance Lawyers, as attorneys that filed such unauthorized DEC Action complaint, purportedly for SFU, naming the newly-elected SFU Board Members as Defendants, acted on its own, and without any permission or authority, did not have permission from their insured, SFU, to file such DEC Action Complaint, and as such the unauthorized filing of the DEC Action complaint for declaratory relief was frivolous, unreasonable and groundless.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations.**

101. The DEC Action complaint for declaratory judgment includes several false statements knowingly drafted and published by the Insurance Lawyers, with the knowledge and consent of Stratford, including but not limited to a claim "Rex Properties, LLC would pay all costs associated with the installation of infra-structure needed to serve the new subdivision", which statement Stratford knew was false, or with the exercise of minimal due diligence should have determined was false, since there are and were substantial costs associated with establishing necessary force-main sewer line infrastructure outside of the SFU plant, and infrastructure needed to increase the size of two lift station pumps and plus the substantial costs of constructing thousands of lineal feet of replacement "force main" sewer line needed to accommodate the additional sewage effluent that would flow from the new proposed subdivision identified as Arbor Lakes South to the SFU Plant, under the Sewer Agreement that Stratford sought to enforce.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations. Stratford also refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves.**

102. Such DEC Action complaint for declaratory judgment included false statements drafted and published by the Insurance Lawyers, with the knowledge and consent of Stratford, including but not limited to a claim "the Utility *executed* the Sanitary Sewer Agreement with the developer, Rex Properties, LLC, on July 20, 2017", even though the Stratford knew that the Utility did not properly approve the Sewer Agreement with a properly-noticed SFU special meeting as required pursuant to the SFU by-laws, and Stratford further knew that the former SFU Board members' terms had expired prior to July 20, 2017, and therefore the former SFU Board Members who had terms that expired did not have a quorum for a special meeting and further had no authority to "execute" any Sewer Agreement on July 20, 2017, and Stratford further knew that the purported Sewer Agreement was *not* executed by a Vice President of SFU on July 20, 2017, as mandated by the SFU by-laws.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations. Stratford also refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves.**

103. In addition, such DEC Action complaint for declaratory judgment included false statements drafted by the Insurance Lawyers, with the knowledge and consent of Stratford, including but not limited to a claim "the Utility . . . seek a declaration of the parties' respective rights under the Sanitary Sewer Agreement, *specifically that the agreement is enforceable*" even though Stratford

knew that the Utility did not approve the Sewer Agreement at a properly noticed SFU special meeting pursuant to the SFU by-laws, and Stratford further knew that three of the four former SFU Board members' terms had expired prior to July 20, 2017, and further knew that the purported Sewer Agreement was not executed by a Vice President of SFU, as mandated by the SFU by-laws, and otherwise knew that the sewer agreement was not enforceable and Stratford knew there was no mutuality of obligation under the terms of the Sewer Agreement.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations. Stratford also refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves.**

104. By authorizing and ratifying a declaration that the SSA "is enforceable", Stratford was aligning itself and others with the conflicted outside interests of Rex Properties, in conflict with the separate and distinct corporate rights of SFU, which conduct was unauthorized and wrongful since Rex has and had claims that were antagonistic to the corporate interests of SFU, causing damages to Counterclaim Plaintiffs, as assignees of SFU.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations. Stratford also refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves.**

105. Stratford had exclusive knowledge of the fact the Insurance Lawyers were declaring that the SSA "is enforceable", and Stratford was aligning itself and others with the conflicted outside interests of Rex Properties, in conflict with the separate and distinct corporate rights of SFU, which conduct was unauthorized and wrongful since Rex Properties has and had claims that were

antagonistic to the corporate interests of SFU, and thus Stratford was acting in bad faith and was conspiring in concert with others that had a conflicting interest with Counterclaim Plaintiffs and SFU, and Stratford further provided funding for such litigation antagonistic to SFU, causing damages to Counterclaim Plaintiffs.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations. Stratford also refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves.**

106. Further, such DEC Action complaint for declaratory judgment included false statements drafted with the knowledge and approval of Stratford, by the Insurance Lawyers, which complaint was antagonistic to the expressed corporate interest of SFU, including but not limited to a claim in the last clause of the complaint, as follows: "Plaintiffs, Shorewood Forest Utilities, Inc. . . . respectfully request that the Court enter declaratory judgment in their favor, ***finding and declaring that the Sanitary Sewer Agreement*** entered into by and between Shorewood Forest Utilities, Inc., and Rex Properties, LLC, ***is enforceable and binding*** . . ." even though Stratford knew, or with the exercise of minimal due diligence should have known, that the SSA was not enforceable, that the Utility did not approve the SSA at a duly noticed SFU special meeting pursuant to the SFU by-laws, and Stratford further knew that the former SFU Board members' terms had expired prior to July 20, 2017, that three of the four former SFU Directors had been voted out of office by July 20, 2017, and further knew that the purported SSA was not executed by a Vice President of SFU, as mandated by the SFU by-laws, and otherwise knew that the SSA was not enforceable and included unconscionable terms and no mutuality of obligation.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations. Stratford also refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves.**

107. In addition, the Insurance Lawyers, with the knowledge and consent of Stratford, attempted to create a judicial admission against the corporate interest of SFU by declaring in the DEC Action complaint for declaratory judgment that the SSA "is enforceable" since Rex Properties thereafter admitted to the fraudulent judicial admission orchestrated by and/or with the actual knowledge and consent of Stratford, in an Answer orchestrated and coordinated by the Insurance Lawyers on behalf of Stratford.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations. Stratford also refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves.**

108. Stratford further knew, or with the exercise of minimal due diligence should have known, that the subject SSA had no mutuality of obligation and was drafted on a one-sided basis for the sole benefit of the outside developer, Rex Properties. For example, under the terms of such one-sided SSA, Rex Properties could solely and unilaterally cancel the SSA at any time, without payment of any penalty to SFU, but SFU had no such right to unilaterally cancel the SSA. This is one of several defenses that Stratford wrongfully refused to authorize to be raised in any litigation involving SFU.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations. Stratford also**

**refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves.**

109. Further, the SSA that Stratford sought to enforce wrongfully gifted away to the future property owners of the Rex Properties' development, approximately nineteen per cent (19%) of the ownership interest in the SFU-owned plant and properties and assets, *for no consideration*, notwithstanding the fact that SFU had land and assets worth more than Seven Million Dollars ($7,000,000.00).

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations. Stratford also refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves.**

110. The wrongful actions of Stratford, in filing the unauthorized dec action and attempting to create a judicial admission against the interest of SFU that the subject SSA "is enforceable" and the fact Stratford has sought to enforce the SSA which gifted away to the future property owners of the Rex Properties' development, approximately nineteen per cent (19%) of the ownership interest in the SFU-owned plant and properties and assets, *for no consideration*, notwithstanding the fact that SFU had land and assets worth more than Seven Million Dollars ($7,000,000.00), breached fiduciary duties owed to the SFU, has caused Counterclaim Plaintiffs, as Assignees of SFU, to suffer a large financial damage claim, and Counterclaim Plaintiffs are entitled to recover attorneys fees pursuant to I.C. 34-52-1-1.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations. Stratford also**

**refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves.**

111. The willful and intentional actions of Stratford, as described herein related to the attempt to create a judicial declaration against the corporate interest of SFU, was not the result of mere human failing, but was the result of bad faith and willful, intentional and malicious actions that have harmed the interests of Counterclaim Plaintiffs, and therefore Counterclaim Plaintiffs seek the recovery of punitive damages in this case for such willful and intentional actions.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations. Stratford also refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves.**

112. Among the common law duties owed by Stratford to Counterclaim Plaintiffs, Personally and as Agents and assignees of SFU, included, but were not limited to:

(a) Properly investigating the DEC Action proceedings described herein before refusing to provide SFU with critical defenses it had with respect to the illicit conduct of the Old SFU Board Members and Rex Properties with regard to the facts that relate to such litigation;

(b) Properly establishing the basis for denial of defense or indemnity, and in failing to expressly communicate such information to SFU, before the Defendants failed and refused to provide SFU with critical defenses it had in the DEC Action and in the Class Action proceedings;

(c) Undertaking to fully defend and/or indemnify SFU as an insured under the policy of insurance with SFU described herein;

7654635

(d) Properly balancing and giving equal consideration to SFU's interest, as the insured, vis a vis Stratford's interest as the insurer.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations. Stratford also refers to the Complaint for Declaratory Relief and the Sanitary Sewer Agreement, the contents of which speak for themselves.**

113. Stratford breached its respective duties by:

(a) Failing to properly investigate the DEC Action proceedings before refusing to provide SFU with critical defenses it had with respect to the illicit conduct of the Old Board Members and Rex Properties with regard to the facts that relate to such litigation;

(b) Failing to properly undertake and the failure to fully defend and/or indemnify SFU, as the insured, with respect to the Class Action proceedings, under the policy of insurance with SFU described herein;

(c) Failing to properly undertake and the failure to fully defend and/or indemnify SFU, as the insured, with respect to the DEC Action proceedings, under the policy of insurance with SFU described herein;

(d) Failing to properly balance and give equal consideration to SFU's interests, as the insured, vis a vis the interests of Stratford, as the insurer.

**ANSWER: Deny.**

114. As a result of one or more acts or omissions, Stratford is liable to Counterclaim Plaintiffs, as assignees of SFU, for bad faith in connection with the Stratford's failure to fully and adequately defend SFU in the Class Action proceedings and in the DEC Action.

**ANSWER: Deny.**

115. The wrongful actions and omissions of Stratford have caused Counterclaim Plaintiffs to suffer damages.

**ANSWER: Deny.**

**VII.    COMMON LAW BAD FAITH BY STRATFORD**

116. Counterclaim Plaintiffs re-allege the allegations contained in Rhetorical Paragraphs 1-90 and 100 – 114 of the Counterclaim, as if more fully set forth herein.

**ANSWER: Stratford repeats and incorporates by reference its answers to paragraphs 1 through 115 as if fully stated herein.**

117. That during and prior to 2017, Stratford provided a policy of insurance to SFU, which was a contract between SFU and Stratford to provide insurance coverage to SFU, As noted above, a true copy of such policy of insurance between SFU and Stratford was attached hereto as Exhibit "9", and is incorporated by reference herein.

**ANSWER: Stratford admits that it issued a policy of insurance to SFU, the content of which speaks for itself. All other allegations are denied.**

118. Such Stratford's insurance policy was in effect at all times relevant to the time that the Old Board undertook certain actions described in this Counterclaim, and in the DEC Action proceedings described heretofore, that caused SFU to incur damages.

**ANSWER: Stratford admits that it issued a policy of insurance to SFU, the content of which speaks for itself. All other allegations are denied.**

119. Under such insurance policy between SFU and Stratford, SFU was the "insured" and Stratford was the insurance company or "insurer."

**ANSWER: Stratford admits that it issued a policy of insurance to SFU, the content of which speaks for itself. All other allegations are denied.**

120. Stratford owed SFU a duty of good faith and fair dealing with respect to all matters under such insurance policy between SFU and Stratford, and violated such standard in numerous ways, including but not limited to the fact it refused to authorize certain defenses to be raised for SFU, it did not allow certain defense counsel to communicate with the then-current SFU Board of Directors, keeping such SFU Directors in the dark about strategies and defenses, and it placed its own financial self-interest ahead of the interests of its insured, SFU.

**ANSWER: Stratford admits that it issued a policy of insurance to SFU, the content of which speaks for itself. The allegations also constitute conclusions of law to which no response is required. All other allegations are denied.**

121. SFU fully performed all of its obligations and responsibilities under such policy of insurance with Stratford.

**ANSWER: The allegations constitute conclusions of law to which no response is required. To the extent any response is required, Stratford denies all such allegations.**

122. SFU further made a timely notice of claim, which was served on Stratford, or its duly authorized representative, with respect to an insurance claim(s) that arose by reason of the filing of a Class Action lawsuit against certain former SFU Board Members, related to various matters and actions or omissions that were covered under such insurance policy.

**ANSWER: Stratford admits that it issued a policy of insurance to SFU, the content of which speaks for itself, and that SFU tendered the Class Action lawsuit to Stratford for a determination as to the availability of coverage for SFU and certain SFU Board Members with respect to such lawsuit. The remaining allegations constitute conclusions of law to which no response is required. All other allegations are denied.**

123. Stratford further owed SFU the duty to avoid any conflicts of interest with respect to the duty to defend SFU from litigation, including in the Class Action litigation filed against SFU in May of 2017 and the DEC Action described herein.

**ANSWER: Stratford admits that it issued a policy of insurance to SFU, the content of which speaks for itself. The remaining allegations constitute conclusions of law to which no response is required. All other allegations are denied.**

124. Stratford breached its insurance contract and breached various duties it owed to SFU, including but not limited to its duty of good faith and fair dealing owed to SFU, and the duty to avoid conflicts of interest with respect to the duty to defend SFU from litigation covered under such insurance policy, and related to Stratford's general duty to defend SFU, and Stratford engaged in bad faith and further wrongfully promoted the interests of the Old Board Members over the corporate interests of SFU, and failed and refused to provide a full and proper defense of SFU in the various proceedings described herein.

**ANSWER: Deny.**

125. Stratford knew, or in the exercise of minimal due diligence should have known, that it was acting in bad faith when it authorized and funded the filed Dec Action, naming SFU as a Plaintiff, and filed against the then-current SFU Board of Directors, since the DEC Action was never authorized or ratified by SFU, and such Dec Action Complaint contained false statements that harmed SFU's corporate interest, and contained declarations against the corporate interest of SFU, all of which Stratford undertook with the intent of harming the interests of SFU and Counterclaim Plaintiffs, and which actions were taken to assist persons or entities who had interests that conflicted with and were antagonistic to SFU, including but not limited to Rex Properties and the Old SFU Board members.

**ANSWER: Deny.**

126. The policy of insurance with SFU did not contain any provision(s) or term(s) that permitted Stratford to file a new lawsuit naming SFU as plaintiff, and naming the then-current SFU Board Members as Defendants, without the express advance consent of SFU, and Stratford knew such information at the time it recklessly, willfully and intentionally orchestrated and caused the DEC Action litigation to be filed, breaching duties and the breaching the insurance contract with SFU.

**ANSWER: Deny.**

127. The bad faith and wrongful actions and gross negligence of Stratford in breaching such duties, and in breaching the insurance contract with SFU, have caused Counterclaim Plaintiffs, as assignees of SFU, to incur damages.

**ANSWER: Deny.**

128. Stratford further violated its common law duties of good faith and fair dealing, with respect to the wrongful conduct described herein, including but not limited to the wrongful actions of colluding and conspiring with others to file and fund the unauthorized DEC action, without the knowledge or consent of its insured, and by reason of the wrongful conduct of insisting that insurance defense counsel not consult with or communicate with the then-current SFU Board of Directors.

**ANSWER: Deny.**

129. Counterclaim Plaintiffs seek compensatory damages from Stratford for the intentional wrongful actions, bad faith and gross negligence described herein.

**ANSWER: Stratford denies all allegations of wrongdoing as well as that Defendants/Counterclaim-Plaintiffs are entitled to compensatory damages from Stratford.**

130. The willful and intentional actions of the Stratford, as described herein, including but not limited to the failure and refusal to fully and adequately defend SFU, and in the approval and financing of the actions by the Insurance Lawyers in publishing judicial declarations against the corporate interest of SFU, were not the result of mere human failing, but were the result of bad faith and willful, intentional and malicious actions that have harmed the Counterclaim Plaintiffs, and therefore Counterclaim Plaintiffs seek the recovery of punitive damages in this case for such willful and intentional actions.

**ANSWER: Deny.**

***

WHEREFORE, Plaintiff/Counterclaim Defendant (Stratford) prays that Defendants/Counterclaim Plaintiffs (SFU, et. al) take nothing by way of their Counterclaim, that judgment be entered in favor of Plaintiff/Counterclaim-Defendant and against Defendants/ Counterclaim Plaintiffs, and for all other just and proper relief.

Plaintiff/Counterclaim Defendant asserts the following affirmative defenses:

## <u>AFFIRMATIVE DEFENSES</u>

1. Defendants/Counterclaim Plaintiffs' complaint fails to state a claim upon which relief can be granted.

2. All claims made by Defendants/Counterclaim Plaintiffs are barred in whole or in part by the applicable statute of limitations.

3. All claims made by Defendants/Counterclaim Plaintiffs are barred in whole or in part by the doctrine of estoppel.

4. All claims made by Defendants/Counterclaim Plaintiffs are barred in whole or in part by the equitable doctrine of laches.

5.  All claims made by Defendants/Counterclaim Plaintiffs are barred in whole or in part by the doctrine of unclean hands.

6.  All claims made by Defendants/Counterclaim Plaintiffs are barred in whole or in part by their fraudulent conduct.

7.  All claims made by Defendants/Counterclaim Plaintiffs are barred in whole or in part by their own illegality.

8.  All claims made by Defendants/Counterclaim Plaintiffs are barred in whole or in part by any and all contributory negligence.

9.  All claims made by Defendants/Counterclaim Plaintiffs are barred in whole or in part by the doctrine of res judicata.

10. By its acts and omissions, Defendants/Counterclaim Plaintiffs have assumed any and all risk as described in the pleadings.

11. By its acts and omissions, Defendants/Counterclaim Plaintiffs have waived any and all rights at issue in the pleadings.

12. Defendants/Counterclaim Plaintiffs' claims should be dismissed because plaintiff has failed to perform all of the obligations of the Insured under the insurance policy or policies, and the terms and conditions precedent to coverage expressed therein, and/or to fully comply with insurance policy or policies, including but not limited to the Insured's obligations as to notice, assistance, consent and cooperation.

13. Defendants/Counterclaim Plaintiffs' conduct materially increased defendant's risk in violation of the terms, conditions, limitations and exclusions in the insurance policy and/or policies.

14. Defendants/Counterclaim Plaintiffs made material misrepresentations and/or concealed information in its application for insurance that defendant relied upon to its detriment.  Based

upon these misrepresentations, concealed information and/or plaintiff's fraudulent inducement of defendant, the Policy is voidable, and/or subject to reformation or rescission.

15. Defendants/Counterclaim Plaintiffs claims are barred, in whole or in part, by the applicable limits of liability, endorsements and other terms, conditions, limitations and exclusions in the policy including, but not limited to, the following:

   a.  The insuring agreements contained in the policy were not triggered;

   b.  Defendants/Counterclaim Plaintiffs had prior knowledge of an act or omission that might reasonably be expected to be the basis of the subject claim;

   c.  Claim was first made prior to the inception of the Policy;

   d.  Section VI., Conditions, A.1.c. was a condition violated under the Policy;

   e.  Section III., Exclusion 3. precludes coverage under the Policy;

   f.  Section III., Exclusion 15. precludes coverage under the Policy;

   g.  Section III., Exclusion 8. precludes coverage under the policy;

   h.  Section I.5, Allocation allows an allocation of the covered and uncovered matters; and

   i.  The damages sought in the cross-complaint are not covered under the policy.

16. In the event that liability is entered against Plaintiff/Counterclaim Defendant, Plaintiff/Counterclaim Defendant is entitled to set off for any uncovered claims.

17. Plaintiff/Counterclaim Defendant reserves the right to plead additional affirmative defenses which may arise upon receiving additional information regarding the matters alleged in the complaint, through discovery or otherwise.

Dated: October 12, 2021

Respectfully Submitted,

KOPKA PINKUS DOLIN PC

By:___/s/ Sheri Bradtke McNeil_____
Sheri Bradtke McNeil (#19280-45)
Counsel for Stratford Insurance     Company

KAUFMAN BORGEEST & RYAN LLP

By:___/s/ Richard Pretti_____
Richard Pretti (Admitted *Pro Hac Vice*)
Counsel for Stratford Insurance Company

KOPKA PINKUS DOLIN PC
9801 Connecticut Drive
Crown Point, IN 46307
Tel: (219) 794-1888
Fax: (219) 794-1892
Email: SBMcNeil@kopkalaw.com

7654635