**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| STRATFORD INSURANCE COMPANY, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) CASE NO. 2:20-cv-372-PPS-JEM |
| | ) |
| SHOREWOOD FOREST UTILITIES, INC., | ) |
| GREG SCHAFER, CARLOTTA HOLMES, Individually | ) |
| and on Behalf of All Others Similarly Situated, | ) |
| | ) |
| DEFENDANTS. | ) |
| | ) |

**DEFENDANTS SCHAFER AND HOLMES' ANSWER**
**TO STRATFORD INSURANCE COMPANY'S COMPLAINT**

Defendants, Greg Schafer and Carlotta Holmes, Individually and on Behalf of all Others Similarly Situated, by counsel and for their Answer to Plaintiff Stratford's Complaint state as follows:

**NATURE OF ACTION**

1.    Stratford seeks a declaration that it has no obligation to Greg Schafer and Carlotta Holmes, Individually and on Behalf of All Other Similarly Situated, as the purported assignee of certain claims and/or rights of Shorewood, under the Stratford Policy, as defined below, with respect to a consent judgment entered into by Schafer, Holmes and Shorewood in connection with a lawsuit entitled Greg Schafer and Carlotta Holmes, Individually and on Behalf of All Others Similarly Situated, v. Shorewood Forest Utilities, Inc., Greg Colton, Dan Clark, Ken Buczek, and Terry Atherton, in the Porter Superior Court, Valparaiso, Indiana, Case No. 64D02-1705-CT-4698 (the "Schafer Class Action"). Specifically, the consent judgment does not trigger Stratford's

Insuring Agreement as Shorewood has no legal obligation to pay the consent judgement as per its terms; Shorewood breached several conditions in the Stratford Policy that prohibit the Insured from voluntarily making any payment or assuming any obligation without Stratford's consent; the consent judgment does not involve covered "loss"; and is excluded by the Policy's contractual liability exclusion.

**ANSWER: The Defendants deny the allegations set forth in paragraph 1 of Plaintiff's Complaint that Stratford has no obligations under its policy of insurance (the "Stratford Policy") which lists SFU as the named insured. As to the remainder of the allegations, they constitute conclusions of law to which no response is required. To the extent a response is required, Defendants deny these allegations.**

2.      Stratford seeks a declaration that the consent judgement was procured by fraud, bad faith and/or collusion; does not represent a reasonable resolution for the Schafer Class Action; and violates public policy.

**ANSWER: The Defendants deny the allegations set forth in paragraph 2 of Plaintiff's Complaint that the consent judgment was procured by fraud, bad faith and/or collusion. Defendants also deny that the consent judgment does not represent a reasonable resolution of the Schafer Class action case. Stratford has demanded that the Class Members and Shorewood Forest Utilities, Inc. ("SFU") defend and indemnify former SFU Board Members ("Old Board Members") in a $16 million damage suit filed by Rex Properties, LLC in the Porter Superior Court. As to the remainder of the allegations, they constitute conclusions of law to which no response is required. To the extent a response is required, Defendants deny these allegations.**

3.    Stratford seeks a declaration that it has no duty to defend and/or coverage obligations under the Policy for the Schafer Class Action based on: the Policy's contractual liability, fraud and/or insured v. insured exclusions, the "loss" definition and any covered "loss."

**ANSWER: The Defendants deny the allegations set forth in paragraph 3 of Plaintiff's Complaint that is has no duty to defend and/or provide insurance coverage in the Schafer Class Action based on acts and/or omission to act on the part of Stratford along with unrealistic demands made by Stratford to solely protect the interests of Old Board Members at the expense of and risk to SFU, its owners, and the Defendants. As to the remainder of the allegations, they constitute conclusions of law to which no response is required. To the extent a response is required, Defendants deny these allegations.**

4.    Stratford also seeks a declaration that it has no duty to defend and/or coverage obligations for the action entitled Rex Properties, LLC. v. Shorewood Forest Utilities, Inc, based upon the contractual liability exclusion and "loss" definition

**ANSWER: The Defendants deny the allegations set forth in paragraph 4 of Plaintiff's Complaint that is has no duty to defend and/or cover indemnification obligations in the case of Rex Properties, LLC v. Shorewood Forest Utilities, Inc. based upon the Stratford Policy. As to the remainder of the allegations, they constitute conclusions of law to which no response is required. To the extent a response is required, Defendants deny these allegations.**

5.    Declaration that the Policy's allocation provision applies with regard to any uncovered loss.

**ANSWER: These allegations constitute conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in**

paragraph 5 of Plaintiff's Complaint that is has no duty to defend and/or provide insurance coverage in the Schafer Class Action based on contractual language in the Stratford Policy concerning allocation.

### PARTIES, JURISDICTION, AND VENUE

6.      Stratford is an insurance company incorporated in the State of New Hampshire with its principle place of business in New Jersey, which does business in the State of Indiana.

**ANSWER: These allegations constitute conclusions of law to which no response is required. To the extent a response is required, Defendants are without sufficient knowledge to either admit or deny the allegations set forth in paragraph 6 of Plaintiff's Complaint as to the citizenship of Stratford, and therefore denies same.**

7.      Upon information and belief, Shorewood is a non-profit corporation that operates a sewage treatment plant in the Shorewood Forest subdivision located in Porter County, Indiana.

**ANSWER: Defendants admit the allegations set forth in paragraph 7 of Plaintiff's Complaint.**

8.      Upon information and belief, Greg Schafer ("Schafer") is a citizen of the State of Indiana, residing in Porter County, Indiana, and is a member of the Shorewood Forest Utility and former president of Shorewood's board of directors. Schafer is a class representative in the Schafer Class Action and a purported assignee of Shorewood's rights under the Stratford Policy.

**ANSWER: Defendants admit the allegations set forth in paragraph 8 of Plaintiff's Complaint.**

9.      Upon information and belief, Carlotta Holmes ("Holmes") is a citizen of the State of Indiana, residing in Porter County, Indiana, and is a member of the Shorewood Forest Utility

4

and current director of Shorewood's board of directors. Holmes is a class representative in the

Schafer Class Action and a purported assignee of Shorewood's rights under the Stratford Policy.

**ANSWER: Defendants admit the allegations set forth in paragraph 9 of Plaintiff's Complaint.**

10.    This Court has jurisdiction over this case based upon complete diversity of the

parties, and because the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332.

**ANSWER:  These allegations constitute conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in paragraph 10 of Plaintiff's Complaint as to their being complete diversity of the parties.**

11.    This Court has ancillary jurisdiction over Stratford's state law based claims

pursuant to 28 U.S.C. § 1367.

**ANSWER: These allegations constitute conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations set forth in paragraph 11 of Plaintiff's Complaint as ancillary jurisdiction has been replaced by supplemental jurisdiction.**

12.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§2201 and 2202

insofar Stratford seeks a declaration of its rights and duties under the insurance policy at issue.

**ANSWER:  These allegations constitute conclusions of law to which no response is required. To the extent a response is required, Defendants are without sufficient knowledge to either admit or deny the allegations and therefore denies same.**

13.    Stratford, Shorewood, Greg Schafer and Carlotta Holmes have sufficient minimum

contacts with this judicial district to confer personal jurisdiction over them in this Court.

**ANSWER:  These allegations constitute conclusions of law to which no response is required. To the extent a response is required, Defendants are without sufficient knowledge to either admit or deny the allegations as to Stratford's contacts as set forth in paragraph 13 of Plaintiff's Complaint. Defendants admit that they have sufficient minimum contacts with this judicial district to confer personal jurisdiction over them in this Court as stated in paragraph 13 of Plaintiff's Complaint.**

14.    Venue is proper in this District under 28 U.S.C. § 1391 because jurisdiction is based upon diversity of citizenship and the events giving rise to this claim occurred in this District.

**ANSWER: These allegations constitute conclusions of law to which no response is required. To the extent a response is required, Defendants are without sufficient knowledge to either admit or deny the allegations as to Stratford's contacts as set forth in paragraph 14 of Plaintiff's Complaint and therefore denies same.**

## THE INSURANCE POLICY

15.    Stratford issued to Shorewood a Directors, Officers, Insured Entity and Employment Practices Insurance Policy BRL0013560, effective February 17, 2017 to February 2, 2018, with a per claim and aggregate limit of $1,000,000 ("Policy"). Attached hereto as Exhibit "A."

**ANSWER: Defendants admit that Stratford, upon payment of the premiums by SFU as the named insured, issued the Stratford Policy of insurance in which SFU is the named insured with the policy period running from February 2, 2017 through February 2, 2018. The Common Policy Declarations further list the named insured as a corporation/organization where**

coverage limits are up to $1 million.  Further answering, Exhibit A appears to be the D&O policy issued to SFU.

<u>**THE PENDING UNDERLYING ACTIONS**</u>

16.    Greg Schafer, and Carlotta Holmes, Individually and on Behalf of All Others Similarly Situated, v. Shorewood Forest Utilities, Inc., Greg Colton, Dan Clark, Ken Buczek and Terry Atherton is an amended class action that was filed in the Porter County Superior Court, Valparaiso, Indiana, Cause No. 64D02-1705-CT- 4698. Attached hereto as Exhibit "B."

**ANSWER: Defendants admit there is pending litigation involving the Schafer Class Action in Porter County Superior Court under Cause No. 64D02-1705-CT-4698.**

17.    Rex Properties, LLC. v. Shorewood Forest Utilities, Inc., a counterclaim filed in a civil action filed in the Porter County Superior Court, Valparaiso, Indiana, Cause No. 64D02-1810-PL-10200) ("Rex Claim"). Attached hereto as Exhibit "C."

**ANSWER: Defendants admit that the Old Board Members of SFU (Clark, Buczek, Atherton & Colton) under the direction and with the assistance of Plaintiff and its hired insurance defense attorneys (as sanctioned and paid for by Stratford) filed a declaratory judgment action as alleged in paragraph 17 of Plaintiff's Complaint.  However, these actions by Stratford and its attorneys, representatives, and agents were done without any authority to speak on behalf of SFU a duly organized Indiana corporation.  From these misguided and unauthorized actions combined with direct collusion with legal counsel for Rex Properties, LLC, there followed the filing of a counterclaim by Rex Properties, LLC against SFU wherein the sum of $16 million in damages is currently being sought. The Old Board Members and their attorneys, representatives, and agents under the auspices of the Plaintiff's authority and**

7

**direction, later dismissed this state court declaratory judgment action pursuant to Indiana T.R. 41 because there was no merit to their original filing as it was frivolous, reckless, and constituted an _ultra vires_ action fully sanctioned and approved by Stratford. Nevertheless, the consequences of this unauthorized legal action (as approved by Plaintiff) remain as SFU continues to face a multi-million dollar damage claim by Rex Properties, LLC.**

## Schafer Class Action

18. The Schafer Class Action involves an action by Greg Schafer, Carlotta Holmes and a class of Shorewood utility holders against the former board of directors and Shorewood regarding the potential expansion of the Insured's sewerage system for an outside developer, Rex Properties, LLC ("Rex Properties") and the Arbor Lakes South development, pursuant to a contract entered into between Shorewood and Rex Properties ("Sewer Agreement").

**ANSWER: Defendants admit the Schafer Class Action involves an action by Schafer and Holmes as class representatives for the SFU utility owners against the Old Board Members and SFU regarding the potential expansion of SFU's wastewater treatment plant ("WWTP") and its service territory for the potential benefit of outside developer, Rex Properties, LLC, and its proposed Arbor Lakes South subdivision development. Defendants deny there was ever an enforceable sanitary sewer agreement ("SSA") that was entered into by SFU. Moreover, the Plaintiff, through its authorized legal representatives and insurance defense counsel, have previously admitted in legal pleadings that the SSA was not an unenforceable contract against SFU.**

19. Upon information and belief, Schafer is a member of the utility and former

president of the board of directors of Shorewood.

**ANSWER: Defendants admit that Greg Schafer is a member of the SFU and a former president of SFU's board of directors.**

20.    Upon information and belief, Holmes is a member of the utility and current member of Shorewood's board of directors.

**ANSWER: Defendants admit that Carlotta Holmes is a member of the utility and a current member of Shorewood's board of directors.**

21.    Upon information and belief, Defendants Greg Colton, Dan Clark, Ken Buczek and Terry Atherton were formerly on the board of directors of Shorewood (collectively referred to as the "Former Board").

**ANSWER: Defendants admit that Colton, Clark, Buczek and Atherton were former members of the SFU Board of Directors, but they lack sufficient information to either admit or deny what time periods are being insinuated in paragraph 21 of Plaintiff's Complaint as no time frame(s) is/are set out.  Defendants further admit that these Old Board Members acted without authority from SFU in an *ultra vires* manner in filing the declaratory judgment state court action as stated in Defendants' answer to paragraph 17 of Plaintiff's Complaint.  Further, that these actions by the Old Board Members were sanctioned, approved, directed, and financed by the Plaintiff.**

22.    Upon information and belief, Shorewood is a non-profit corporation that operates as a sewage disposal service for the development known as Shorewood wood Forest.

**ANSWER: Defendants admit that SFU is a non-profit corporation operating a WWTP and collection system.**

23.     The Class alleges there are two classes of members, Class A and B. Class A members live in Shorewood Forest and Class B members are in the service area but do not live in the Shorewood Forest development. Class A members have one vote for each lot and Class B members have a ½ vote for each lot.

**ANSWER:  The Defendants admit the allegation in paragraph 23 of the Plaintiff's Complaint.**

24.     The Class alleges under Shorewood's by-laws, certain actions require approval vote by the membership, including issues related to the authority of the board of directors to expand the territorial authority of the Utility service area and finance utility capital improvements through the issuance of bonds. Under the by- laws, the board of directors can be granted authority through a majority vote of a quorum of Shorewood members.

**ANSWER: Defendants admit that the SFU By-Laws have set forth therein how certain actions require approval and an affirmation by votes from SFU utility owners, which includes, amongst other things, the question of whether to expand its service territory.  Further answering, Defendants admit that the best evidence of the scope and requirements of these By-Laws is found in that document itself for purposes of addressing and taking any action(s) concerning the certificate of territorial authority ("CTA") and modification of same.**

25.     The Class alleges that when the original developer turned the Utility over to the Shorewood Forest homeowners it was advised that the Utility was not intended to, or designed to be, a regional treatment facility due to limitations with the size of the plant and the amount of land where the utility is located as well as the close proximity of the utility to the surrounding homes in the Shorewood Forest subdivision.

**ANSWER: Defendants are without sufficient facts to permit an admission or denial of the allegation in paragraph 25 of Plaintiff's Complaint as to what is meant by the "original developer" so denies same. Further answering, the Defendants admit that the WWTP was never intended to be a regional treatment facility as it is located amongst private single-family homes in the Shorewood Forest subdivision.**

26.    The Class alleges that Shorewood services approximately 1064 customers in the development and an additional 190 lots had been previously approved to be tied into the sewage treatment system. Also, that Shorewood has had three, or less, aeration tanks at various times that are functional or partially functional.

**ANSWER: Defendants admit that SFU services approximately 1064 customers in the Shorewood Forest subdivision and an additional number of lots located outside these boundaries that have been previously approved to be tied into SFU's WWTP for sewage services. Defendants are without sufficient facts to permit an admission or denial of the remaining allegations in paragraph 26 of Plaintiff's Complaint as to what is meant by the terms "three, or less, aeration tanks" and "at various times" so denies them.**

27.    The Class alleges that Indiana Department of Environmental Management ("IDEM") mandates that a sewage utility treatment plant has sufficient capacity and redundancy to properly treat all incoming sewage waste (even during times of maintenance). It is also alleged that the defendants are aware that the Utility does not have adequate capacity or redundancy to add more lots. Also, that on December 16, 2016, the Former Board presented false and inaccurate information from an engineer regarding the plant's treatment capacity.

**ANSWER: Defendants admit to the allegations in paragraph 27 of Plaintiff's Complaint.**

28.    The Class alleges that Shorewood's Former Board owed fiduciary duties to the members, including to accurately keep track and maintain accurate records of the plant's actual treatment, hydraulic and redundancy capacity and accurately report any changes.

**ANSWER: Defendants admit to the allegations in paragraph 28 of Plaintiff's Complaint, but further state that these allegations do not fully encapsulate the plethora of fiduciary duties owed by the Old Board Members to SFU and its utility owners.**

29.    The Class alleges that on November 17, 2016, a meeting was held by the Former Board and a preliminary resolution was approved to expand the Utility's Certificate of Authority ("CTA") in order to provide additional utility sewage service to a proposed subdivision called Arbor Lakes South.

**ANSWER:  Defendants admit to the allegations in paragraph 29 of Plaintiff's Complaint.**

30.    The Class further alleges that, on December 16, 2016, Shorewood held a special meeting with the Former Board and Shorewood Forest members to hear input from the membership regarding the preliminary resolution to expand the CTA. It is alleged that during this meeting information was presented by the Former Board and an outside developer named Donald Blum ("Blum"), and it was proposed by the Former Board that the Utility's CTA be expanded by as many as 379 additional lots.

**ANSWER:  Defendants admit to the allegations in paragraph 30 of Plaintiff's Complaint**

31.    The Class alleges the Former Board represented that there was no downside to the expansion despite knowing the Utility did not have adequate actual treatment, hydraulic and redundancy capacity for these 379 additional lots.

**ANSWER:  Defendants admit to the allegations in paragraph 31 of Plaintiff's Complaint.**

32.    The Class alleges the Former Board had adopted "Rules and Regulations for Sewage Disposal Service" in February of 2010 ("SFU Regulations"). It is alleged that the Former Board violated the SFU Regulations by falsely representing that the Utility had the present capacity to treat new waste from the proposed 379 additional homes (from other subdivisions).

**ANSWER:  Defendants admit that SFU's WWTP lacked sufficient capacity to treat existing equivalent dwelling units (EDUs) and certainly not to the extent of the proposed new number of additional EDUs.**

33.    The Class further claims it has a "huge financial damage claim" as a result of the defendants' attempt to wrongfully expand the Utility's CTA and that substantial financial exposure and shortfalls will be incurred by reason of the defendant's wrongful actions of entering into the Sewer Agreement with Blum and Rex Properties to expand the CTA (for the additional 379 lots).

**ANSWER:  Defendants admit to the allegations in paragraph 33 of the Plaintiff's Complaint but deny that this legal paragraph captures all financial damages incurred.**

34.    The Class alleges that the defendants engaged in fraud against the membership by presenting the membership with false and misleading information. Specifically, it was stated the proposed expansion of the CTA would be at no cost to the members, but in reality, the Utility had insufficient funds to pay for all the necessary repairs, deferred maintenance, replacement of antiquated lift stations and failing sewage lines. In addition, there were insufficient capital reserves for the costs of constructing another new aeration station and related equipment to

13

provide adequate actual, hydraulic and redundancy capacity for the CTA expansion.

**ANSWER:  Defendants admit to the allegations in paragraph 34 of Plaintiff's Complaint but deny that this legal paragraph captures all acts of fraud by the Old Board Members.**

35.     The Class alleges that the Former Board set up a referendum vote for April 20, 2017 (for the members to vote on the proposed CTA expansion) and that numerous improprieties occurred with how this vote was structured.

**ANSWER:  Defendants admit to the allegations in paragraph 35 of Plaintiff's Complaint but deny that this legal paragraph captures all improprieties by the Old Board Members.**

36.     The Class alleges the Former Board changed the course of dealing related to the process of setting up the vote as it issued unmarked ballots in unmarked envelopes to the members (by using unmarked ballots there was no way to know how many times a member voted); some members did not receive a ballot; and inaccurate / false information was provided on a separate piece of paper with the ballots to Shorewood Forest members that declared that an expansion of the CTA would be at no cost to the existing members.

**ANSWER:  Defendants admit to the allegations in paragraph 36 of Plaintiff's Complaint but deny that this legal paragraph captures all the acts, omissions, and failures by and on the part of the Old Board Members to act in the best interests of SFU, utility owners, and the Defendants.**

37.     The Class further alleges that it was negligent for the defendants to use the McMahon Engineering Report in the April 2017 meeting, that the defendants had failed to update this report and that new homes had been tied into the septic system since it had been done.

**ANSWER: Defendants admit to the allegations in paragraph 37 of Plaintiff's Complaint**

14

**but deny that this legal paragraph captures all acts of negligence, fraud, and misrepresentation in the Old Board Member's use of the out-of-date McMahon Engineering May 9, 2014 Capacity Report which they proselytized to SFU and utility owners in 2016 and 2017 as being accurate and up-to-date.**

38.    The Class alleges that the aforementioned improprieties were disclosed to the Former Board, a day prior to when the referendum vote was to be formally counted.

**ANSWER:  Defendants admit that improprieties were disclosed more than a day prior to the formal counting of the referendum vote.**

39.    The Class alleges that the Former Board in response agreed to stay the counting of the referendum vote for thirty-days, the Former Board reneged on this agreement and, in collusion with developer Blum, counted the referendum votes.

**ANSWER:  Defendants admit that an agreement was reached with the Old Board Members to stay matters for thirty (30) days but that the Old Board Members failed to comply with said agreement, and in consultation with Don Blum, member-manager of Rex Properties, LLC, went forward with counting the referendum votes which could not be verified.**

40.    The Class alleges the class members have been damaged because Shorewood is required to follow through with the proposed CTA expansion and Sewer Agreement.

**ANSWER:  Defendants admit that they, along with other class members and SFU, have been damaged due to the proposed CTA expansion which was based on faulty and misleading representations by the Old Board Members and McMahon Engineering, their retained engineering consultant. Further answering, the Defendants deny that the request for CTA expansion and consideration and execution of the SSA could even be brought forward to the**

Indiana Utility Regulatory Commission ("IURC") due to allegations of fraud in the complaint filed by the Old Board Members in May 2017. Based upon information and belief Stratford, in conjunction with its insurance defense counsel, took the position that the SSA was an enforceable contact obligating SFU to its terms and conditions which would subject the Defendants and SFU to damages.

41.     The Class also asserts that that the Sewer Agreement was one-sided as it only required Rex Properties to pay nominal sums for attorneys' fees, engineering fees and administrative fees related to the work performed for the required extension of the Utility service.

**ANSWER: Defendants admit that the SSA was not only one-sided but lacked mutuality of obligation, was not properly executed pursuant to SFU By-laws, and many other failings and shortcomings, all of which have caused damages to the Defendants and SFU.**

42.     The Class alleges that the Sewer Agreement obligated Shorewood to spend as much as $2,000,000 to develop and expand the sewage plant to create adequate capacity for the additional properties to be added; the Sewer Agreement provided that Rex Properties could cancel the contract at any time without any further financial responsibility; and the defendants allowed the Sewer Agreement to be negotiated and drafted without counsel representing SFU's interests.

**ANSWER: Defendants admit that the SSA obligated SFU and its utility owners to spend in excess of $2,000,000 for infrastructure improvements to address, amongst other things, the lack of sufficient capacity for its WWTP as set forth by the Indiana Department of Environmental Management ("IDEM") for servicing its existing customer base; that the SSA**

16

**lacked mutuality of obligation; that the SSA was not properly executed pursuant to SFU By-laws; and many other failings and shortcomings which have caused damages to the Defendants and SFU.  Defendants further admit that the final version of the SSA was drafted by counsel for Rex Properties, LLC without corresponding legal counsel to protect the interests of SFU, utility owners, and these Defendants via a simple review of the markedly altered and changed SSA introduced for the first time at the July 20, 2017 Annual Meeting.**

43.    The Class claims that the Sewer Agreement gave to Rex Properties more than 30% of the membership ownership rights in Shorewood for no consideration.

**ANSWER:  The Defendants admit that the SSA would give Rex Properties, LLC a significant ownership interest in the SFU without adequate consideration.**

44.    The Class alleges that on January 19, 2017, the Former Board held a meeting to address CTA expansion issue and the Former Board acknowledged the concern that expansion would risk losing control over the sewage treatment facilities by the Shorewood Forest development.

**ANSWER:  The Defendants admit that the Old Board Members did hold a series of meetings to discuss CTA expansion including a change in ownership.**

45.    The Class claims the defendants also disclosed during this meeting that it would cost up to $1.6 million to design and construct a new concrete aeration tank with clarifier to provide back up for the existing tank and that Shorewood is only expected to receive $600,000 from homeowners as part of the CTA expansion.

**ANSWER:  The Defendants admit that the Old Board Members made representations about the costs for a design and construction of a new aeration tank and clarifier, but deny that**

17

**all the consequences, expenses, and costs from a valid SSA are set forth herein.**

46.    The Class alleges that defendants intentionally ordered and expended unnecessary monies on a duplicative engineering report at the cost of $135,000 and that this report duplicated engineering plans of which the Former Board had knowledge.

**ANSWER:  The Defendants admit that the Old Board Members ordered and expended unnecessary monies on duplicative engineering reports and work that had already been completed by another engineering firm.**

47.    The Class alleges defendants never commissioned or received an up-to-date study to determine the environmental effect and impact of processing the additional sewage from the proposed CTA expansion to identify whether the influx would adversely impact homeowners in the Shorewood Forest Development.

**ANSWER:  The Defendants admit the Old Board Members (who are additional insureds under the Stratford Policy) deliberately advised McMahon Engineers not to update its capacity study completed in May 2016.  Moreover, McMahon Engineers instead of resigning or advising the public of this directive to the Defendants, SFU and utility owners remained silent.**

48.    The Class alleges that on July 20, 2017, the defendants held a special board meeting, without advance notice to the Shorewood membership, and approved the Sewer Agreement (obligating Shorewood to file a petition with the IURC to expand the utility sewerage service). The Class asserts that the defendants did not have authority to enter the contract because the majority of the SFU Utility members had never knowingly voted for expansion of the SFU Utility sewage treatment service area with the appropriate knowledge and that three of the four defendants had already been voted out of office at the time of the July 20th meeting and

vote of the SFU membership.

**ANSWER: The Defendants admit that the Old Board Members attempted to hold, without the required written notice a special meeting held outside the presence of the utility owners, was done in order to discuss the public outcry at the Annual Meeting that consideration of the SSA should await a count of the ballots for the new slate of 2017 SFU Board of Directors. Moreover, the regular Annual Meeting did not have a quorum did not have the required director signatures of the President and Vice President on the proposed SSA. SFU never approved the SSA nor was it obligated to present a petition for enlargement of the CTA to the IURC due to existing claims of fraud. Finally, the Defendants admit that the referendum vote for expansion of the CTA was faulty and utility members were provided with false and misleading information in violation of the SFU By-laws.**

49.     The Class alleges that Rex Properties refused a request by the New Board to cancel and rescind the Sewer Agreement.

**ANSWER: Defendants admit the allegations in paragraph 49 of Plaintiff's Complaint but would also state that the SSA was never properly executed, was impossible to perform, and lacked mutuality of obligation making it an unenforceable agreement at best.**

50.     The Class claims that Shorewood faces a $14M damages claim from Rex Properties as a result of the contractual obligations of the Sewer Agreement. Stratford has provided a defense for Shorewood for the Schafer Class Action subject to a reservation of rights.

**ANSWER: The Defendants admit the allegations in paragraph 50 of Plaintiff's Complaint but state that the damage claim by Rex Properties, LLC is currently in the amount of $16 million. Further answering, Stratford has issued a reservation of rights letter and has consistently**

19

worked for the exclusive benefit of the Old Board Members to the detriment of SFU, the Defendants, and utility owners.

**Rex Claim**

51.    In a separate proceeding, Rex Properties filed an Answer and Counter- Claim against Shorewood for breach of contract of the Sewer Agreement.

**ANSWER: The Defendants admit the allegations in paragraph 51 of Plaintiff's Complaint. Further answering, Rex Properties, LLC admitted all but one allegation in the declaratory judgment complaint directed to be filed by Stratford on behalf of the Old Board Members with the specific authority, approval, and payment of legal fees by the Plaintiff.**

52.    Rex Properties alleges that on July 20, 2017, Rex Properties and Shorewood entered into the Sewer Agreement executed by Greg Colton as president of Shorewood and that the Sewer Agreement required Shorewood to file a petition with the IURC to expand Shorewood's CTA.

**ANSWER: The Defendants deny the allegations in paragraph 52 of Plaintiff's Complaint as the SSA (at a minimum) required signatures by both the President and Vice President of SFU, a provision/requirement that was set forth in the SFU By-laws.  Those two signatures were not set forth in the SSA, such that on that basis alone, no binding contract was entered into and/or consummated on July 20, 2017 between Rex Properties, LLC and SFU.   There are many other reasons as to why the SSA is not an enforceable contract.  Further answering, the SSA did not require SFU to file a petition for expansion of the CTA with the IURC because that organization lacked jurisdiction.**

53.     Rex Properties further alleges that several Shorewood Board members were replaced through an election and that the newly elected board members (which included Greg Schafer) voted to repudiate the Sewer Agreement.

**ANSWER: The Defendants admit that several of the Old Board Members terms had expired well before July 20, 2017 and that no quorum existed to move forward with any new business on behalf of SFU.  The Defendants further admit that after the ballots/votes were counted for the slate of new SFU board of director members, those new directors as a matter of precaution voted to rescind the SSA.  However, this was an unnecessary action because there was never contract formation to make the SSA an enforceable agreement.**

54.     Rex Properties alleges that Shorewood has not filed a petition with IURC for expansion of Shorewood's CTA as required in the Sewer Agreement.

**ANSWER: The allegations in paragraph 54 of Plaintiff's Complaint constitute conclusions of law to which no response is required. To the extent a response is required regarding whether a petition for enlargement of the CTA could even be filed with the IURC, there already existed allegations of fraud filed against the Old Board Members in the Class Action case. As a result of these existing charges of fraud made before the July 20, 2017 Annual Meeting, the IURC had no jurisdiction to consider any petition seeking modifications to SFU's CTA, that is until such time as final determinations were made by the trial court as to the fraud charges.  No such determination(s) were made by the trial court within this 60-day window. As such, SFU could not file a petition with the IURC for possible enlargement of the CTA within 60-days of July 20, 2017, and this could not constitute a breach upon which a lawsuit can be based.**

55.    Rex Properties alleges that it has complied with all of its obligations under the Sewer Agreement, and Shorewood, through the newly elected board members and Greg Schafer, repudiated the Sewer Agreement and failed to file a petition with the IURC and that these actions were material breaches of the Sewer Agreement.

**ANSWER: The allegations in paragraph 55 of Plaintiff's Complaint constitute conclusions of law to which no response is required. To the extent a response is required regarding Rex Properties, LLC's failed compliance with all contractual requirements and conditions precedent, the Defendants deny the allegations in paragraph 55 of Plaintiff's Complaint.**

56.    Rex Properties asserts, in its pending summary judgment motion in the Rex Claim, that the newly elected board members directed Shorewood to refuse to carry out Shorewood's obligations under the Sewer Agreement.

**ANSWER: Rex Properties, LLC's motion for summary judgment has been denied and therefore, no answer to paragraph 56 of Plaintiff's Complaint is necessary.**

57.    Rex Properties asserts, in its pending summary judgment motion in the Rex Claim, that by letter dated July 24, 2017, Greg Schafer returned Rex Properties' $1,000.00 down payment made by Rex Properties made pursuant to the Sewer Agreement.

**ANSWER: Rex Properties, LLC's motion for summary judgment has been denied and therefore, no answer to paragraph 56 of Plaintiff's Complaint is necessary.**

58.    Stratford has provided a defense to Shorewood for the Rex Claim subject to a reservation of rights.

**ANSWER: Defendants admit that Stratford has provided a defense subject to a reservation of rights letter.  Further answering, the Defendants admit that due to decisions**

22

made and directions provided to its insurance defense counsel, Stratford has made demands of SFU to agree to defend and indemnify the Old Board Members against Rex Properties, LLC's current claim for $16 million in damages.  This demand for defense and indemnity by the Plaintiff runs contrary to the terms contained within the Stratford Policy but was still made despite the Plaintiff's role in supporting the filing of frivolous state court declaratory judgment complaint in Porter County.

### Consent Judgment

59.     On August 10, 2020, Greg Schafer and Carlotta Holmes, filed a motion for entry of consent judgment and for setting of scheduling conference for the Schafer Class Action. Attached to this motion is the Stipulation for Entry of Judgment by Consent Against Defendant, and the Assignment and Covenant not to Execute. Attached heretofore as Exhibit "D."

**ANSWER: The Defendants admit the allegations in paragraph 59 of Plaintiff's Complaint.**

60.     The consent judgment order provides that Greg Schafer, individually and on behalf of all others similarly situated, and defendant Shorewood agreed to enter into a consent judgment in the amount of $5,000,000.00. Attached heretofore as Exhibit "E." (Exhibits "D" and "E" are collectively referred to as the Consent Judgment).

**ANSWER: The Defendants admit the allegations in paragraph 60 of Plaintiff's Complaint and further state that the best evidence of what is stated in the consent judgment order and consent judgment are those documents themselves and deny any allegations not consistent with said documentation.**

61.     The Stipulation for Entry of Judgment by Consent Against Defendant provides that

Greg Schafer, individually and on behalf of all others similarly situated, and defendant Shorewood agreed to enter into a Consent Judgment in the amount of $5,000,000.00 and requests the Court enter judgment against defendant Shorewood (only) by consent.

**ANSWER: The Defendants admit the allegations in paragraph 61 of Plaintiff's Complaint and further state that the best evidence of what is stated in the consent judgment order and consent judgment are those documents themselves and deny any allegations not consistent with said documentation.**

62.    The Assignment and Covenant not to Execute was signed by Schafer, and Margie Stiles ("Stiles"), President of Shorewood; Anthony Cimino ("Cimino"),Vice-President of Shorewood; and Robin Carlascio ("Carlascio"), Secretary of Shorewood.

**ANSWER: The Defendants admit the allegations in paragraph 62 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Assignment and Covenant not to Execute are those documents themselves and deny any allegations not consistent with said documentation.**

63.    The Assignment and Covenant not to Execute provides that the Schafer Class Action arises out of the negligent and wrongful acts of the Former Board during and prior to the calendar year of 2017.

**ANSWER: The Defendants admit the allegations in paragraph 63 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Assignment and Covenant not to Execute are those documents themselves and deny any allegations not consistent with said documentation.**

64.    The Assignment and Covenant not to Execute provides that Shorewood and the

24

Former Board are Insureds under the Policy, which provides a maximum combined limit of $1,000,000.00.

**ANSWER: The Defendants admit the allegations in paragraph 64 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Assignment and Covenant not to Execute are those documents themselves and deny any allegations not consistent with said documentation.**

65.     The Assignment and Covenant not to Execute provides that plaintiffs demanded $9,616,978.86 on June 11, 2018, and have incurred additional attorney fees, damages and costs since that demand.

**ANSWER: The Defendants admit the allegations in paragraph 65 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Assignment and Covenant not to Execute are those documents themselves and deny any allegations not consistent with said documentation.**

66.     The Assignment and Covenant not to Execute provides that Stratford rejected plaintiffs' settlement demand and refused to pay the $1,000,000.00 limit.

**ANSWER: The Defendants admit the allegations in paragraph 66 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Assignment and Covenant not to Execute are those documents themselves and deny any allegations not consistent with said documentation.**

67.     The Assignment and Covenant not to Execute provides that Stratford's refusal to pay its limit was breach of the Policy and duty to deal in good faith.

**ANSWER: The Defendants admit the allegations in paragraph 67 of Plaintiff's Complaint,**

**and further state that the best evidence of what is stated in the Assignment and Covenant not to Execute are those documents themselves and deny any allegations not consistent with said documentation.**

68.    The Assignment and Covenant not to Execute provides that defendant Shorewood shall allow a consent judgment in the amount of $5,000,000.00, which is less than the settlement demand previously made by plaintiffs.

**ANSWER: The Defendants admit the allegations in paragraph 68 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Assignment and Covenant not to Execute are those documents themselves and deny any allegations not consistent with said documentation.**

69.    The Assignment and Covenant not to Execute provides that defendant Shorewood assigns to plaintiffs all of the rights and claims against Stratford, including by reason of the Policy; negligence and/or bad faith for failing to settle within policy limit; denial of coverage; placing its interests ahead of its insureds; failing to agree to indemnify its insureds for any judgment in excess of policy limit; and breach of its duty to deal in good faith with its insureds and filing an unauthorized and improper Declaratory Judgment action further creating and exposing its insureds to additional damages.

**ANSWER: The Defendants admit the allegations in paragraph 69 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Assignment and Covenant not to Execute are those documents themselves and deny any allegations not consistent with said documentation.**

70.    The Assignment and Covenant not to Execute provides that plaintiffs agree they

will not levy any execution or seek to collect or enforce the judgment against Shorewood or impair any of its corporate or business income or assets. Plaintiffs warrant that they will attempt to exclusively recover the amount of the judgment in an action against Stratford based upon the Policy and Assignment.

**ANSWER: The Defendants admit the allegations in paragraph 70 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Assignment and Covenant not to Execute are those documents themselves and deny any allegations not consistent with said documentation.**

71.    The Assignment and Covenant not to Execute provides that plaintiffs have not relied upon any statements or representations made by Shorewood as to the legal validity or viability of the claims of Shorewood against Stratford.

**ANSWER: The Defendants admit the allegations in paragraph 71 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Assignment and Covenant not to Execute are those documents themselves and deny any allegations not consistent with said documentation.**

72.    The Assignment and Covenant not to Execute provides that once Schafer's claim against Stratford has been finally determined and adjudicated, whether by settlement, judgment or appeal, he will cause a satisfaction of judgment to be entered, satisfying and releasing the consent judgment, irrespective of whether plaintiffs have succeeded in collecting the full amount of the judgment against Stratford and will dismiss the lawsuit against all parties in its entirety. Also, the agreement is a covenant not to execute from plaintiffs and Schafer to Shorewood and is not contingent upon whether plaintiffs and Schafer are successful in their claims against

Stratford.

**ANSWER: The Defendants admit the allegations in paragraph 72 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Assignment and Covenant not to Execute are those documents themselves and deny any allegations not consistent with said documentation.**

73.    The Assignment and Covenant not to Execute provides that it is understood, however, if it is determined that the consent judgment is invalid, the agreement shall be null, and void and the parties returned to status quo as if the agreement was never entered into by the parties.

**ANSWER: The Defendants admit the allegations in paragraph 73 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Assignment and Covenant not to Execute are those documents themselves and deny any allegations not consistent with said documentation.**

74.    The Assignment and Covenant not to Execute provides that Assignment shall not impair or be a set off or credit against damages that are being sought, or any judgment obtained against the remaining defendants in the Schafer Class Action or any other litigation.

ANSWER: **The Defendants admit the allegations in paragraph 74 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Assignment and Covenant not to Execute are those documents themselves and deny any allegations not consistent with said documentation.**

75.    On August 18, 2020, the Court for the Schafer Class Action issued and entered the order granting Greg Schafer's motion for the Consent and Stipulation of Judgment against

Shorewood in the amount of $5,000.000.00.

**ANSWER: The Defendants admit the allegations in paragraph 75 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the order granting the motion for Consent and Stipulation of Judgment are those documents themselves and deny any allegations not consistent with said documentation.**

76.    On September 14, 2020, counsel for Greg Schafer, filed with the Court for the Schafer Class Action a Motion for Supplemental Proceedings. Attached heretofore as Exhibit "F."

**ANSWER: The Defendants admit the allegations in paragraph 76 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Motion for Supplemental Proceedings is the document itself and deny any allegations not consistent with said documentation.**

77.    On September 18, 2020, counsel for Schafer, filed with the Court for the Schafer Class Action an Amended Motion for Supplemental Proceedings. Attached heretofore as Exhibit "G."

**ANSWER: The Defendants admit the allegations in paragraph 77 of Plaintiff's Complaint, and further state that the best evidence of what is stated in the Amended Motion for Supplemental Proceedings is the document itself and deny any allegations not consistent with said documentation.**

78.    Schafer and/or Shorewood assert that Stratford has an obligation under its Policy to make payment to Schafer, Individually and on Behalf of All Others Similarly Situated, for the Consent Judgment.

**ANSWER: The Defendants admit the allegations in paragraph 78 of Plaintiff's Complaint**

as to what was stated by Schafer and/or SFU in relation to obligations of Stratford under the Stratford Policy.

79.    Schafer, a former president of the board of directors of Shorewood and current member of the utility, is a named plaintiff in the Schafer Class Action.

**ANSWER: Defendants admit the allegations in paragraph 79 of Plaintiff's Complaint.**

80.    Co-counsel for the Class, and for Schafer, is Schafer's brother, Timothy S. Schafer.

**ANSWER: The Defendants object to paragraph 80 of Plaintiff's Complaint based upon relevancy.  If a response is required, the Defendants admit the allegations of paragraph 80 of Plaintiff's Complaint.**

81.    Shorewood is represented by Paul Poracky in the Schafer Class Action and the Rex Claim.

**ANSWER: Defendants admit the allegations of paragraph 81 of Plaintiff's Complaint.**

82.    Paul Poracky was retained by Shorewood with Stratford's consent.

**ANSWER: Defendants admit that prior insurance defense counsel originally retained by Stratford with its knowledge, authority, and approval colluded with counsel for Rex Properties, LLC against the best interests of SFU in formulating a state declaratory judgment action in Porter County.  Further answering, SFU demanded that prior insurance defense counsel be discharged and replaced with new representation.  Stratford complied with this request from SFU.**

83.    Upon information and belief, Paul Poracky reported to Schafer when he was the president of Shorewood's board of directors and continues to report to the newly elected board members, who are also part of the Class.

30

**ANSWER: Defendants admit that Paul B. Poracky reports to SFU through its duly elected board of directors from time-to-time as requested and required. The remainder of the allegations are an invasion into attorney-client communications to which no response is required.**

84.    Rex Properties claims that Sewer Agreement was breached when the newly elected board, which included Schafer, repudiated it immediately following their election, and by Schafer's July 24, 2017 letter returning Rex Properties' $1,000.00 earnest money deposit for the Sewer Agreement. The newly elected board also returned a $43,000.00 escrow deposit to Rex Properties and advised Rex that Shorewood would not move forward with presenting the Sewer Agreement to the IURC for purposes of seeking a CTA expansion.

**ANSWER: Defendants admit that Rex Properties, LLC has made certain allegations in its original counterclaim to the state declaratory judgment complaint that was orchestrated by Stratford through its retained insurance counsel, representatives, and agents. The Defendants deny any allegations inconsistent with SFU's answer and affirmative defenses to Rex Properties, LLC's counterclaim filed on January 7, 2019, submitted after Stratford's original insurance defense counsel were asked to withdraw representation of SFU. Further answering, there was no recission of the SSA by the new board because it was never an enforceable contract. Additionally, the IURC lacked jurisdiction to hear a petition for enlargement of SFU's CTA, so SFU could not file anything with the IURC within 60-days of the July 20, 2017 Annual Meeting as the IURC lacked jurisdiction.**

85.    Counsel for Shorewood, in separate court filings in the Rex Claim, acknowledges that Rex Properties' claim is that newly elected board members wrongfully rescinded the Sewer

Agreement.

**ANSWER: Defendants admit that Rex Properties, LLC has made certain allegations in its original counterclaim as filed in the state declaratory judgment action, a lawsuit that was orchestrated, endorsed, authorized, and paid for by Stratford through its retained insurance counsel, representatives, and agents. The Defendants deny any allegations inconsistent with SFU's answer and affirmative defenses to Rex Properties, LLC's counterclaim filed on January 7, 2019, which was submitted after Stratford's original insurance defense counsel were asked to withdraw representation of SFU. Further answering, there was no recission of the SSA because it was never an enforceable contract. Additionally, the IURC lacked jurisdiction to hear a petition for enlargement of SFU's CTA, so SFU could not file anything with the IURC within 60-days of the July 20, 2017 Annual Meeting. SFU has never claimed that recission of the SSA was "wrongful" in any manner since the contract was never an enforceable agreement so there was no need to rescind anything.**

86.    Shorewood, Schafer and/or Holmes claim that Shorewood faces a $14M damages claim from the Rex Claim.

**ANSWER: Defendants admit the allegations of paragraph 86 of Plaintiff's Complaint includes a stated claim of $14M in damages by Rex Properties, LLC due to an alleged breach of the SSA.    Further answering, Rex Properties, LLC's claimed damage number has since been abandoned and increased to $16M along with prejudgment interest for which Rex Properties, LLC is seeking damages from SFU. Further answering, Stratford has demanded of SFU, the utility owners and the Defendants to obligate themselves to Rex Properties, LLC's claim for damages by demanding that they collectively agree to defend and indemnify the Old Board**

**Members against any and all claims for damage by Rex Properties, LLC, relieving the Old Board Members of any responsibility for their acts and omissions.   See also, answer to paragraph 85 of Plaintiff's Complaint.**

87.    With the Class and Shorewood entering into the Consent Judgment, the Class, as utility holders and owners of Shorewood, have essentially entered into an agreement with themselves.

**ANSWER: The Defendants deny the allegations in paragraph 87 of Plaintiff's Complaint.**

88.    The Assignment and Covenant not to Execute was executed by Schafer, Cimino and Stiles in bad faith and for their own self-interest and in an effort to pass the alleged liability for the newly elected board's repudiation of the Sewer Agreement, through Shorewood, to Stratford in the Schafer Class Action.

**ANSWER: The Defendants deny the allegations in paragraph 88 of Plaintiff's Complaint.**

89.    Shorewood and/or its counsel did not advise Stratford that Shorewood had entered, or intended to enter, into the Consent Judgement.

**ANSWER: The Defendants deny the allegations in paragraph 89 of Plaintiff's Complaint.**

90.    The amount of the Consent Judgment is not reasonable based upon the defenses available to Schafer class Action and Rex Claim.

**ANSWER: The Defendants deny the allegations in paragraph 90 of Plaintiff's Complaint. Moreover, there was active and ongoing collusion between Stratford and its retained insurance defense counsel, representatives, and agents in conjunction with legal counsel for Rex Properties, LLC against SFU.  These actions by the Plaintiff against its named insured – SFU demonstrates in part the necessity of the Consent Judgment.**

91. Counsel for Shorewood has advised Stratford that substantial defenses exist to Rex Properties' contractual claim and that Shorewood should be able to defeat Rex Properties' motion for summary judgment and claims against Shorewood. These defenses include, but are not limited to, Rex Properties not having adequate project funding and/or incurring any costs or undertaking any action to move forward with the process to construct and sell the homes to be built on at Arbor Lakes South and that Rex Properties failed to mitigate its damages (as the homes could still be built with individual septic systems).

**ANSWER: Rex Properties, LLC's motion for summary judgment has been denied and therefore, no answer to paragraph 91 of Plaintiff's Complaint is necessary.  If a response is required, the Defendants would show that there are several affirmative defenses plead as to Rex Properties, LLC's original counterclaim.  See SFU's Answer and Affirmative Defenses attached as Exhibit 1 and incorporated herein.**

92. Counsel for Shorewood, in separate court filings in the Rex Claim concerning a discovery dispute, has argued that the Sewer Agreement is not valid because Rex Properties failed to attach the required documentation showing ownership of all of the land for the Arbor Lakes South development. Also, the option for approximately half of the land, that the homes for Arbor Lakes South were to be built on, was voluntarily given up by Rex Properties and that Rex Properties advised the sellers that the Sewer Agreement was no longer a viable contract and that Rex Properties had its $10,000.00 earnest money deposit for the land returned by the seller (making performance of the Sewer Agreement objectively impossible).

**ANSWER: Rex Properties, LLC's motion for summary judgment has been denied and therefore, no answer to paragraph 92 of Plaintiff's Complaint is necessary.  If a response is**

required, the best evidence of what the "unnamed court filings said" are those court filings themselves, and the Defendants deny any allegation(s) inconsistent with the content and context of any such statements. Once these unnamed court filings are identified, then the Defendants will seek leave to amend their answer to the Plaintiff's Complaint and add those pleadings as exhibits herein. Defendants would also show that there are several affirmative defenses plead as to Rex Properties, LLC's original counterclaim which is attached and incorporated herein. *See* Exhibit 1.

93. Counsel for Shorewood, in separate court filings in the Rex Claim concerning a discovery dispute, has argued that Rex Properties has failed to fully develop the nearby, smaller Arbor Lakes Estates subdivision in over 13 years and Blum's damage estimate of $14,000,000 has no support or foundation.

**ANSWER: Rex Properties, LLC's motion for summary judgment has been denied which includes consideration and rejection of Don Blum's damage estimates and claims, and therefore, no answer to paragraph 93 of Plaintiff's Complaint is necessary. If a response is required, the Arbor Lake Estates subdivision of 88 homes sites started in 2008 have not all been developed with homes constructed on those lots in the ensuing 14 years from the start of that project by Rex Properties, LLC.**

94. Defense counsel for Shorewood, however, has sought six separate extensions (over the course of seven months) to respond to the pending summary judgment motion filed by Rex Properties causing a delay in advancing the available defenses and assist in Shorewood's efforts to recover from Stratford contractual damages that Rex Properties will not be entitled under the Sewer Agreement and/or that are not covered under the Policy.

**ANSWER: Rex Properties, LLC's motion for summary judgment has been denied and therefore, no answer to paragraph 94 of Plaintiff's Complaint is necessary. Extensions of time were agreed to between SFU and Rex Properties, LLC and COVID-19 was a large factor as well.**

95. Upon information and belief, Shorewood and/or its agents and/or assigns did not engage in any serious settlement negotiations with the Class Plaintiffs and have entered into the Consent Judgment as part of an effort to recover amounts from Stratford for its own benefit and while keeping the issues in the Rex Claim open to provide Schafer time to execute the unsupported Consent Judgment against Stratford in the Schafer Class Action.

**ANSWER: The Defendants deny the allegations in paragraph 95 of Plaintiff's Complaint. If a response is required, Plaintiff's actions and omissions, breaches of the terms of the Stratford Policy by Plaintiff, Plaintiff's bad faith directed towards SFU and its utility owners, Stratford's failure to protect the best interest of SFU (its named insured) and its utility owners in timely resolving this case despite demands from SFU to do so all served as the foundation upon which the Consent Judgment was founded. Demands were made to Stratford to settle the Class Action case but Stratford demanded SFU and its utility owners defend and indemnify the Old Board Members against all legal actions, including the claim by Rex Properties, LLC for $16M in damages. SFU, its utility owners and the Defendants are not an insurance company and lack the financial resources to stand responsible for a damage claim of $16M.**

96. The claims made against the defendants in the Schafer Class Action have been denied by the Former Board defendants and the Former Board did not enter into a separate consent judgment offered by Greg Schafer and his counsel, Timothy S. Schafer.

**ANSWER: The Defendants admit that the Old Board Members have denied the claims**

made against them in the Class Action, but that evidence evinced through written and oral

discovery have confirmed that such denials are faulty and flawed.  Further answering, based

upon information and belief, the Defendants admit that the Old Board Members did not enter

into a separate consent judgment that was offered to them due to and based on instructions

and directions from Stratford as made to its insurance defense counsel, representatives and

agents.

**COUNT I: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO SATISFY THE CONSENT
JUDGMENT UNDER THE TERMS OF THE POLICY BECAUSE THE INSURED BREACHED THE POLICY
CONDITION PROHIBITING THE ADMISSION OF LIABILITY, SETTLEMENT OF A CLAIM AND THE
VOLUNTARY ASSUMPTION OF AN OBLIGATION**

97.    Stratford repeats and incorporates by reference paragraphs 1 through 96 as if fully

set forth herein.

**ANSWER:  Reincorporation.**

98.    Stratford has no obligation for the Consent Judgment under the Policy based upon

Section VI., Conditions, A.1.c., of the Policy.

**ANSWER:    The  allegations  in  paragraph  98  of  Plaintiff's  Complaint  constitute**

**conclusions of law to which no response is required.  If a response is required, the Defendants**

**deny the allegations in paragraph 98 of Plaintiff's Complaint.**

99.    Section VI. Conditions, A.1.c., provides that: "[A]s a condition precedent to the

right of coverage provided by this Coverage Part, the insured must do the following: … c. Not

admit liability, settle any claims, or assume any obligations without our prior written consent."

**ANSWER:    The  allegations  in  paragraph  99  of  Plaintiff's  Complaint  constitute**

**conclusions of law to which no response is required.  The Defendants deny any allegation(s)**

that is not consistent with the language in the Stratford Policy and Indiana substantive law, and further answering, state that the best evidence is the Stratford Policy. If a response is required, the Defendants deny the allegations in paragraph 98 of Plaintiff's Complaint.

100.    Stratford never provided consent to Shorewood to enter into the Consent Judgement, admit liability or settle the Schafer Class Action.

**ANSWER:  The defendants admit that Stratford refused all requests to resolve both the Class Action case and the Rex Properties, LLC's counterclaim as well as a refusal to enter into a Consent Judgment.**

101.    As a result of such breach of this condition precedent of the Policy, coverage is not available for the Consent Judgment.

**ANSWER:   The allegations in paragraph 101 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  If a response is required, the Defendants deny the allegations in paragraph 101 of Plaintiff's Complaint.  The Defendants deny any allegation(s) that is not consistent with the language in the Stratford Policy and Indiana substantive law.**

<u>**COUNT II: FOR A DECLARATION THAT THE CONSENT JUDGMENT IS INVALID AND UNENFORCEABLE BECAUSE THE AMOUNT OF THE CONSENT JUDGMENT IS NOT REASONABLE**</u>

102.    Stratford repeats and incorporates by reference paragraphs 1 through 101 as if fully set forth herein.

**ANSWER:  Reincorporation.**

103.    The amount of the $5,000,000 Consent Judgment is not consistent or supported by the facts or legal theories regarding Shorewood's liability.

**ANSWER:   The allegations in paragraph 103 of Plaintiff's Complaint constitute**

conclusions of law to which no response is required. If a response is required, the Defendants

deny the allegations in paragraph 103 of Plaintiff's Complaint.

104.    Stratford was advised that Shorewood has strong defenses to Rex Properties'

contractual claim and should be able to defeat Rex Properties' motion for summary judgment as

well as Rex Properties' claims against Shorewood.

**ANSWER:   Rex Properties, LLC's motion for summary judgment has been denied and**

**therefore, no answer to paragraph 104 of Plaintiff's Complaint is necessary.**

105.    Stratford has never been provided with any reports or assessments from

Shorewood or its counsel supporting a judgment for $5,000,000.00, or the Policy limit.

**ANSWER:  The Defendants deny the allegations in paragraph 105 of Plaintiff's**

**Complaint.**

106.    Upon information and belief, Shorewood and/or its counsel did not engage in any

serious settlement negotiations with the Class Plaintiffs.

**ANSWER:   The Defendants deny the allegations in paragraph 106 of Plaintiff's**

**Complaint.**

107.    Based upon the aforementioned, the $5,000,000 Consent Judgment is an

unreasonable amount for Shorewood to resolve the Class' claims against it and should be found

to be void and unenforceable.

**ANSWER:   The allegations in paragraph 107 of Plaintiff's Complaint constitute**

**conclusions of law to which no response is required. If a response is required, the Defendants**

**deny the allegations in paragraph 107 of Plaintiff's Complaint.**

## <u>COUNT III: FOR A DECLARATION THAT THE CONSENT JUDGMENT IS INVALID AND<br>UNENFORCEABLE AS IT WAS PROCURED THROUGH FRAUD, BAD FAITH AND/OR COLLUSION</u>

108.     Stratford repeats and incorporates by reference paragraphs 1 through 107 as if fully set forth herein.

**ANSWER:  Reincorporate.**

109.     Stratford has no obligation under the Policy for the Consent Judgment as it was procured by fraud on the part of Shorewood, Greg Schafer, Carlotta Holmes and/or their agents and/or assigns is therefore void and unenforceable under Indiana law.

**ANSWER:   The allegations in paragraph 109 of Plaintiff's Complaint constitute conclusions of law to which no response is required. If a response is required, the  Defendants deny the allegations in paragraph 109 of Plaintiff's Complaint.**

110.     Stratford has no obligation under the Policy for the Consent Judgment as it was procured by bad faith on the part of Shorewood, Greg Schafer, Carlotta Holmes and/or their agents and/or assigns and is therefore void and unenforceable under Indiana law.

**ANSWER:   The allegations in paragraph 110 of Plaintiff's Complaint constitute conclusions of law to which no response is required. If a response is required, the Defendants deny the allegations in paragraph 110 of Plaintiff's Complaint.**

111.     Stratford has no obligation under the Policy for the Consent Judgment as it was procured by collusion on the part of Shorewood, Greg Schafer, Carlotta Holmes and/or their agents and/or assigns and is therefore void and unenforceable under Indiana law.

**ANSWER:   The allegations in paragraph 111 of Plaintiff's Complaint constitute conclusions of law to which no response is required. If a response is required, the Defendants deny the allegations in paragraph 111 of Plaintiff's Complaint.**

112.    As a result of the aforementioned, the Consent Judgment should be stricken as a product of collusion and being entered into by Shorewood in bad faith and with the intention of committing a fraud against Stratford.

**ANSWER: The allegations in paragraph 112 of Plaintiff's Complaint constitute conclusions of law to which no response is required. If a response is required, the Defendants deny the allegations in paragraph 112 of Plaintiff's Complaint.**

### COUNT IV: FOR A DECLARATION THAT THE CONSENT JUDGMENT IS INVALID AND UNENFORCEABLE BECAUSE IT IS AGAINST PUBLIC POLICY

113.    Stratford repeats and incorporates by reference paragraphs 1 through 112 as if fully set forth herein.

**ANSWER:  Reincorporate.**

114.    The Assignment and Covenant not to Execute entered into between Greg Schafer and Shorewood contains the following paragraph: "Whereas, the claims brought by plaintiffs arise out of the negligent and wrongful act of the Board of Directors of Shorewood Forest Utilities, Inc., and in particular, Greg Colton, Dan Clark, Ken Buczek and Terry Atherton during and prior to the calendar year of 2017…"

**ANSWER:  The Defendants state that the best evidence of what is contained in the Assignment and Covenant not to Execute are those documents itself and the Defendants deny any assertions not consistent with the language contained therein.**

115.    The individual defendants in the Schafer Class Action (i.e., the Former Board) have declined to accept the Consent Judgment and deny any liability faced in the Schafer Class Action.

**ANSWER:  The Defendants are without sufficient information to admit or deny the allegations in paragraph 115 of Plaintiff's Complaint.  Based on information and belief the**

**Defendants state that Stratford and its insurance defense counsel, representatives and agents instructed the Old Board Members not to accept the Consent Judgment.**

116.    The $5,000,000 Consent Judgement would be a windfall to the Class Action plaintiffs, and in turn Shorewood, as it has never been shown that the Former Board and/or Shorewood is liable to the Class for any damages.

**ANSWER:    The allegations in paragraph 116 of Plaintiff's Complaint constitute conclusions of law to which no response is required. If a response is required, the Defendants deny the allegations in paragraph 116 of Plaintiff's Complaint.**

117.    Enforcing the Consent Judgment would violate public policy because it would reward parties for their negligent and wrongful acts.

**ANSWER:    The allegations in paragraph 117 of Plaintiff's Complaint constitute conclusions of law to which no response is required. If a response is required, the Defendants deny the allegations in paragraph 117 of Plaintiff's Complaint.**

**COUNT V: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO SATISFY THE CONSENT JUDGMENT UNDER THE TERMS OF POLICY BECAUSE SHOREWOOD IS NOT "LEGALLY OBLIGATED" TO PAY THE CONSENT JUDGMENT**

118.    Stratford repeats and incorporates by reference paragraphs 1 through 117 as if fully set forth herein.

**ANSWER:  Reincorporation.**

119.    Stratford has no obligation for the Consent Judgment based upon the Policy's Insuring Clause.

**ANSWER:    The allegations in paragraph 119 of Plaintiff's Complaint constitute conclusions of law to which no response is required. If a response is required, the Defendants**

deny the allegations in paragraph 119 of Plaintiff's Complaint.

120.   Insuring Agreement A., Directors and Officers Liability, of the Policy, provides:

We will pay on behalf of the insured all "loss" that the insured becomes legally obligated

to pay because of a "claim" first made against the insured during the policy period for

"wrongful acts":

a.   Arising solely out of the "individual insureds" performance of his or her duties on

behalf      of the "organization"; or

b.   Attributed to the "organization".

**ANSWER:  There are no allegations in paragraph 120 of Plaintiff's Complaint to which a**

**response is required.**

121.   The Policy's Insuring Clause requires Stratford to pay on behalf all "loss" the

Insured is legally obligated to pay because of a "claim" for "wrongful acts" attributed to

Shorewood.

**ANSWER:   The allegations in paragraph 121 of Plaintiff's Complaint constitute**

**conclusions of law to which no response is required.**

122.   In addition, "loss" is defined to not include: "a. Any amount for which the insured

is not financially liable or legally obligated to pay."

**ANSWER:   The allegations in paragraph 122 of Plaintiff's Complaint constitute**

**conclusions of law to which no response is required.**

123.   The Consent Judgement does not require any payment from Shorewood.

**ANSWER:   The Defendants state that the best evidence of what requirements are for**

**SFU are set forth in the Consent Judgment and denies any allegations inconsistent with the**

**language therein.**

124.    The Consent Judgment also provides that "[I]t is understood, however, if it is determined that the consent judgment is invalid, this agreement shall be null and void and the parties shall be returned to status quo as if this agreement was never entered into by the parties."

**ANSWER:  The Defendants state that the best evidence of what requirements are for SFU are set forth in the Consent Judgment and denies any allegations inconsistent with the language therein.**

125.    Given the Consent Judgment contains a covenant not to execute against Shorewood and does not impose any obligation on Shorewood to pay any amount of it, it does not make Shorewood "financially liable" or place it under any "legal obligation" to pay the Consent Judgment.

**ANSWER:   The allegations in paragraph 125 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

126.    As result, the Consent Judgment does not represent a financial or legal obligation of Shorewood and no coverage is available for it under the Policy.

**ANSWER:   The allegations in paragraph 126 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

**COUNT VI: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO SATISFY THE CONSENT JUDGMENT UNDER THE TERMS OF THE POLICY BECAUSE IT DOES NOT CONSTITUTE "LOSS"**

127.    Stratford repeats and incorporates by reference paragraphs 1 through 121 as if fully set forth herein.

**ANSWER:  Reincorporate.**

128.    Stratford has no obligation for the Consent Judgment based upon the Policy's

Insuring Clause and "loss" definition.

**ANSWER:** **The allegations in paragraph 128 of Plaintiff's Complaint constitute conclusions of law to which no response is required**

129.     Insuring Agreement A., Directors and Officers Liability, of the Policy, provides:

We will pay on behalf of the insured all "loss" that the insured becomes legally obligated to pay because of a "claim" first made against the insured during the policy period for "wrongful acts":

a.   Arising solely out of the "individual insureds" performance of his or her duties on behalf   of the "organization"; or

b.   Attributed to the "organization".

**ANSWER:  There are no allegations in paragraph 129 of Plaintiff's Complaint to which a response is required.**

130.     The Policy's Insuring Clause requires Stratford to pay on behalf all "loss" the Insured is legally obligated to pay because of a "claim" for "wrongful acts" attributed to Shorewood.

**ANSWER:   The allegations in paragraph 130 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

131.     The Policy's definition of "loss" provides that "loss" does not include "c. Damages owed based on an express obligation by written or oral agreement or amounts owed under any contract or agreement."

**ANSWER:   The allegations in paragraph 131 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

132.    Shorewood relies on the Rex Properties' alleged and untested potential damages from contractual obligations related to Sewer Agreement as the basis for the $5,000,000 Consent Judgment, as these damages arising from this contractual liability are not "loss" under the Policy.

**ANSWER:  The allegations in paragraph 132 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

133.    As result, the Consent Judgment does not involve covered "loss" and no coverage is available for it under the Policy.

**ANSWER:  The allegations in paragraph 133 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

**COUNT VII: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO SATISFY THE CONSENT JUDGMENT UNDER THE TERMS OF POLICY BECAUSE EXCLUSION 3., APPLIES TO EXCLUDE COVERAGE FOR THE CONSENT JUDGMENT**

134.    Stratford repeats and incorporates by reference paragraphs 1 through 133 as if fully set forth herein.

**ANSWER:  Reincorporate.**

135.    Stratford has no obligation for the Consent Judgment under the Policy based upon Section III., Exclusion, 3., of the Policy.

**ANSWER:  The allegations in paragraph 135 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

136.    Exclusion 3., provides "This insurance does not apply to any 'loss' or 'defense costs' in connection with any 'claim' made against an insured, arising out of, directly or indirectly resulting from, or in consequence of, or in any way involving: … 3. Liability under any contract or agreement except liability that would exist even in the absence of the contract or agreement.

46

However, we will indemnify the insured for 'defense costs' but only with respect to a 'claim' that alleges a breach of an express or implied employment contract."

**ANSWER:  The allegations in paragraph 136 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

137.    The Consent Judgment imposes liability based upon a contractual agreement between Shorewood and Greg Schafer, Individually and on Behalf of All Others Similarly Situated.

**ANSWER:  The allegations in paragraph 137 of Plaintiff's Complaint constitute conclusions of law to which no response is required.  If a response is required, the Defendants deny the allegation(s) in paragraph 137 of Plaintiff's Complaint that is/are inconsistent with the Stratford Policy and Indiana substantive law on the purpose and use of consent judgments.**

138.    As a result of this exclusion, coverage is not available for the Consent Judgment.

**ANSWER:  The allegations in paragraph 138 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

**COUNT VIII: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO DEFEND OR INDEMNIFY SHOREWOOD IN CONNECTION WITH THE SCHAFER CLASS ACTION BECAUSE EXCLUSION III.3., BARS COVERAGE**

139.    Stratford repeats and incorporates by reference paragraphs 1 through 138 as if fully set forth herein.

**ANSWER:  Reincorporation.**

140.    Stratford previously reserved its rights to deny coverage for the Schafer Class Action pursuant to Exclusion III.3., of the Policy.

**ANSWER:  The Defendants admit that Stratford has denied coverage for the Class Action, and further answering, the Defendants deny the remaining allegations in paragraph 140 of Plaintiff's Complaint.**

141.    Shorewood, Greg Schafer and/or Carlotta Holmes claim that Shorewood faces a $14M damage claim from Rex Properties as a result of the Sewer Agreement.

**ANSWER: The Defendants deny the allegations in paragraph 141 of Plaintiff's Complaint that are inconsistent with pleadings filed in the state court class declaratory judgment case. Further answering, Rex Properties, LLC has now made a claim for damages in excess of $16M. The Defendants specifically incorporate all pleadings by SFU in defending against Rex Properties, LLC's motion for summary judgment.  See Exhibit 1.**

142.    In accordance with Exclusion III.3., previously set forth above, the Schafer Class Action is based upon, arises from, is in consequence or involves the Sewer Agreement.

**ANSWER:  Based upon information and belief, claims for damages in the Class Action case (First Amended Complaint) set forth the bases for said actions and the Defendants deny any allegations in paragraph 142 that are inconsistent with those pleadings.   Further answering, the Defendants contend that Exclusion III.3 is inapplicable.**

143.    Stratford is entitled to a declaratory judgment in its favor, declaring that Stratford has no duty to defend the Schafer Class Action and coverage for all "loss" is excluded pursuant to Exclusion III.3., of the Policy.

**ANSWER:  The Defendants deny the allegation in paragraph 143 of Plaintiff's Complaint.**

## COUNT IX: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO DEFEND OR INDEMNIFY SHOREWOOD IN CONNECTION WITH THE SCHAFER CLASS ACTION BECAUSE EXCLUSION III.15., BARS COVERAGE

144.    Stratford repeats and incorporates by reference paragraphs 1 through 143 as if fully set forth herein.

**ANSWER: Reincorporation.**

145.    Stratford previously reserved its rights to deny coverage for the Schafer Class Action to Exclusion III.15., of the Policy.

**ANSWER: The Defendants admit that Stratford has denied coverage for the Class Action, and further answering, the Defendants deny the remaining allegations in paragraph 145 of Plaintiff's Complaint.**

146.    Exclusion 15., provides "This insurance does not apply to any 'loss' or 'defense costs' in connection with any 'claim' made against an insured, arising out of, directly or indirectly resulting from, or in consequence of, or in any way involving: … 15. Any 'claim' by, at the behest of, or on behalf of the 'organization' or any 'individual insured' …"

**ANSWER:    The allegations in paragraph 146 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

147.    The Schafer Class Action is a "claim" brought by Greg Schafer against Shorewood and the Former Board.

**ANSWER:  Based upon information and belief, claims for damages in the Class Action case (First Amended Complaint) set forth the basis for said actions and the Defendants deny any allegations in paragraph 147 that are inconsistent with those pleadings.**

148.    Greg Schafer is the former president of the Shorewood board of directors and qualifies as an "individual insured" under the Policy.

**ANSWER:    The allegations in paragraph 148 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

149.    In accordance with Exclusion III.15., the Schafer Class Action, arises out of, directly

or indirectly results from, is in consequence of, or involve "claim" by Greg Schafer.

ANSWER:    The allegations in paragraph 149 of Plaintiff's Complaint constitute conclusions of law to which no response is required.

150.    Stratford is entitled to a declaratory judgment in its favor, declaring that the Stratford has no duty to defend the Schafer Class Action and coverage for all "loss" is excluded pursuant to Exclusion III.15., of the Policy.

ANSWER:  The Defendants deny the allegation in paragraph 150 of Plaintiff's Complaint.

**COUNT X: FOR A DECLARATION STRATFORD HAS NO DUTY TO INDEMNIFY SHOREWOOD IN CONNECTION WITH THE SCHAFER CLASS ACTION BECAUSE IT SEEKS UNCOVERED "LOSS" UNDER THE POLICY**

151.    Stratford repeats and incorporates by reference paragraphs 1 through 150 as if fully set forth herein.

ANSWER:  Reincorporate.

152.    Insuring Agreement A., Directors and Officers Liability, of the Policy, provides:

We will pay on behalf of the insured all "loss" that the insured becomes legally obligated to pay because of a "claim" first made against the insured during the policy period for "wrongful acts":

a.    Arising solely out of the "individual insureds" performance of his or her duties on behalf  of the "organization"; or

b.    Attributed to the "organization".

ANSWER:  There are no allegations in paragraph 152 of Plaintiff's Complaint to which a response is required.

153.    The Policy's Insuring Clause requires Stratford to pay on behalf all "loss" the Insured is legally obligated to pay because of a "claim" for "wrongful acts" attributed to Shorewood.

**ANSWER:   The allegations in paragraph 153 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

154.    "Loss" does not include: "c. Damages owed based on an express obligation by written or oral agreement or amounts owed under any contract or agreement."

**ANSWER:   The allegations in paragraph 154 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

155.    The Schafer Class Action seeks damages that are allegedly owed as a result of liability arising from the Sewer Agreement.

**ANSWER:   The allegations in paragraph 155 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

156.    Stratford is entitled to a declaratory judgment in its favor, declaring that the Shorewood is not entitled to coverage for the Schafer Class Action as any and all damages owed for the Sewer Agreement are not "loss" under the Policy.

**ANSWER:  The Defendants deny the allegation in paragraph 156 of Plaintiff's Complaint.**

**COUNT XI: FOR DECLARATION THAT STRATFORD HAS NO DUTY TO INDEMNIFY SHOREWOOD IN CONNECTION WITH THE SCHAFER CLASS ACTION BECAUSE EXCLUSION III.8., BARS COVERAGE**

157.    Stratford repeats and incorporates by reference paragraphs 1 through 156 as if fully set forth herein.

**ANSWER: Reincorporate.**

158.    Stratford previously reserved its rights to deny coverage for the Schafer Class Action to Exclusion III.8., of the Policy.

**ANSWER:   The allegations in paragraph 158 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

159.    Exclusion III.8., provides "This insurance does not apply to any 'loss' or 'defense costs' in connection with any 'claim' made against an insured, arising out of, directly or indirectly resulting from, or in consequence of, or in any way involving: … 8. Any fraudulent, dishonest, or criminal act. However, this exclusion does not apply to 'defense costs' or 'loss' incurred until such conduct is established in a final and non-appealable judgment or adjudication in the underlying action to be fraudulent, dishonest or criminal. The 'wrongful act' of any 'individual insured' will not be imputed to any other 'individual insured'."

**ANSWER:   The allegations constitute conclusions of law to which no response is required.**

160.    In the Schafer Class Action, it is alleged the defendants committed acts of fraud and malfeasance.

**ANSWER:  Based upon information and belief, claims for damages in the Class Action case (First Amended Complaint) set forth the basis for said actions and the Defendants deny any allegations in paragraph 160 that are inconsistent with those pleadings.**

161.    As a result, pursuant to Exclusion III.8., Stratford has no obligation to pay any amounts awarded for any fraudulent or criminal acts of the Insured in connection with the Schafer Class Action.

**ANSWER: The allegations in paragraph 161 of Plaintiff's Complaint constitute conclusions of law to which no response is required.**

<u>**COUNT XII: FOR A DECLARATION THAT STRATFORD HAS NO DUTY TO DEFEND OR INDEMNIFY SHOREWOOD IN CONNECTION WITH THE REX CLAIM BECAUSE EXCLUSION III.3., BARS COVERAGE**</u>

162.    Stratford repeats and incorporates by reference paragraphs 1 through 161 as if fully set forth herein.

**ANSWER: Reincorporation.**

163.    Stratford previously reserved its rights to deny coverage for the Schafer Class Action pursuant to Exclusion III.3., of the Policy.

**ANSWER: The allegations constitute conclusions of law to which no response is required.**

164.    Shorewood, Greg Schafer and/or Carlotta Holmes claim that Shorewood faces a $14M damage claim from Rex Properties as a result of the Sewer Agreement.

**ANSWER: Based upon information and belief, claims for damages in the Class Action case (First Amended Complaint) set forth the bases for said actions and the Defendants deny any allegations in paragraph 164 that are inconsistent with those pleadings.**

165.    In accordance with Exclusion III.3., previously set forth above, the Schafer Class Action and Rex Claim are based upon, arise from, are in consequence or involve the Sewer Agreement.

**ANSWER: The allegations constitute conclusions of law to which no response is required. If a response is required, and upon information and belief, claims for damages in the Class Action case (First Amended Complaint) set forth the basis for said actions and the**

53

**Defendants deny any allegations in paragraph 165 that are inconsistent with those pleadings. Further answering, the claims by Rex Properties, LLC are set forth in its original counterclaim and the Defendants deny any allegations in paragraph 165 pertaining to Rex Properties, LLC that are inconsistent with those pleadings.**

166.    Stratford is entitled to a declaratory judgment in its favor, declaring that the Stratford has no duty to defend the Rex Claim and coverage for all "loss" is excluded pursuant to Exclusion III.3., of the Policy.

**ANSWER:  The allegations constitute conclusions of law to which no response is required.**

**COUNT XIII: FOR A DECLARATION STRATFORD HAS NO DUTY TO INDEMNIFY SHOREWOOD IN CONNECTION WITH THE SCHAFER CLASS ACTION BECAUSE IT SEEKS UNCOVERRED  "LOSS" UNDER THE POLICY**

167.    Stratford repeats and incorporates by reference paragraphs 1 through 166 as if fully set forth herein.

**ANSWER:  Reincorporate.**

168.    Insuring Agreement A., Directors and Officers Liability, of the Policy, provides:

We will pay on behalf of the insured all "loss" that the insured becomes legally obligated to pay because of a "claim" first made against the insured during the policy period for "wrongful acts":

a.    Arising solely out of the "individual insureds" performance of his or her duties on behalf of the "organization"; or

b.    Attributed to the "organization".

**ANSWER:  There are no allegations in paragraph 168 of Plaintiff's Complaint to which a**

**response is required.**

169.    The Policy's Insuring Clause requires Stratford to pay on behalf all "loss" the Insured is legally obligated to pay because of a "claim" for "wrongful acts" attributed to Shorewood.

**ANSWER:  The allegations constitute conclusions of law to which no response is required.**

170.    "Loss" does not include "c. Damages owed based on an express obligation by written or oral agreement or amounts owed under any contract or agreement."

**ANSWER:  The allegations constitute conclusions of law to which no response is required.**

171.    The Rex Claim seeks damages that are allegedly owed as a result of liability arising from the Sewer Agreement.

**ANSWER:  The allegations constitute conclusions of law to which no response is required.  If a response is required, and upon information and belief, claims for damages by Rex Properties, LLC are set forth in its original counterclaim and Defendants deny any allegations in paragraph 171 that are inconsistent with those pleadings.**

172.    Stratford is entitled to a declaratory judgment in its favor, declaring that the Shorewood is not entitled to coverage for the Rex Claim as any and all damages owed for the Sewer Agreement are not "loss" under the Policy.

**ANSWER:  The allegations constitute conclusions of law to which no response is required.**

## COUNT XIV: DECLARATION THAT STRATFORD IS ENTITLED TO AN ALLOCATION OF THE COVERED AND UNCOVERED AMOUNTS OF THE SCHAFER CLASS ACTION AND REX CLAIM

173.    Stratford repeats and incorporates by reference paragraphs 1 through 172 as if fully set forth herein.

**ANSWER:  Reincorporate.**

174.    Section I.5., Allocation, of the provides "Subject to this section, if any 'claim' the insureds incur 'loss' covered by this policy and 'loss' not covered by this policy either because the 'claim' against the 'insureds' includes both covered and uncovered matters or because the 'claim' is made against both insureds who are afforded coverage for such 'claim' and others, including insureds, who are not afforded coverage for such 'claims', both the insureds and we agree to use our best efforts to allocate such amount between covered 'loss' and uncovered 'loss' based upon the relative legal and financial exposure of the parties to covered and uncovered matters; provided however that 100% of any 'defense costs' incurred by insureds in such 'claim' will be allocated to 'loss'. In any arbitration, suit and or other proceeding among us, no presumption shall exist concerning what is a fair and proper allocation between covered 'loss' and uncovered 'loss'".

**ANSWER:  The allegations constitute conclusions of law to which no response is required.**

175.    If any coverage is available under the Policy for the Schafer Class Action or the Rex Claim, Stratford is entitled to declaratory relief and/or judgment allocating amounts incurred in the Stratford Class Action and the Rex Claim between covered and non-covered matters, pursuant to Section I.5., Allocation, of the Policy.

**ANSWER:  The allegations constitute conclusions of law to which no response is**

56

**required.**

**AFFIRMATIVE DEFENSES**

COMES NOW, Defendants, Greg Schafer and Carlotta Holmes, Individually and on Behalf of all Others Similarly Situated, by counsel and for their Answer to Plaintiff Stratford's Complaint state as follows:

1.      Plaintiff's Complaint fails to state a claim upon which relief can be granted to it.

2.      Plaintiff's claims are barred by doctrine of laches and/or the doctrine of waiver.

3.      Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

4.      Plaintiff's claims are barred by its fraudulent conduct.

5.      Plaintiff's claims are barred by its active collusion with other non-parties to work against the best interests of Shorewood Forest Utilities, Inc., and its utility owners.

6.      The Plaintiff has breached the covenants of good faith and fair dealing because of the omissions and unilateral actions it has taken (and/or directed to be taken on its behalf) which have exposed the Defendants to financial and other damages. This covenant requires Plaintiff, a party to an insurance contract who is vested with broad discretion in performing the terms of the contract, to exercise its discretion "reasonably and with proper motive, not arbitrarily, capriciously or in a manner inconsistent" with the reasonable expectations of the other party. The Plaintiff has failed to conduct itself accordingly.

7.      Plaintiff, through its hired and retained insurance defense counsel, representatives, and agents have deliberately and intentionally acted in concert with Rex Properties, LLC, its single member Donald Blum and their attorneys to improperly, wrongfully, unfairly, and fraudulently work together to formulate a scheme whereby a state court

declaratory judgment complaint would be filed as to the sanitary sewer agreement ("**SSA**") to be immediately followed by a counterclaim by Rex Properties, LLC against Shorewood Forest Utilities, Inc. ("**SFU**") alleging millions of dollars in damages. All of steps and litigation strategy employed in these matters were designed to work against the best interests of SFU (the named insured under the Stratford Policy of Insurance), the Defendants and its utility owners who have suffered damages as a result.

8.      The SSA is too indefinite and does not contain enforceable terms and conditions upon which the Defendants, SFU and its utility owners could fairly and equitably obligate themselves to, and despite Plaintiff knowing there was no mutuality of obligation along with other contractual deficiencies (e.g., impossibility of performance, commercial frustration), the Plaintiff directed its retained insurance defense attorneys, representatives and agents to pursue a legal pathway which was at cross-purposes to the best interest of SFU (the named insured under the Stratford Policy of Insurance), the Defendants, and its utility owners, such that the Complaint should be dismissed.

9.      Plaintiff's claims are barred by its own contributory negligence.

10.     Plaintiff's claims are barred by the doctrine of res judicata.

11.     Plaintiff through its multiple acts and omissions to act has assumed any and all risk attendant therewith and is bound to pleadings made by its retained insurance defense counsel who have worked at the specific direction of the Plaintiff.

12.     Plaintiff's claims are barred due to the ambiguous policy language that is contained in the Stratford Policy of Insurance, all of which must be construed against the drafter of this document.

58

13.    Plaintiff's claims, if any, are barred by Plaintiff's own conduct constituting an intervening cause of its own alleged damages.

14.    Plaintiff's claims are barred due to its breach of the terms, conditions and assumed duties as set forth in the Stratford Policy of Insurance.

15.    Plaintiff has failed to allege facts sufficient to state a claim based upon fraud or constructive fraud can rest.

16.    Plaintiff has failed to take reasonable actions despite an obligation to mitigate its damages, if any, but has intentionally chosen and failed to do so.

17.    Plaintiff has failed to allege facts demonstrating a lack of substantial performance by the Defendants, SFU and its utility owners, and has waived its rights under the Stratford Policy of Insurance by its actions and course of conduct.

18.    Plaintiff's claims are barred because it has failed to name indispensable and necessary parties that have operated and controlled the facts and circumstances as alleged in its Complaint, including but not limited to:  David Jensen, Rob Feldt, Eichhorn & Eichhorn law firm, Kevin Rasp, O'Hagen law firm, Larry Evans, Hoeppner, Wagner & Evans law firm, and McMahon Engineers.

19.    To the extent that the Plaintiff has failed to file this action within the applicable statute of limitations and/or the statue of repose, said statutes are pled in bar of recovery.

20.    To the extent the Plaintiff has failed to comply with all conditions precedent, prior to filing suit, said conditions are pled as a bar to this action.

21.    Discovery and investigation are incomplete and the Defendants cannot reasonably be expected to know whether additional defenses may be applicable.  The Defendants therefore

59

reserves the right to assert additional defenses as may be applicable and appropriate during the

pendency of this action.

WHEREFORE, Defendants, Greg Schafer and Carlotta Holmes, Individually and on Behalf

of all Others Similarly Situated, by counsel respectfully ask that this honorable Court enter a

judgment in their favor and against the Plaintiff, Stratford Insurance Company, and all other

proper relief.

Respectfully submitted,

KORANSKY, BOUWER & PORACKY, P.C.

By:_____/s/ Paul B. Poracky_____
          PAUL B. PORACKY (#10899-45)
          425 Joliet Street, Suite 425
          Dyer, Indiana 46311
          Phone: (219) 865-6700
          Email:  PPoracky@KBLegal.net

**Certificate of Service**

I certify that on the 18th day of October, 2021, service of a true and correct copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein electronically using the Indiana E-filing System ("IEFS") and/or by electronic mail:

/s/ Paul B. Poracky_____
PAUL B. PORACKY