UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| STRATFORD INSURANCE CO.,<br>    Plaintiff,<br><br>    v.<br><br>SHOREWOOD FOREST UTILITIES,<br>INC., *et al.*,<br>    Defendants,<br><br>CARLOTTA HOLMES and<br>GREG SCHAFER,<br>    Counterclaim Plaintiffs,<br><br>    v.<br><br>STRATFORD INSURANCE CO.,<br>    Counterclaim Defendant. | CAUSE NO.: 2:20-CV-372-PPS-JEM |

**OPINION AND ORDER**

This matter is before the Court on Counterclaim Plaintiffs' Second Motion to Compel Discovery from Stratford Insurance Company and for Order Determining the Common Interest Privilege was Waived [DE 86], filed November 2, 2022, and Shorewood Forest Utilities, Inc.'s Motion to Compel Discovery from Stratford Insurance Company as to the Common Interest Privilege Having Been Waived [DE 91], filed November 15, 2022.

I.  **Background**

In 2017, Stratford Insurance Company issued an insurance policy to Shorewood Forest Utilities (SFU). The board of SFU ("Former Board") investigated the possibility of expanding its subdivision to add homes with Rex Properties. SFU and Rex Properties formed an agreement to

1

expand the sewer system to support the new development. Community members who were opposed to the development, including named plaintiffs Greg Schafer and Carlotta Holmes ("S&H"), filed a class action suit in state court. After the suit was filed, a number of those class action members, including Schafer and Holmes, were elected to the SFU board in an election (the "New Board"). The New Board voted to rescind the sewer agreement. Eventually, a consent judgment was entered between the class action plaintiffs and SFU, one of the defendants in the case, but not with the Former Board defendants. The consent judgment included a covenant promising that the class action plaintiffs would only seek enforcement of payment of the judgment against Stratford as SFU's insurer and not against any other parties. The class action is still proceeding against the Former Board in state court. A number of other lawsuits were also filed in state court, some of which were removed to federal court.

In the instant Complaint, filed October 15, 2020, Stratford claims it did not agree to the consent judgment in the state court class action suit filed by S&H on behalf of SFU and seeks a declaration that it has no obligation regarding the consent judgment. After a motion to dismiss was granted in part on September 27, 2021, the declaratory judgment claims regarding the extent of Stratford's insurance obligations remain, as do counterclaims against Stratford for bad faith, breach of contract, and abuse of process, arising out of the consent judgment and other state court suits.

On September 2, 2022, the Court denied S&H's previous motion to compel, finding that it was premature and warning the parties of the need to work together to resolve their discovery disputes without involving the Court. S&H filed the instant motion to compel two months later. Stratford filed a response on November 16, 2022, along with an affidavit addressing the Rule 37

2

certification requirements. S&H filed a reply, erroneously docketed by them as a response, on November 23, 2022. SFU filed its motion to compel on November 15, 2022. Stratford filed a response on December 7, 2022, and SFU filed a reply on December 13, 2022. Two motions to quash non-party depositions of attorneys noticed by S&H, another motion to compel filed by S&H, and a motion to strike filed by S&H (addressed in separate orders) were also filed and briefed between November 2, 2022, and February 3, 2023, totaling hundreds of pages of briefs and exhibits. Only a month after the last motion was fully briefed, S&H filed a motion to expedite ruling on the pending motions.

## II. Analysis

Pursuant to Federal Rule of Civil Procedure 26, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Likewise, "[t]he scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 253 (S.D. Ind. 2002); *see also Teton Homes Europe v. Forks RV*, No. 1:10-CV-33, 2010 WL 3715566, *2 (N.D. Ind. Sept. 14, 2010). Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses, s*ee* Fed. R. Civ. P. 37(a), and Rule 45(c)(3)(A) allows a court to quash a subpoena based on a timely motion where the subpoena

3

requires the disclosure of privileged or other protected matter or subjects a person to undue burden. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv). A party objecting to the discovery request bears the burden of showing why the request is improper. *See McGrath v. Everest Nat'l Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008). The Court has broad discretion when determining matters related to discovery. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014); *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993).

A.  Rule 37 Certifications

Federal Rule of Civil Procedure 37 provides that a motion "for an order compelling disclosure or discovery . . . must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make a disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Northern District of Indiana Local Rule 37-1 provides, "A party filing any discovery motion must file a separate certification that the party has conferred in good faith or attempted to confer with other affected parties in an effort to resolve the matter raised in the motion without court action." N.D. Ind. L.R. 37-1. The Court may deny a motion to compel if it is not accompanied by a proper certification. *Id*.

As an initial matter, the Court notes that S&H again complain that they served the discovery requests in 2020, arguing that Stratford is delinquent in its responses. However, as the Court explained in its Order ruling on S&H's last motion to compel, *see* [DE 84], discovery did not begin until January 20, 2022, and then was stayed from February 3 through March 25, 2022. Stratford was under no obligation to respond to discovery requests before discovery began or while discovery was stayed. Despite this previous reminder, the Rule 37 certificate included in the

4

motion to compel includes alleged attempts to resolve disputes dating back to 2020, before discovery began. [DE 87-5]. The Local Rules require the certificate to address conferences about the matter *raised in the motion*, not to describe all the parties' disagreements so the Court has to wade through pages of irrelevant details to determine whether the parties ever discussed the instant dispute. Looking only at the interactions since the last motion to compel was resolved, there are references to several emails sent by counsel for S&H and descriptions of errors S&H found in the privilege log produced as a result of the last motion to compel, but it is not apparent to the Court whether the parties had any meet and confer conferences as legitimate attempts to resolve the dispute raised in the instant motion, rather than just assertions of their positions.

The Court will not deny the motion because of the Rule 37 certification but reminds counsel for S&H of the need to comply with the applicable local and federal rules and to avoid clouding its briefing with details that are irrelevant and/or obfuscate the purpose of the documents.

In its motion, SFU is seeking to compel more complete responses to its requests for admissions and interrogatories. It lists out a number of requests for admission, Stratford's responses, and its specific arguments as to why it disagrees with the requests for admission. It asks the Court to find that there is no privilege applicable to the information being sought by SFU and to compel Stratford to respond more completely to the requests for admission. SFU does not include a separate Rule 37 certification. Within the text of its motion, it argues that it has had "informal good faith discussions" with counsel for Stratford, and "refers the Court to Counterclaim Plaintiffs' Second Local Rule 37-1 Certification demonstrating the plethora of attempts to resolve discovery disputes." SFU Br. p. 4 [DE 91]. Stratford argues that SFU did not raise the alleged inadequacies with counsel for Stratford or engage in actual meet and confer efforts. The Court's

5

concerns with the adequacy of S&H's Rule 37 certification are described above, and it is not at all apparent to the Court that SFU attempted to resolve its specific concerns with the requests for admission directly with Stratford before filing the instant motion. In short, the motion does not comply with Local Rule 37-1 or Federal Rule of Civil Procedure 37 and is therefore denied. To avoid receiving the identical motion with a more complete certificate, however, the Court notes that some of SFU's arguments about privilege are addressed below.

    B. Privilege

SFU includes a number of requests for admission propounded to Stratford, and two of the cited responses claim privileges. In particular, SFU asks Stratford to admit it paid attorney fees in one of the state court cases. In response, Stratford states that, "pursuant to the terms of the duty to defend insurance policy issued by Stratford to SFU, Stratford agreed that for the law firms" in question to represent the Former Board and SFU but declines to give other information about the payments on the grounds of attorney-client privilege and common-interest privilege. SFU also asks Stratford to admit that it "gave its knowing permission, approval, and authority for their retained insurance defense counsel to file [the Declaratory Judgment Complaint] despite never having discussed or communicated such a plan of action with any of SFU's then current representatives." In addition to objecting that the request requires that Stratford to admit to more than one fact, Stratford objected that admitting or denying the request would require it to waive the attorney-client privilege and common-interest privilege. SFU's argument has to do with what it believes the facts to be and what it believes Stratford knew but does not address the merits of Stratford's objection other than to state "there is no common interest privilege that applies to this matter." In its motion, SFU argues generally about privilege, apparently requesting a blanket determination

6

that nothing it is seeking is privileged. The Court's analysis of Stratford's claims of privilege with respect to S&H's document requests also apply in significant part to SFU's arguments.

S&H argue that Stratford has falsely claimed privilege in order to avoid producing documents, characterizing the documents as "communications with non-parties who are adversaries to [Stratford's] insured" and therefore not protected by any privilege. S&H br. p. 2 [DE 87]. Review of the attached privilege log, although noting that the copy quality is poor, reveals that S&H are objecting to a number of documents that identify a number of different claimed privileges. S&H generally argue that Stratford is not entitled to withhold any of the contested documents and claims that all privileges have been waived because the bad faith of an insurance carrier is at issue in the litigation.

In response, Stratford identifies the general categories of communications from the privilege log that S&H assert should be produced because no privilege exists or privilege has been waived: emails between counsel for the Former Board and Stratford; internal Stratford communications; emails between counsel for Stratford and counsel for Rex; communication about mediation between counsel for Stratford, S&H, and SFU; and communications between Stratford and Attorney Poracky, who is counsel for S&H and SFU. Stratford, as "[t]he party seeking to invoke the privilege[,] bears the burden of proving all of its essential elements. Further, because the privilege is in derogation of the search for the truth, it is construed narrowly." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

Stratford asserts that communications between counsel for the Former Board, Stratford, and Stratford's outside counsel, as well as the emails where Attorney Steven Joseph, an employee of Stratford, forwarded that communication to Stratford's internal document management system,

7

are protected by attorney-client privilege.

"When the basis of federal jurisdiction is diversity, the court applies the state law of attorney-client privilege." *Illiana Surgery and Medical Ctr. v. Hartford Fire Ins. Co.*, No. 2:07-CV-3, 2008 WL 2622 803, at *2 (N.D. Ind. June 30, 2008) (citing Fed. R. Civ. P. 501) (other citations omitted); *see also Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1097 (7th Cir. 1987) ("Because the basis of our jurisdiction is diversity, we apply the Indiana state law of privilege."). In Indiana, attorneys are not required to testify as to "confidential communications made to them in the course of their professional business, and as to advice given in such cases." Ind. Code § 34-46-3-1. The attorney-client privilege "applies to all communications between the client and his attorney for the purpose of obtaining professional legal advice or aid regarding the client's rights and liabilities." *Penn Cent. Corp. v. Buchanan*, 712 N.E.2d 508, 515 (Ind. App. 1999). Although the presence of a third party typically waives the privilege, "Indiana . . . has adopted the common-interest privilege, which is 'an extension of the attorney-client privilege' that 'permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims.'" *Zurich Am. Ins. Co. v. Circle Ctr. Mall, LLC*, 113 N.E.3d 1220, 1230 (Ind. Ct. App. 2018) (quoting *Brown v. Katz*, 868 N.E.2d 1159, 1166 (Ind. Ct. App. 2007)). "The common interest privilege treats all involved attorneys and clients as a single attorney-client unit," *Groth v. Pence*, 67 N.E.3d 1104, 1119 (Ind. Ct. App. 2017) (quoting *Price v. Charles Brown Charitable Remainder Unitrust Trust*, 27 N.E.3d 1168, 1173 (Ind. Ct. App. 2015)) (other citations omitted), and applies in insurance relationships: "where the policy of insurance requires the insurer to defend claims against the insured, statements from the insured to the insurer concerning an occurrence which may be made the basis of a claim by a third party are

8

protected from disclosure." *Richey v. Chappell*, 594 N.E.2d 443, 447 (Ind. 1992); *see also Zurich*, 113 N.E.3d 1220, 1230.

The work product doctrine attaches to documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." Fed. R. Civ. P. 26(b)(3); *see also* Ind. Trial Rule 26(B)(3). The privilege protecting "fact" work product "may only be overcome if the party seeking production demonstrates both a substantial need for the materials and that it would suffer undue hardship in procuring the requested information some other way." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996). However, "even when a litigant makes the substantial need showing, 'opinion' work product remains protected." *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1023-24 (7th Cir. 2012); *see also Upjohn Co. v. United States*, 449 U.S. 383, 401–02 (1981) ("While we are not prepared at this juncture to say that such [opinion work product] material is always protected by the work–product rule, we think a far stronger showing of necessity and unavailability by other means . . . would be necessary to compel disclosure.").

S&H argue that there was no common interest between SFU, Stratford, and Rex, so there is no privilege protecting information shared between Stratford and Rex or Rex's counsel. They also argue that SFU cannot be considered commonly represented with the Former Board. However, Stratford is not arguing that there is any common interest with Rex or that it is withholding documents based on a theory that the Former Board and SFU are commonly represented. Instead, Stratford is asserting that communications about litigation and/or possible claims between Stratford Insurance Company, its outside counsel, and the Former Board (as its insured) are privileged. S&H also refer to the insurance relationship between SFU and Stratford as waiving any

9

privilege Stratford could claim; however, SFU's waiver of any privilege it had as a result of its relationship with Stratford does not waive the privilege between Stratford and other insureds, including the Former Board. Furthermore, any information being sought about the relationship between Stratford and SFU can be obtained from SFU, also a party in this lawsuit.

S&H argue that Stratford cannot use the tripartite relationship to refuse to disclose evidence of collusion. However, mere allegations of collusion or bad faith are insufficient for the Court to determine that there is no privilege. "To permit [a party] access to the documents simply because it asserted a bad faith claim . . . would ignore the basic premise of protecting the attorney-client privilege." *Hartford Fin. Servs. Grp., Inc. v. Lake Cnty. Park & Recreation Bd.*, 717 N.E.2d 1232, 1238 (Ind. Ct. App. 1999) ("A simple assertion that an insured cannot otherwise prove a case of bad faith does not automatically permit an insured to rummage through the insurers' claims file."); *see also Bartlett v. State Farm Mut. Auto. Ins.*, 206 F.R.D. 623, 627 (S.D. Ind. 2002) (finding that privilege applied even when insurer accused of bad faith because where "[the insurer] believed that its communications with [outside counsel] could be open and candid and that it would be protected by the attorney-client privilege … [and] the fact that [the insurer] denies it acted in bad faith does not invoke the so-called 'put-in-issue' exception"). In short, the Court declines to require disclosure of communications about the claim and lawsuits between Stratford, Stratford's outside counsel, and the Former Board. Likewise, internal Stratford communications that involve its attorney forwarding information to storage are also protected work product. All "opinion" work product is protected, and the mere allegation of collusion is insufficient to create a substantial need for the "fact" work product. This is particularly the case since S&H have not shown that any of the documents it claims it needs despite Stratford's claimed privilege to are likely to contain unique

information for which they have a substantial need, nor have they shown that they will suffer undue hardship by attempting to procure the requested information some other way.

There are several documents identified by S&H on the privilege log that involve communication between Stratford and Paul Poracky, counsel for SFU and S&H. To the extent that the information therein has not already been provided through Stratford's responses to requests for production, S&H should have access to these communications from Poracky and other parties to this and the state court suits, so there is no reason for them to be compelled.

Stratford also identifies a number of documents as protected from disclosure because they were exchanged as part of mediation and settlement negotiations. "Indiana judicial policy strongly urges the amicable resolution of disputes and thus embraces a robust policy of confidentiality of conduct and statements made during negotiation and mediation." *Horner v. Carter*, 981 N.E.2d 1210, 1212 (Ind. 2013). Accordingly, "[e]vidence of conduct or statements made in compromise negotiations or mediation is not admissible except when offered . . . in collateral matters unrelated to the dispute that is the subject of the mediation." *Id*. (citing Ind. St. ADR Rule 2.11; Ind. R. Evid. 408; *Gast v. Hall*, 858 N.E.2d 154, 161 (Ind. Ct. App. 2006)); *see also Worman Enterprises, Inc. v. Boone Cnty. Solid Waste Mgmt. Dist.*, 805 N.E.2d 369, 376–77 (Ind. 2004) ("The purpose of Evidence Rule 408 is to promote candor by excluding admissions of fact or law. Interim negotiating concessions are in that category."). Accordingly, communications made during negotiation and mediation are protected from disclosure, and S&H are not entitled to communications about mediation, including settlement communications with counsel for Rex Properties. S&H argue that Stratford must produce documents related to settlement communications regarding the Rex Properties claim because of its allegations of collusion between

11

Stratford and Rex, but Stratford argues that although the initial state court declaratory judgment action is part of S&H's counterclaim in this case, that happened long before the 2022 communications regarding settlement. The Court agrees that, based on the information before it at this time, the settlement negotiations with Rex need not be disclosed.

S&H argue that the Court should review all of the questioned documents *in camera* to determine whether they include communications with outside parties or are otherwise not privileged. However, the Court is not in the business of reviewing all documents to which privilege is claimed, particularly given the deficiencies in the meet and confer process in this case described above. *Med. Assur. Co. v. Weinberger*, No. 4:06-CV-117 JD, 2012 WL 5178148, at *6 (N.D. Ind. Oct. 17, 2012) ("broad permission to flood the Court with information *in camera* is not appropriate at this stage"); *Doe v. St Joseph's Hosp. of Fort Wayne*, No. CIV. A. F83-201, 1987 WL 15462, at *3 (N.D. Ind. Apr. 18, 1987) ("The critical question is the balance between the need for truth and the importance of the state privilege . . . The delicate balance in this case requires that the plaintiff allege facts which create more than a mere inference that the actions of the peer review committee were discriminatory, before the court will permit even an *in camera* inspection of the communications to, records of or determinations of the peer review committee. At this point the allegations and facts before this judge do not create more than a mere inference of discrimination."). If there are particular documents that S&H believe are being withheld inappropriately, they may file a motion addressing just those documents with specific arguments as to why the Court should review them *in camera*.

C. Other Requests

In addition to requesting that the Court order production of all of the marked items on the

12

privilege log, S&H request that Stratford be compelled to respond to S&H's request for production. Stratford represents that it served its responses to their requests for production on May 28, 2022, and produced all non-privileged documents thereafter. In reply, S&H do not deny that they received response, but argue that, because the requests were initially delivered in December 2020, production of the documents it identified in the privilege log is overdue. The Court addressed S&H's arguments about the timing of discovery in its Order of September 2, 2022, in which it also warned S&H of the importance of attempting to resolve disputes prior to involving the Court. The claims of privilege are addressed above.

S&H also request that the Court order Stratford to produce employee Attorney Joseph and a qualified Rule 30(B)(6) deponent. Stratford represents that they requested a separate meet and confer process regarding the depositions, but S&H would not comply, and that it believes the concerns regarding privilege should be addressed before the depositions occur. The Court reminds Stratford of the requirements to produce deponents in accordance with the Federal Rules of Civil Procedure, and again reminds S&H of the importance of attempting to resolve disputes before involving the Court. Now that the questions of privilege are resolved, the parties should meet and confer regarding what depositions are necessary and attempt to schedule them at mutually beneficial times. Likewise, the Court will not order Stratford to produce non-parties involved in the state court litigation for depositions in this case based on the representations in S&H's motion.

### III. Conclusion

For the foregoing reasons, the Court hereby **DENIES** Counterclaim Plaintiffs' Second Motion to Compel Discovery from Stratford Insurance Company and for Order Determining the Common Interest Privilege was Waived [DE 86] and Shorewood Forest Utilities, Inc.'s Motion to

Compel Discovery from Stratford Insurance Company as to the Common Interest Privilege Having Been Waived [DE 91], and **DENIES as moot** Defendant/Counterclaim Plaintiffs' Motion for Expedited Ruling on Pending Discovery Motions Also Including Third Motion to Compel Discovery from Stratford Insurance Company and Richard Pretti [DE 138] and **CAUTIONS** S&H that repeated filing of request to expedite in situations that are in no way emergencies is **DISFAVORED**, particularly when S&H themselves are the source of the bulk of the motion practice and attendant delays in discovery they complain of.

As Rule 37(a) provides, because "the motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees" unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). Accordingly, the Court **ORDERS** Stratford to file, on or before **May 15, 2023**, itemizations of its costs and fees, including attorney's fees, incurred in defending against both Motions to Compel along with argument as to why those expenses are reasonable in this situation. The Court **ORDERS** SFU and S&H to file their responses by **May 29, 2023**, and Stratford to file replies, if any, by **June 5, 2023**.

SO ORDERED this 1st day of May, 2023.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc:    All counsel of record

14